**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

Estate of Henrietta Lacks,

               Plaintiff,

     v.                                                   Case No. 1:21-cv-02524-DLB

Thermo Fisher Scientific Inc.,

               Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF
THERMO FISHER SCIENTIFIC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

STANDARD OF LAW ............................................................................................ 9

ARGUMENT ......................................................................................................... 10

I.   Plaintiff's Unjust Enrichment Claim Is Time-Barred. ................................. 10

    a. Any Claim Accrued Decades Ago. ......................................................... 10

    b. The Continuing Harm Doctrine Does Not Apply. .................................. 16

    c. This Case Underscores Why Statutes of Limitations Exist. ................... 17

II.  Even if Not Time-Barred, Plaintiff's Unjust Enrichment Claim Must Be
    Dismissed Because Plaintiff Does Not—And Cannot—Allege
    An Underlying Tort. ...................................................................................... 19

III. The Complaint Fails To Plead That Thermo Fisher Was Not A Bona
    Fide Purchaser For Value ............................................................................. 22

IV.  Dismissal Should Be With Prejudice Because Amendment Would Be Futile. ................ 23

CONCLUSION ...................................................................................................... 23

## TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................22

*Bd. of Regents of Univ. of State of N.Y. v. Tomanio*,
    446 U.S. 478 (1980) ...................................................................................1, 2, 10, 18

*Behnke v. Geib*,
    169 F. Supp. 647 (D. Md. 1959) .................................................................................1

*Bell v. Morrison*,
    26 U.S. (1 Pet.) 351 (1828) ......................................................................................17

*Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) .....................................................................................14

*Cain v. Midland Funding, LLC*,
    256 A.3d 765 (Md. Ct. App. 2021) ..........................................................................16

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
    794 F. Supp. 2d 602 (D. Md. 2011) ...........................................................................9

*Colonial Penn Ins. Co. v. Coil*,
    887 F.2d 1236 (4th Cir. 1989) .............................................................................13, 14

*Dean v. Pilgrim's Pride Corp.*,
    395 F.3d 471 (4th Cir. 2005) ...................................................................................10

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) .....................................................................................9

*Everette v. Mitchem*,
    2016 WL 470840 (D. Md. Feb. 8, 2016) ...................................................................4

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) .....................................................................................9

*Goldfarb v. Mayor & City Council of Baltimore*,
    791 F.3d 500 (4th Cir. 2015) .....................................................................................9

*Haley v. Corcoran*,
    659 F. Supp. 2d 714 (D. Md. 2009) ....................................................................21, 22

*Hall v. Virginia*,
    385 F.3d 421 (4th Cir. 2004) ...................................................................................18

*In re Human Genome Sciences Inc. Sec. Litig.*,
  933 F. Supp 2d 751 (D. Md. 2013) ............................................................................14

*James v. Acre Mortg. & Fin., Inc.*,
  306 F. Supp. 3d 791 (D. Md. 2018), *rev'd* on other grounds and *remanded sub nom.*
  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019) ................................12

*Jason v. Nat'l Loan Recoveries, LLC*,
  227 Md. App. 516 (2016) ..........................................................................................10

*Littlejohn v. BWW Law Grp. & Assoc.*,
  2014 WL 6391119 (D. Md. Nov. 14, 2014) ..............................................................23

*Litz v. Md. Dep't of Env't*,
  434 Md. 623 (2013) ............................................................................................16. 17

*MacBride v. Pishvaian*,
  402 Md. 572 (2007) (abrogated on other grounds by *Litz*, 434 Md. 623) ........16, 17

*Mass Transit Admin. v. Granite Const. Co.*,
  57 Md. App. 766 (Md. Ct. Spec. App. 1984) ...........................................................20

*Mazariegos v. Pan 4 Am., LLC*,
  2021 WL 4339434 (D. Md. Sept. 23, 2021) ...............................................................9

*Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*,
  2021 WL 1909592 (D. Md. May 12, 2021) ...............................................................20

*Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*,
  321 U.S. 342 (1944) .............................................................................................17, 18

*Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*,
  909 F.3d 655 (4th Cir. 2018) ....................................................................................10

*Plitt v. Greenberg*,
  242 Md. 359 (1966) ..................................................................................................21

*Poffenberger v. Risser*,
  290 Md. 631, 636 (1981) ..........................................................................................10

*Shell Oil Co. v. Parker*,
  265 Md. 631 (1972) ..................................................................................................16

*Temescal Wellness of Md. LLC v. Faces Human Capital, LLC*,
  2021 WL 4521343 (D. Md. Oct. 4, 2021) ...........................................................19, 20

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
  745 F.3d 131 (4th Cir. 2014) ......................................................................................4

*United States v. Judd*,
807 F. App'x 242 (4th Cir. 2020) ...........................................................7

*United States v. Kubrick*,
444 U.S. 111 (1979)...............................................................1, 2, 17

*United States v. Townsend*,
886 F.3d 441 (4th Cir. 2018) .............................................................7

*Walton v. Network Solutions*,
221 Md. App. 656 (2015) .................................................................16

*Wash. Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
431 F. Supp. 3d 698 (D. Md. 2020).............................................19, 20

*Whetstone v. Mayor & City Council of Baltimore City*,
2019 WL 1200555 (D. Md. Mar. 13, 2019).....................................10

*Williams v. Maryland*, No. ELH-17-1058, n.1 (D. Md. Apr. 21, 2017) .......................................18

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ..............................................................9

## OTHER AUTHORITIES

1 Weinstein's Evidence Manual § 4.02 (2021)...............................................14

21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 (1977) ..............14

31 Am. Jur. 2d Executors and Administrators § 1085 ...............................................1

H. Con. Res. 38, 115th Cong. (2017)...............................................12, 15

Restatement (First) of Restitution § 123 (1937) .............................................22

Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).........................20

## INTRODUCTION

Plaintiff's[1] unjust enrichment claim against Defendant Thermo Fisher Scientific Inc. ("Thermo Fisher") is decades too stale to proceed. Even under the most generous interpretation of when Plaintiff's claim may have accrued, it is barred by Maryland's three-year statute of limitations. Plaintiff has known about and publicly contemplated litigation over the facts alleged in the Complaint—Henrietta Lacks's 1951 treatment at Johns Hopkins Hospital and widespread subsequent commercial use of HeLa cells—since at least 2010. Yet Plaintiff took no action until its October 4, 2021 Complaint against Thermo Fisher. As a result, Plaintiff's claim is time-barred and must be dismissed.

"Statutes of limitations are not simply technicalities." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980). "On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Id.* "[F]ound and approved in all systems of enlightened jurisprudence, [they] represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (cleaned up). "[I]n the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely

---

[1] The Plaintiff in this case is claimed to be "The Estate of Henrietta Lacks." Compl. ¶ 1 (caption and introductory paragraph), ¶¶ 15, 14 (signature block), and Civil Cover Sheet (box 1). This is improper—a lawsuit cannot be brought by an estate (only by its personal representative). *Behnke v. Geib*, 169 F. Supp. 647, 650 (D. Md. 1959) ("The estate of a deceased person is not an entity known to the law, and is not a natural or an artificial person, but is merely a name indicating the sum total of assets and liabilities of a decedent.") (internal quotation marks and citations omitted); 31 Am. Jur. 2d Executors and Administrators § 1085 ("'Estates' are not natural or artificial persons, and they lack legal capacity to sue or be sued, and it is well settled that all actions that survive a decedent must be brought by or against the personal representative. Neither the estate nor a beneficiary thereof is a proper party to a lawsuit; rather, the administrator or executor is the proper party plaintiff or defendant.") (internal citations omitted).

1

to either impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious." *Tomanio*, 446 U.S. at 487.  "These enactments are statutes of repose; . . . they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Kubrick*, 444 U.S. at 117 (citations omitted).

This case exemplifies the reasons why statutes of limitations exist.  The factual bases for the Complaint—Henrietta Lacks's alleged unconsented biopsy by doctors at Johns Hopkins Hospital in 1951 and the later commercial use of HeLa cells—have been known to Plaintiff for decades.  Yet Plaintiff failed to take timely action, instead waiting until October 4, 2021, to file the Complaint in this case.  As a result, Thermo Fisher is left in the untenable position of defending itself for the downstream effects of 70-year-old acts in which Thermo Fisher had no part, which took place in a different time, under different norms than today, with no known physician or family witnesses still living.  A plaintiff cannot wait decades to bring a claim while the scientific community—including companies that serve it like Thermo Fisher—makes use of a resource that has been freely and publicly available for the better part of a century.

Thermo Fisher enables research and discovery that benefits patients worldwide.  Among its products are hundreds of cell lines, which serve as critical proxies for understanding how cells work and for developing therapies that improve and save patients' lives.  Each cell line has its own origin story and individual history.  And each cell line is the distant offspring of original cells collected from a human or animal subject, typically by a third party unaffiliated with Thermo Fisher, guided by rules, regulations, and norms existing at the time of collection.  These rules and norms have evolved over time.  For instance, the National Institutes of Health first implemented

2

informed consent guidelines in 1966,[2] and the Code of Federal Regulations only codified "informed consent" rules in 1991—four decades after Ms. Lacks's treatment.[3]

Plaintiff nonetheless asserts that, upon learning of the 1951 alleged treatment of Ms. Lacks by Johns Hopkins physicians, Thermo Fisher was legally obligated to stop using HeLa cells unless it paid Plaintiff money and got Plaintiff's permission.  If the Court adopted Plaintiff's contention, every researcher (not just Thermo Fisher) who uses HeLa cells would be under a cloud of potential liability, knowing Plaintiff could sue at any time under a limitless theory of liability without fear of being time-barred.  This unforeseeable and untethered risk is precisely why Maryland's three-year statute of limitations exists and, here, requires Plaintiff's unjust enrichment claim be dismissed.  And even if it is not time-barred, the Complaint must be dismissed because it fails to plead an underlying tort to its unjust enrichment claim, and because it fails to plead that Thermo Fisher was not a bona fide purchaser for value of HeLa cells, both of which are required to state a claim for unjust enrichment in Maryland.

These problems cannot be cured through amendment.  Plaintiff cannot extend the limitations period by asserting a "continuing harm" because the continuing harm doctrine does not apply to unjust enrichment claims—the only cause of action asserted in the Complaint.  Nor can Plaintiff assert new factual allegations that could lessen to three years the period of time for which Plaintiff has been on notice of the underlying facts.  Plaintiff's claim is time-barred no matter what, as is any other claim Plaintiff might assert in an effort to cure the absence of an underlying tort. For all these reasons, as fully set forth below, the Complaint should be dismissed with prejudice.

---

[2] Surgeon General's Directives on Human Experimentation (July 1, 1966), available at https://history.nih.gov/download/attachments/1016866/Surgeongeneraldirective1966.pdf.

[3] Protection of Human Research Subjects, 46 Fed. Reg. 8366 (Jan. 26, 1981), available at https://tile.loc.gov/storage-services/service/ll/fedreg/fr046/fr046016/fr046016.pdf.

## FACTUAL BACKGROUND

For decades, Plaintiff has known of—and contemplated litigation about—the factual basis for the Complaint.  The relevant allegations, accepted as true at this stage, are as follows.

In January 1951, Henrietta Lacks was diagnosed with cervical cancer at Johns Hopkins Hospital.  Compl. ¶ 30.  On February 5, 1951, while Ms. Lacks was receiving radiation treatment, a surgeon took two biopsies from Ms. Lacks's cervix—one from healthy tissue and one from her cancerous tumor.  *Id.* ¶ 33; *see also* Rebecca Skloot, *The Immortal Life of Henrietta Lacks*, at 31-32 (Crown ed. 2010) (hereinafter "*Immortal Life*") (attached as Ex. 1).[4]  The healthy cells died a few days later, but the cancer cells proliferated at Hopkins, starting the HeLa cell line.  *Immortal Life* (Ex. 1), at 39-40.

Ms. Lacks died on October 4, 1951, but the colony of HeLa cells lived on, replicating without end.  Compl. ¶ 35.  Their so-called "immortality" made them valuable for medical research.  *Id.* ¶ 6.  Hopkins gave samples of HeLa cells out for free to scientists around the world so they could be used for research.  *Id.* ¶ 37.  And, in the decades that followed, HeLa cells became an essential resource for researchers worldwide, playing a critical role in landmark medical advances such as the polio vaccine, and appearing in countless scientific papers.  *Id.* ¶ 38.

---

[4] The court may take notice of references to Rebecca Skloot's book because it is repeatedly referenced in the Complaint.  *Everette v. Mitchem*, 2016 WL 470840, at *2 (D. Md. Feb. 8, 2016) ("[The court can] consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.") (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations omitted)); Compl. ¶ 39 ("The extensive publicity of the taking of parts of Henrietta Lacks' body without her consent includes: (a) A nonfiction book which spent 75 weeks on the New York Times Best Seller list."); Paperback Nonfiction Best Sellers, https://www.nytimes.com/books/best-sellers/2012/08/26/paperback-nonfiction/ (Aug. 26, 2012) (attached as Ex. 2).

Ms. Lacks's identity as the human source of HeLa cells was first made public in a medical journal in 1970.[5]   A pair of articles in Rolling Stone and Ebony followed in 1976.[6]   A BBC documentary aired in 1997,[7] along with an article by Rebecca Skloot in Johns Hopkins Magazine in 2000 that observed, "[t]o this day, members of the Lacks family feel they've been passed over in the story of the HeLa cells. They know their mother's cells started a medical revolution and are now bought and sold around the world." [8]

Ten years later, in 2010, Skloot turned Ms. Lacks's story into a national sensation with the publication of "The Immortal Life of Henrietta Lacks."  The book reported in detail on Ms. Lacks's treatment in 1951 as well as the widespread commercial use of HeLa cells.  *See, e.g.*, *Immortal Life* (Ex. 1), at 193-94 (noting that, after reading a paragraph in the 1976 Rolling Stone article explaining that HeLa cells are sold commercially around the world, "suddenly the Lacks brothers became very interested in the story of HeLa").  The book noted that "many for-profit cell banks and biotech companies have" made money from HeLa cells, including "Microbiological Associates—which later became part of Invitrogen."  *Id.* at 194.  The book continued, "What we

---

[5] Howard W. Jones, et al., *After Office Hours*, 38 Obstetrics & Gynecology 945 (Dec. 1971) (attached as Ex. 3) ("Even now Henrietta Lacks, first as Henrietta and then as HeLa, has a combined age of 51 years.").

[6] Michael Rogers, *The Double-Edged Helix*, Rolling Stone, Mar. 25, 1976 (attached as Ex. 4); *The Miracle of 'HeLa'*, Ebony, June 1976, at 93-94, 96, 98 (attached as Ex. 5).

[7] JustAdamCurtis, *The Way of All Flesh*, YouTube (June. 20, 2016), https://www.youtube.com/watch?v=FgMUlVl-poE.

[8] Rebecca Skloot, *Henrietta's Dance*, Johns Hopkins Magazine (Apr. 2000), https://pages.jh.edu/jhumag/0400web/01.html (attached as Ex. 6).

5

do know is that today, Invitrogen sells HeLa products . . . ." *Id.*  In January 2014, Invitrogen (by then named Life Technologies) was acquired by Thermo Fisher.[9]

The Complaint alleges that Thermo Fisher has commercialized HeLa cell products in various ways without permission from Ms. Lacks's Estate (the "Estate") while knowing from publicity about Ms. Lacks's story that the cells were taken without her consent.  Compl. ¶¶ 41-46. In support of its allegation that Thermo Fisher had "knowledge," Plaintiff cites a pair of articles about Ms. Lacks from *2016 and 2017*, respectively, on Thermo Fisher's website.  *Id.* ¶ 41.[10]  The Complaint speculatively asserts that HeLa cells have brought and continue to bring "billions of dollars to many companies," including Thermo Fisher.  *Id.* ¶ 38.

At the same time, Ms. Lacks's family has contemplated litigation for decades.  In an interview for the BBC's 1997 documentary, Ms. Lacks's son, Lawrence Lacks, said "they taken the cells and used it without permission, they have also distributed without permission."[11]  The documentary then reported that the Lacks family "decided to approach lawyers to see if they could claim some of the money."[12]  Ron Lacks (Lawrence Lacks's son, Henrietta Lacks's grandson) was then interviewed and stated, "I went to the lawyers because I wanted to find out what is happening

---

[9] *Life Technologies was acquired by Thermo Fisher Scientific in January, 2014*, https://www.thermofisher.com/us/en/home/brands/life-technologies.html (last accessed Nov. 29, 2021) (attached as Ex. 7); Life Technologies Corp., Current Report, at (Form 8-K), (Nov. 21, 2008) https://www.sec.gov/Archives/edgar/data/1073431/000119312508244797/d8k.htm ("Life Technologies Corporation (formerly known as Invitrogen Corporation).") (attached as Ex. 8).

[10] The two articles are: Miriam Pollak, *Biospecimen Consent: Lessons from Henrietta Lacks* (Jun. 30, 2016), https://www.thermofisher.com/blog/biobanking/biospecimen-consent-lessons-from-henrietta-lacks/ (attached as Ex. 9); and Amanda Maxwell, *Achieving Equitable Minority Representation in Biobanking* (Mar. 14, 2017), https://www.thermofisher.com/blog /biobanking/achieving-equitable-minority-representation-in-biobanking/ (attached as Ex. 10).

[11] JustAdamCurtis, *The Way of All Flesh, supra* n.7, at 48:58-49:16.

[12] *Id.* at 49:22-49:30.

with her cells.  From my research, I found out they selling her cells all over the world.  And I just wanted to find out who is making money off my mother's cells."[13]

On August 9, 2010, Lawrence Lacks, represented by counsel, petitioned the Orphan's Court for Baltimore County to be appointed successor personal representative to the Henrietta Lacks Estate.  *See* Pet. Successor Personal Rep., *In re Estate of Henrietta Lacks*, No. 113489 (Aug. 9, 2010) (attached as Ex. 11).[14]  Mr. Lacks represented in that petition that he "desires to continue the Estate *for Litigation only*."  *Id.* ¶ 4 (emphasis added).  The petition was granted, with the order that "the proceeding in this Estate shall continue to be administered as a Small Estate for Litigation only."  Order, *In re Estate of Henrietta Lacks*, No. 113489 (Aug. 9, 2010) (attached as Ex. 12).

Seven years later, in 2017, an attorney named Francis Lanasa entered an appearance in the estate matter, requesting an updated letter of administration that was "needed for litigation purposes only."  Letter to Register of Wills, *In re Estate of Henrietta Lacks*, No. 113489 (Feb. 9, 2017) (attached as Ex. 13).  A hand-written note at the bottom of the letter noted Mr. Lanasa was entering his appearance as "The attorney for litigation."  *Id.*  Less than one week later, that same attorney went public, along with Lawrence Lacks (the representative of the Estate at the time) and Ron Lacks, telling a Baltimore Sun reporter that the Lacks family intended to sue Johns Hopkins University "and possibly other institutions" under a "continuing tort" theory.[15]  The article went

---

[13] *Id.* at 49:30-49:57.  The documentary then continued, "The lawyers approached most of the major biotechnology and pharmaceutical companies.  Everywhere they were turned away.  It seemed they had no legal case.  Henrietta Lacks had died too long ago."  *Id.* at 49:22-50:11.

[14] *See United States v. Judd*, 807 F. App'x 242, 245 (4th Cir. 2020) (the court "may take judicial notice of court records") (citing *United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018)).

[15] Andrea K. McDaniels, *Henrietta Lacks' family wants compensation for her cells*, Baltimore Sun (Feb. 15, 2017), https://www.baltimoresun.com/health/bs-hs-henrietta-lacks-johns-hopkins-20170213-story.html (attached as Ex. 14).

7

on, "Ron Lacks, Lawrence Lacks' son, said *pharmaceutical companies*, authors, hospitals and scores of other institutions have made money off of his grandmother's cells."[16]  To date, no such lawsuit appears to have been filed.

One year later, a new attorney named Christina Bostick entered an appearance in the estate matter, taking the place of Mr. Lanasa.  *See* Line to Strike and Enter Appearance, *In re Estate of Henrietta Lacks*, No. 113489 (May 29, 2018) (attached as Ex. 15).  Another news cycle followed, as Ms. Bostick told the Washington Post that she planned to file a petition in Baltimore County seeking "guardianship" of HeLa cells on behalf of Lawrence Lacks, then the executor of the Estate.[17]  Ms. Bostick said she had represented Lawrence Lacks and his sons for more than a year, and said, "There are 17,000 U.S. patents that involve HeLa cells, which are theoretically continuing to make money."  Notably, Ms. Bostick also conceded that, because HeLa cells can be purchased on an open market, "the purchaser owns the rights to the cells it acquires."  *Id.*  Though Ms. Bostick made additional press appearances about Mr. Lacks's litigation plans,[18] again it appears no such actions were filed in court.

All of this took place before October 4, 2018—the date marking three years before the Complaint was filed in this case.[19]

---

[16] *Id.* (emphasis added).

[17] DeNeen L. Brown, *Can the 'immortal cells' of Henrietta Lacks sue for their own rights?*, Wash. Post (Jun. 25, 2018), https://www.washingtonpost.com/news/retropolis/wp/2018/06/25/can-the-immortal-cells-of-henrietta-lacks-sue-for-their-own-rights/ (attached as Ex. 16).

[18] Phoebe Unterman and Kai Ryssdal, *Who owns Henrietta Lacks' cells?*, Marketplace (Jul. 9, 2018), https://www.marketplace.org/2018/07/09/who-owns-henrietta-lacks-disembodied-cells/ (attached as Ex. 17).

[19] Lawrence Lacks was administrator until October 1, 2021—three days before the Complaint was filed—when his son, Ron Lacks, was appointed.  *See* Consent to Appointment of Personal Representative, *In re Estate of Henrietta Lacks*, No. 113489 (Oct. 1, 2021) (attached as Ex. 18).

## STANDARD OF LAW

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *Mazariegos v. Pan 4 Am., LLC*, 2021 WL 4339434, at *2 (D. Md. Sept. 23, 2021) (citations omitted). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted).

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* To be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508 (citations omitted). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts

9

only if they are "not subject to reasonable dispute," in that they are "'(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Whetstone v. Mayor & City Council of Baltimore City*, 2019 WL 1200555, at *3–5 (D. Md. Mar. 13, 2019) (quoting Fed. R. Evid. 201).

## ARGUMENT

### I.   Plaintiff's Unjust Enrichment Claim Is Time-Barred.

#### a.  Any Claim Accrued Decades Ago.

A court should dismiss a complaint on statute of limitations grounds where, as here, "the time bar is apparent on the face of the complaint." *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).  Maryland's statute of limitations for unjust enrichment is three years, which begins to run when the plaintiff "knew or reasonably should have known of the wrong." *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516, 531 (2016) (quoting *Poffenberger v. Risser*, 290 Md. 631, 636 (1981)).  Here, the Complaint was filed October 4, 2021, and Plaintiff knew (or reasonably should have known) of the factual basis for the Complaint by October 4, 2018. Therefore, the Complaint is time-barred.

Just as the Complaint cites widespread publicity as putting Thermo Fisher on notice of a problem with selling HeLa cells, *see* Compl. ¶ 8 ("The publicity surrounding Ms. Lacks' cells is such that no reasonable person who works with HeLa cells could be unaware of the fact the cell line was wrongfully taken from Henrietta Lacks' body without her consent or knowledge."), so too did that widespread publicity put Plaintiff on notice of the alleged wrong giving rise to this Complaint.  To allow this Complaint to move forward now—decades later—would create precisely the situation that statutes of limitations are designed and intended to avoid: a case in

10

which the search for truth is seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *Tomanio*, 446 U.S. at 487.

Here, it is readily apparent from the face of the Complaint, supporting documents, and judicially noticeable materials, that Plaintiff has known of the issues raised in the Complaint for decades.  Indeed, Paragraphs 8 and 39 of the Complaint detail the widespread publicity as to the alleged wrongful taking of Ms. Lacks's cells.

Paragraph 8 states, in relevant part:

> Today, however, the origins of the HeLa cell line have been widely publicized—including by a bestselling book, a film starring Oprah Winfrey, and thousands of media reports. The publicity surrounding Ms. Lacks' cells is such that no reasonable person who works with HeLa cells could be unaware of the fact the cell line was wrongfully taken from Henrietta Lacks' body without her consent or knowledge.

Paragraph 39 likewise states, in relevant part:

> In recent years, the origins of the HeLa cell line have become widely known. Today, the fact that HeLa cells were taken from Henrietta Lacks without her knowledge or consent has been extensively publicized. The extensive publicity of the taking of parts of Henrietta Lacks' body without her consent includes:
>
> (a) A nonfiction book which spent 75 weeks on the New York Times Best Seller list, including a substantial period in the number one slot;
>
> (b) Mentions in more than 2,700 academic articles discussing issues of patient consent and medical ethics;
>
> (c) A movie starring Oprah Winfrey that aired on HBO;
>
> (d) Tens of thousands of media articles in the international, national, and local press; and
>
> (e) Official recognition of Henrietta Lacks' contributions to medical science by the United States House of Representatives.

While the sources for the claims made in Paragraphs 8 and 39 are not explicitly dated in the Complaint, the dates and items referenced are readily ascertainable and not subject to reasonable debate.  Paragraph 39(a)'s reference to "[a] nonfiction book which spent 75 weeks on the New York Times Best Seller list, including a substantial period in the number one slot" is Rebecca Skloot's bestselling *2010* book, "The Immortal Life of Henrietta Lacks."  The book specifically identified Invitrogen, later acquired by Thermo Fisher, *see supra* n.9, as selling HeLa cell products.  *Immortal Life* (Ex. 1), at 194.  No other book on this subject has spent even one week on the New York Times Best Sellers list, let alone 75.

Paragraph 39(c)'s reference to "[a] movie starring Oprah Winfrey that aired on HBO" is "The Immortal Life of Henrietta Lacks," the movie, which was released in *2017*.[20]  No other movie about Henrietta Lacks and starring Oprah Winfrey has ever been made.  Paragraph 39(e)'s reference to official recognition by the House of Representatives refers to a *2017* resolution by Congressman Elijah Cummings honoring Ms. Lacks's legacy and noting that "the advances made possible by Henrietta Lacks' cells and the revenues they generated were not known to her family for more than *twenty years*," and that "Henrietta Lacks and her family's experience is fundamental to modern bioethics policies and informed consent laws."  Recognizing the life and legacy of Henrietta Lacks during Women's History Month, H. Con. Res. 38, 115th Cong. (2017) (emphasis added).

The Complaint also quotes from a pair of articles from Thermo Fisher's website for the purpose of showing awareness of controversy surrounding Ms. Lacks's treatment.  *See* Compl. ¶ 41.  But those quoted articles are from *2016 and 2017*—more than four years before Plaintiff

---

[20]  The Immortal Life of Henrietta Lacks, HBO, official site available at https://www.imdb.com/title/tt5686132/ (last visited Dec. 15, 2021).

filed this lawsuit.[21]  Thus, from the face of the Complaint alone, it is readily apparent that Plaintiff knew or should have known of the alleged wrongs it complains of in this lawsuit by 2017, at the very latest.

Moreover, representatives of the Estate were actively exploring and contemplating potential legal claims regarding HeLa cells for decades. This is readily apparent in additional materials properly subject to judicial notice.  Ms. Lacks's son and grandson (Lawrence and Ron Lacks, respectively) were personally interviewed on camera in the 1997 BBC Documentary, and they spoke of having used lawyers to find out "who is making money" off Ms. Lacks's cells.[22] Lawrence Lacks became the Estate's administrator in August 2010 for the express purpose of "litigation,"[23] and would have still known by then of the issues surrounding HeLa cells, particularly as Rebecca Skloot's book was published that same year.  *Immortal* Life (Ex. 1), at Copyright Page.  Lawrence Lacks remained personal administrator until October 1, 2021, when his son Ron Lacks took over.  *See supra* n.19.  During that time, in 2017 and June 2018 (before October 2018), Lawrence and Ron Lacks and their attorneys made two rounds of litigation threats

_____

[21] The dates are indicated in the bylines of each article—the quoted articles are available, respectively, at https://www.thermofisher.com/blog/biobanking/biospecimen-consent-lessons-from-henrietta-lacks/; https://www.thermofisher.com/blog/biobanking/achieving-equitable-minority-representation-in-biobanking/.  *James v. Acre Mortg. & Fin., Inc.*, 306 F. Supp. 3d 791, 797 (D. Md. 2018) ("In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider documents incorporated into the complaint by reference[.]"), *rev'd* on other grounds and *remanded sub nom. Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019).

[22] *The Way of All Flesh, supra* n.9, at 49:30-50:11.  Indeed, the documentary reported their lawyers "approached most of the major biotechnology and pharmaceutical companies."  *Id.*

[23] *In re Estate of Henrietta Lacks*, No. 113489 (Aug. 9, 2010) (attached as Ex. 11); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106, at 505 (1977)).

in the media, calling out institutions including "pharmaceutical companies" and saying they would be filing lawsuits. *See supra* n.22.

It is appropriate to take notice of these media accounts, not for their truth but for the fact that the matters discussed in the Complaint were in the public realm—and specifically known to Plaintiff—well before October 4, 2018. *See, e.g.*, *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp 2d 751, 758 (D. Md. 2013) ("[District courts in this circuit "routinely take judicial notice of newspaper articles, analysts' reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint.") (citations omitted); *Colonial Penn*, 887 F.2d at 1239 ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records."); *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (in affirming the district court's dismissal of a securities action because the claim was time-barred, the court took judicial notice of newspaper articles for the purpose of establishing "what was in the public realm at the time, not whether the contents of those articles were in fact true"); 1 Weinstein's Evidence Manual § 4.02 (2021) ("Courts may also take judicial notice of facts that various newspapers, magazines, and books were published solely as an indication of information in the public realm at the relevant time, not whether the contents of those articles were, in fact, true."). The long public discourse here—and Plaintiff's participation in that discourse—makes clear that Plaintiff not only should have known but did in fact *know* of the facts and issues forming the basis of the Complaint for years, but failed to take action in a timely manner.

14

To recap, the timeline of that public discourse is as follows:

| | |
|---|---|
| 70 years ago: | HeLa cells are discovered; Henrietta Lacks dies.[24] |
| 50 years ago: | Henrietta Lacks's identity as the source of HeLa cells is made public.[25] |
| 46 years ago: | Rolling Stone and Ebony magazine publish articles about Henrietta Lacks, interviewing Lacks family members, and noting HeLa cells' widespread availability.[26] |
| 24 years ago: | BBC documentary airs featuring interviews with Lawrence and Ron Lacks describing consultations with lawyers.[27] |
| 11 years ago: | "The Immortal Life of Henrietta Lacks" is published, detailing Ms. Lacks's treatment and naming several companies whose business involved HeLa cells, including Invitrogen, acquired by Thermo Fisher Scientific in 2014.[28] |
| 4+ years ago: | HBO releases "The Immortal Life of Henrietta Lacks," starring Oprah Winfrey.[29] |
| | U.S. House of Representatives passes resolution honoring Henrietta Lacks.[30] |
| | Attorney engaged by Lawrence Lacks publicly announces intent to sue Johns Hopkins University and "possibly other institutions" under a "continuing tort" theory.[31]  No lawsuit is filed. |

---

[24] Compl. ¶¶ 35-36.

[25] Jones, et al., *After Office Hours*, *supra* n.5.

[26] Rogers, *The Double-Edged Helix*, *supra* n.6; *The Miracle of 'HeLa'*, *supra* n.6.

[27] *The Way of All Flesh*, *supra* n.7, at 49:22-49:30.

[28] *Immortal Life*, *supra* n.1, at 194.

[29] The Immortal Life of Henrietta Lacks, HBO, *supra* n.20.

[30] H. Con. Res. 38, 115th Cong. (2017), *supra* at p.12.

[31] McDaniels, *Henrietta Lacks' family wants compensation for her cells*, *supra* n.15.

June 2018:  Another attorney for Lawrence Lacks publicly states plans to file a petition seeking "guardianship" of HeLa Cells.[32]  Again, no lawsuit is filed.

October 4, 2021: This Complaint is filed.

For all these reasons, the Complaint is time-barred and should be dismissed.

### b.  The Continuing Harm Doctrine Does Not Apply.

To the extent Plaintiff will seek to save its time-barred claim by invoking the "continuing harm doctrine,"[33] that too fails.[34]

**First**, the continuing harm doctrine does not apply to unjust enrichment claims, as confirmed by the Maryland Court of Appeals as recently as a few months ago.  *Cain v. Midland Funding, LLC*, 256 A.3d 765, 791 (Md. Ct. App. 2021) (surveying prior continuing harm doctrine cases and rejecting the doctrine for an unjust enrichment claim for alleged unlawful debt collection).  The Court explained, "the doctrine is usually applied in nuisance, trespass, and other tort cases."  *Id.*; *see also Walton v. Network Solutions*, 221 Md. App. 656, 676-77 (2015) ("[A]lleged conduct of continually sending [the plaintiff] e-mails was [not] a 'continuing harm'" under the Maryland Consumer Protection Act, because there was "no intrusion by way of trespass or nuisance onto appellant's property, justifying the application of the continuing harm doctrine.").

**Second**, even if the continuing harm doctrine did apply to unjust enrichment claims, it does not apply to "the *continuing ill effects* from [an] original alleged violation," as is asserted here.

---

[32] Brown, *Can the 'immortal cells' of Henrietta Lacks sue for their own rights?*, *supra* n.17.

[33] "The continuing harm doctrine permits recovery by an injured party caused by a tortfeasor's sequential breaches of an ongoing duty by imposing a new limitations period for each breach." *Cain*, 256 A.3d at 791 (citing *Litz v. Maryland Dep't of Env't*, 434 Md. 623, 649 (2013)).

[34] *See* McDaniels, *Henrietta Lacks' family wants compensation for her cells*, *supra* n.15 ("Francis Lanasa, the attorney who will represent the family, said that he would use a 'continuing tort' argument, alleging that Johns Hopkins had continued to violate the 'personal rights, privacy and body parts' of Henrietta Lacks over time.") (Ex. 15).

*Cain*, 256 A.3d at 793.  Rather, it applies only in the limited context of "*ongoing wrongful conduct*" in violation "of an ongoing duty," like an ongoing fraud arising from a false statement on a billboard, or an ongoing trespass or nuisance.  *Id.* at 791, 793 (citing *Shell Oil Co. v. Parker*, 265 Md. 631 (1972), and *Litz v. Maryland Dep't of Env't*, 434 Md. 623 (2013)); *MacBride v. Pishvaian*, 402 Md. 572, 585 (2007) (abrogated on other grounds by *Litz*, 434 Md. 623) (rejecting the continuing harm doctrine in tenant's suit against her landlord for unjust enrichment due to water intrusion and mold issues that had allegedly worsened because the tenant's complaints were "merely the continuing ill effects from the original alleged violation," and not a "series of acts or course of conduct . . . that would delay accrual of a cause of action to a later date.").

Here, the Complaint identifies no legal duty, let alone an "ongoing duty," that Thermo Fisher allegedly owes Plaintiff.  And Plaintiff's alleged injury—that Thermo Fisher and countless other companies have made money for decades from HeLa cells stemming from Ms. Lacks's alleged mistreatment by doctors in 1951—describes the "continuing ill effects from [an] original alleged violation."  *Id.*  Indeed, Plaintiff asserts the HeLa cells at issue come from the now-70-year-old alleged "assault of Henrietta Lacks."  Compl. ¶ 15.  Consequently, the continuing harm doctrine cannot and does not apply.

### c.  This Case Underscores Why Statutes of Limitations Exist.

Statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944); *see also Kubrick*, 444 U.S. at 117 ("[Statutes of limitations] protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading

memories, disappearance of documents, or otherwise.") (citations omitted); *Bell v. Morrison*, 26 U.S. (1 Pet.) 351, 360 (1828) ("[Statutes of limitations] afford security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses."). Thus, "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation." *Order of R.R. Telegraphers*, 321 U.S. at 349. Further, "there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious." *Tomanio*, 446 U.S. at 487.

This case typifies these concerns. In the 70 years since Ms. Lacks's treatment, HeLa cells have become "an essential resource for medical research in labs worldwide." Compl. ¶ 37. As evidence of the widespread reliance on HeLa cells, there are more than 110,000 scientific publications citing the use of HeLa cells from between 1953 to 2018.[35] And there are nearly 17,000 patents from that time period citing work based on HeLa cells.[36] All this research and discovery was made possible by decades of work by scientists around the world. Without a statute of limitations, every company or researcher that ever benefitted financially from working with HeLa

---

[35] National Institutes of Health Office of Scientific Policy, *HeLa Cells: A Lasting Contribution to Biomedical Research,* https://osp.od.nih.gov/scientific-sharing/hela-cells-landing/. The Court may take judicial notice of information posted on a government website. *See, e.g.*, *Williams v. Maryland*, No. ELH-17-1058, n.1 (D. Md. Apr. 21, 2017) ("The court may take judicial notice of factual information located in postings on government websites.") (citing *Hall v. Virginia*, 385 F.3d 421, 423 at n.3 (4th Cir. 2004)).

[36] *See, e.g.*, Faroque A. Khan, *The Immortal Life of Henrietta Lacks*, The Journal of IMA, at 43(2), 93-94 (2011); *see also* Brown, *Can the 'immortal cells' of Henrietta Lacks sue for their own rights?*, *supra* n.17 ("There are 17,000 U.S. patents that involve HeLa cells, which are theoretically continuing to make money.") (quoting former attorney for Lacks family).

cells would be forever liable and under threat of suit.  Statutes of limitations are designed to avoid such boundless liability and uncertainty.

The passage of time will also impair fact-finding, to Thermo Fisher's unfair detriment. Had Plaintiff brought this suit when it knew or should have known it could have done so, the parties might have had the benefit of hearing from live witnesses about what occurred in 1951 and the choices that were made afterwards.  Dr. Howard Jones, the most recently deceased of Ms. Lacks's doctors, quoted derisively in Paragraph 26 of the Complaint, died in 2015, five years after the publication of Rebecca Skloot's book.[37]  Every other doctor named in the Complaint has died as well, and cannot be called to testify.[38]  Thermo Fisher should not bear the cost of this loss of evidence caused by Plaintiff's delay.

## II. Even if Not Time-Barred, Plaintiff's Unjust Enrichment Claim Must Be Dismissed Because Plaintiff Does Not—And Cannot—Allege An Underlying Tort.

Separate from the statute of limitations, the Complaint must be dismissed for the additional reason that Plaintiff has failed to—and indeed, cannot—allege an underlying tort to its unjust enrichment claim. Plaintiff expressly "brings a single cause of action—unjust enrichment." Compl. ¶ 15.  But unjust enrichment claims do not survive in Maryland where, as here, the Plaintiff does not plead an underlying tort.  *See, e.g.*, *Wash. Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698 (D. Md. 2020); *Temescal Wellness of Md. LLC v. Faces Human Capital, LLC*, 2021 WL 4521343 (D. Md. Oct. 4, 2021).

---

[37] Howard W. Jones Jr., *Pioneer in Reproductive Medicine, Dies at 104*, available at https://www.hopkinsmedicine.org/news/media/releases/howard_w_jones_jr_pioneer_in_reproductive_medicine_dies_at_104 (last visited Dec. 15, 2021).

[38] Dr. Richard W. TeLinde died in 1989.  *See* https://professorships.jhu.edu/professorship/richard-w-telinde-distinguished-professorship-in-gynecological-pathology/.  Dr. George Gey died in 1970.  *See* https://www.nytimes.com/1970/11/09/archives/george-o-gey-71-cancer-lab-head-cell-biologist-honored-for-tissue.html.

In *Washington County*, the plaintiff sued a drug manufacturer after paying almost $3 million for two of its employees to receive a drug that had increased in price from $40 to $40,000 per vial.  431 F. Supp. 3d at 703.  The plaintiff pleaded five claims, including unjust enrichment. *Id.*  Chief Judge Bredar dismissed all claims before turning to the unjust enrichment claim, where he noted it was unclear "whether it is permissible under Maryland law for a suit to consist of a single claim for unjust enrichment without an accompanying underlying tort." *Id.* at 718.  The Court observed, "the standard approach courts appear to take is to dismiss an unjust enrichment claim if the court concludes the plaintiff has not stated a claim for tortious conduct." *Id.*  Thus, the Court was "reluctant to overstep its bounds":

> While the conduct Plaintiff alleges in its complaint is certainly problematic, Plaintiff has not yet identified a law that it violated. For the Court to conclude Defendants could be liable to Plaintiff—for potentially millions of dollars—on principles of "justice and fairness" alone, would be a significant step that the Court declines to take without more clearly supportive precedent.

*Id.* (citing *Mass Transit Admin. v. Granite Const. Co.*, 57 Md. App. 766, 775 (Md. Ct. Spec. App. 1984)); Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)).

Similarly, in *Temescal Wellness*, a payroll business was alleged to have failed to make required payments and to have misappropriated the plaintiff's funds.  2021 WL 4521343, at *8. Judge Russell first dismissed the plaintiff's contract and tort claims, then dismissed the remaining unjust enrichment claim out of hand because "[a]s a matter of practice, courts tend to dismiss an unjust enrichment claim if the court concludes the plaintiff has not stated a claim for tortious conduct." *Id.* at *6-8.[39]

---

[39] *See also Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*, 2021 WL 1909592 (D. Md. May 12, 2021).  In *Monterey Mushrooms*, the plaintiff brought a standalone unjust enrichment

This Court's holdings in these cases are consistent with the Third Restatement of Restitution and Unjust Enrichment, which the Complaint cites as "settled law." Compl. ¶ 15. Section 44 of the Restatement makes clear that unjust enrichment based on tortious conduct cannot be claimed without the underlying tort, rejecting a case that seemed to imply otherwise. Restatement § 44 ("The implication that there might be a residual cause of action under the general heading of 'restitution for wrongs,' not requiring the claimant to prove any actionable breach of duty, is contrary to the rule of § 44 and to the principles of this Restatement.").

There is no reason to depart here from this Court's standard practice of dismissing an unjust enrichment claim where it is based on alleged tortious conduct but pleaded without an underlying tort. Indeed, Judge Bredar's concerns in *Washington County* are even more strongly presented here. As there, Plaintiff here has not identified *any* law alleged to have been violated by anyone with respect to Ms. Lacks, let alone a law allegedly violated by *Thermo Fisher*. But unlike in *Washington County*, where the defendant was alleged to have committed wrongful acts against the plaintiff, here Plaintiff has not identified any act by Thermo Fisher towards Ms. Lacks at all. For this Court to conclude, as Plaintiff urges, that Thermo Fisher nonetheless "could be liable to Plaintiff—for potentially millions of dollars—on principles of 'justice and fairness' alone, would be a significant step" with no limiting principle and even less support than in *Washington County*.[40]

---

claim alleging that it overpaid the defendant nearly $115,000 for health plan administrative services. 2021 WL 1909592, at *1. Judge Blake distinguished *Washington County*, observing that dismissal of stand-alone unjust enrichment claims "typically occurs where an unjust enrichment claim is premised on the tortious conduct rather than independent conduct." *Id.* at *3. Because there was no underlying tortious conduct alleged in the case (but rather unreturned overpayments), the Court permitted the plaintiff to plead unjust enrichment without an underlying tort. *Id.*

[40] Though it is clear from *Washington County* and *Temescal* that this Court routinely dismisses standalone unjust enrichment claims as here, should this Court desire more clarity as to the proper course under Maryland law, it could certify a question to the Maryland Court of Appeals.

III.    **The Complaint Fails To Plead That Thermo Fisher Was Not A Bona Fide Purchaser For Value.**

Maryland law is well settled that "a plaintiff cannot state a claim for unjust enrichment against a bona fide purchaser for value." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009). Stated another way, a "claim for unjust enrichment requires an allegation that the defendant was not a bona fide purchaser." *Id.  See also*, *Plitt v. Greenberg*, 242 Md. 359, 364-65 (1966) ("[I]f a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession.") (citations omitted); Restatement (First) of Restitution § 123 cmt. a (1937) (unjust enrichment "does not apply to a person who, without notice of an equitable ownership, has become a bona fide purchaser of the property").

Here, the Complaint must be dismissed because Plaintiff has failed to plausibly allege, as it must, that Thermo Fisher was not a bona fide purchaser of HeLa cells (nor could Plaintiff have a good faith basis to make such an allegation, given Thermo Fisher played no part in the original collection of HeLa cells from Ms. Lacks).  In fact, the Complaint contains *no facts at all* about Thermo Fisher's acquisition of HeLa cells, let alone a factual basis for claiming Thermo Fisher was on notice of Plaintiff's equitable claim when Thermo Fisher acquired the cells.  While Plaintiff vaguely asserts that Thermo Fisher "received a benefit" at some (unidentified) point from selling HeLa cell products, it then jumps to the conclusion that "[a]cceptance or retention of the HeLa cell line was inequitable without payment or permission."  *See* Compl. ¶¶ 12-13, 48-51.  But this amounts to nothing more than "labels and conclusions" or a "formulaic recitation of the elements," which "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that, to survive a motion to dismiss, a complaint "must contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face," and "[t]hreadbare recitals of the elements of a cause of action,

22

supported by mere conclusory statements, do not suffice") (quotations omitted) (emphasis added).

Having failed to allege any facts showing that Thermo Fisher was not a bona fide purchaser of

HeLa cells from a third-party, the "unjust enrichment claim must be dismissed." *Haley*, 659 F.

Supp. 2d at 724.

**IV.    Dismissal Should Be With Prejudice Because Amendment Would Be Futile.**

Dismissal here should be with prejudice because Plaintiff cannot plead around these

deficiencies and issues.  Any revised unjust enrichment claim will still be time-barred under

Maryland's three-year statute of limitations, as will any other claim Plaintiff may attempt to assert.

*Littlejohn v. BWW Law Grp. & Assoc.*, 2014 WL 6391119, at *7 (D. Md. Nov. 14, 2014) ("Because

Littlejohn has not set forth any potentially valid claim that is not time-barred and there is no

indication that he could do so, there is no need to allow these claims to move past the pleading

stage.").  Additionally, Plaintiff has no good faith basis to assert that Thermo Fisher was anything

other than a bona fide purchaser for value of HeLa cells.  These issues cannot be cured.  Thus, any

amendment would be futile, and dismissal should be with prejudice.

## CONCLUSION

For all these reasons, Plaintiff's Complaint should be dismissed with prejudice.


Respectfully submitted,


Dated:  December 15, 2021                    */s/ Tonya Kelly Cronin*

Tonya Kelly Cronin (Bar No. 27166)
BAKER DONELSON
100 Light St.
Baltimore, MD 21202
Tel.:410-862-1049
tykelly@bakerdonelson.com

23

Nadira Clarke (Fed. Bar No. 20254)
Andrew T. George (Fed. Bar No. 19755)
Adam Dec*
Eileen F. Hyde**
JoAnna B. Adkisson**
BAKER BOTTS L.L.P.
700 K St. NW
Washington, DC 20001
Tel.: 202-639-7764
nadira.clarke@bakerbotts.com
andrew.george@bakerbotts.com
adam.dec@bakerbotts.com
eileen.hyde@bakerbotts.com
joanna.adkisson@bakerbotts.com

*Admission pending
**Admitted pro hac vice

Attorneys for Defendant

24