

2123 Maryland Avenue
Baltimore, Maryland 21218
**P:** 410.234.2621
**F:** 443-486-1691
www.kpcounsel.com

KIM PARKER, ESQUIRE.^
JOHN WOOD, ESQUIRE
Of Counsel

^Licensed to Practice in Maryland & The District of Columbia

**ATTORNEYS AT LAW**

May 20, 2022

**CORRECTED COPY**
**VIA ELECTRONIC FILING**
The Honorable Deborah L. Boardman
United States District Judge
U.S. District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re: *Lacks v. Thermo Fisher Scientific, Inc.*, No. 1:21-cv-02524

Dear Judge Boardman:

    Plaintiff writes to respond to Thermo Fisher Scientific's ("TFS") May 19, 2022 supplemental letter brief (Letter Brief). TFS's Letter Brief is the latest example of its litigation strategy to bombard this Court with improper evidence drawn from outside the Complaint, contrary to the rule that extrinsic evidence normally should not be considered on a Rule 12(b)(6) motion to dismiss, and untethered to the two narrow exceptions in which extrinsic evidence may be considered. That effort culminated in TFS's extraordinary request at the May 17, 2022 oral argument to submit a sworn affidavit on the issues in its motion to dismiss. Now, following oral argument, TFS submits still more voluminous evidence (well over a thousand pages)—evidence that was clearly available to it during the many months that its motion to dismiss has been pending. This Court should decline to consider TFS's post-argument Letter Brief and attached materials.

    Even if the Court were to consider TFS's Letter Brief in determining TFS's motion to dismiss (which it should not do), the Court should still deny its motion to dismiss. Judicial notice is not a proper tool to bypass the protections of the Federal Rules against improper dismissal of claims—most particularly, the protection of discovery on disputed factual matters. Nor is judicial notice appropriate to determine the accuracy of factual claims contained within a patent: Although the court may take judicial notice of the existence of a patent, the specific factual

claims in a patent are not subject to judicial notice. In any event, TFS's Letter Brief ignores Plaintiff's argument that the lawsuit is timely under the separate accrual and continuing violation doctrines. At bottom, the fact that TFS feels constrained—post oral argument—to proffer massive additional evidence shows conclusively that this is not the rare case in which a statute of limitations defense should be decided at the motion to dismiss stage.

### A. TFS's Letter Brief Should Be Disregarded Because It Is Procedurally Improper.

The practice of raising new arguments by letter brief after oral argument is an improper "procedural ambush" that undermines the interests of fairness and the integrity of the Federal Rules. *United States v. Venable*, 943 F.3d 187, 192 (4th Cir. 2019); *United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013). Furthermore, considering such arguments "is not only unfair to the [opposing party], it also creates the risk of an improvident or ill-advised opinion being issued on an unbriefed issue." *Ashford*, 718 F.3d at 381. Further, considering such arguments risks encouraging other litigants to engage in similar procedural gamesmanship, inviting chaos in the briefing process. These principles apply *a fortiori* to the submission of more than a thousand pages of new extrinsic evidence after oral argument, especially in the context of a 12(b)(6) motion, in which evidence is rarely appropriate in any event. *E.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). What is more, these principles apply *a fortiori* in the context of a motion based on statute limitations, given that statute of limitations is an affirmative defense that is rarely appropriate for resolution on a motion to dismiss. *E.g.*, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

TFS has not offered—and cannot offer—any explanation for why it did not make its arguments or evidentiary submissions in its initial motion—or at the latest in its reply brief. Its contention (Letter Brief at 1) that the submission is "responsive to questions raised during the May 17, 2022 hearing" is disingenuous. Nothing in the Letter Brief relates to issues that were not previously raised in the briefing. Nor did TFS even ask for permission at the hearing to submit the material and arguments contained in its Letter Brief. Instead, TFS asked only for permission to submit a post-argument sworn affidavit, and to brief previously unraised laches arguments. The Court did not grant either request, so TFS had no reason to believe that the filing of its Letter Brief would be acceptable. Quite the contrary. This Court should not countenance TFS's disregard of the basic rules governing federal civil litigation by considering its new arguments and more than 1000 pages of new evidence.

The Honorable Deborah L. Boardman
May 20, 2022
Page 3

### B. TFS's Request for Judicial Notice Is Improper.

#### 1. Judicial notice is not an appropriate end-run around the basic procedural protections of the Federal Rules of Civil Procedure.

Judicial notice cannot "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 360 (4th Cir. 2013) (citing cases; internal quotation marks omitted). TFS has not—at any point in this litigation—explained how its entreaty to the Court to take judicial notice of a wide array of extraneous materials for the truth of the matter asserted is consistent with this precedent.

#### 2. Although courts may take judicial notice of the fact that a patent was issued, TFS's request for judicial notice goes far beyond what precedent allows.

A core flaw of TFS's Letter Brief is that it ignores an important distinction between the existence of a patent—which courts take judicial notice of—and the factual claims within a patent—which are not appropriate for judicial notice.

Inventors who apply for a patent are required to provide a written description of their invention sufficient to allow another person skilled in the relevant art to make and use the invention. 35 U.S.C. § 112(a). Because of this requirement, "[p]atents include a lot of information beyond the claims themselves," often including "a general background on the relevant technology and descriptions of prior solutions." Christopher A. Cotropia, *What Is the "Invention"?*, 53 Wm. & Mary L. Rev. 1855, 1866 (2012). When a patent is approved, these written descriptions are taken directly from the patent application and included in the patent— and are thus written by the applicant, not by the government. *See, e.g.*, ECF 73-1 at 249 (referring, in language incorporated in the patent, to "[t]his application" for a patent).This context matters because the Federal Rule of Evidence governing judicial notice, Rule 201, permits notice of a "fact," not of a document. A fact may only be judicially noticed if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Factual claims within a patent do not meet this standard. As one court cogently stated, "Although judicial notice generally may be taken of Patent and Trademark Office documents … judicial notice may not be taken of contested factual information contained within such documents." *Gen. Elec. Co. v. Wilkins*, 1:10-CV-00674-OWW-JL, 2010 WL 3958421, at *4 (E.D. Cal. Oct. 8, 2010) (internal citations and quotations omitted).

The cases that TFS cites stand merely for the undisputed proposition that whether a particular patent was issued and what language that patent contains can be accurately and readily determined from a Patent Office record that a patent was issued. *Anderson v. Kimberly-Clark*

The Honorable Deborah L. Boardman
May 20, 2022
Page 4

*Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) (analyzing language of patent to determine allegedly infringing products were not within its scope); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (taking judicial notice of patent assignment record for purpose of establishing what information was contained within). These cases do not establish that the factual information contained within patent records is accurate, let alone that such information can be used to decide a motion to dismiss. Indeed, *Kaempe* determined that the information within the patent assignment record it took judicial notice of was **inaccurate**. *Kaempe* 367 F.3d at 965 (finding that the Patent Office records contained "misstatements" of the patent's assignment). This is not surprising—there is an entire field of litigation devoted to challenging the accuracy of representations made to the Patent Office in applications. *See, e.g.*, *Prowess, Inc. v. RaySearch Labs., AB*, 953 F. Supp. 2d 638, 648 (D. Md. 2013)(discussing patent validity litigation on the basis of misrepresentations to Patent Office).[1]

TFS is asking this Court to take judicial notice of the accuracy of statements within patents purportedly indicating that HeLa cells were used in the testing of inventions TFS would later come to own. This requires the Court to determine that the factual claims within a patent "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). But one need look no further than *Kaempe* to see that the factual accuracy of Patent Office filings—as opposed to their existence and language—can reasonably be questioned, and indeed, routinely is. 367 F.3d at 965. Therefore, the Court should deny TFS's post-oral argument request for judicial notice.

### C. The Patents TFS Cites Do Not Establish The Date TFS Received HeLa Cells.

Wholly apart from the untimeliness of the Letter Brief and the settled rule that courts cannot take judicial notice of the truth of factual claims within a patent, TFS's submission is fatally flawed because not one of the seven patents as to which it seeks judicial notice actually indicates who owned the HeLa cells that were used in testing. It is routine for patents to be developed by persons other than the current assignee—sometimes because a patent is sold by its original inventor, sometimes because contract laboratories are used to develop some portion of the research, and sometimes for other reasons. It is also common for multiple entities to work

---

[1] The only case cited by TFS that is even arguably susceptible to a broader reading is *Valve Corporation v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 137 n.6 (Fed. Cir. 2021). There, a party argued that records of its own filings with the Patent Office were inadmissible hearsay. *Id.* The Federal Circuit rejected this argument in a footnote, listing an array of rules that might permit the admission of the documents at issue. *Id.* Nothing in *Valve Corporation* suggests that the Federal Circuit intended to hold broadly that the factual material within Patent Office filings is subject to judicial notice. And TFS cites no other case so holding.

The Honorable Deborah L. Boardman
May 20, 2022
Page 5

together to develop an invention. TFS has not established any link between these patents and its possession of HeLa cells. These are factual complexities suited for discovery, not a 12(b)(6) motion.

TFS also cites nine additional patents from entities outside of the TFS corporate family that appear to show sales of HeLa cells to those other entities by TFS or one of its subsidiaries. But it is not clear whether TFS is willing to assert that the Court should take judicial notice of these patents, or if it is instead arguing that they serve to corroborate the seven patents that the TFS corporate family owns and for which it is requesting judicial notice. TFS's apparent unwillingness to endorse statements made in another company's patent application directly underscores why judicial notice is inappropriate here.

To the extent that TFS is seeking judicial notice of the nine corroborating patents, it is worth noting that those patents do not establish or even address when each member of the TFS corporate family gained possession of HeLa cells and under what circumstances. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 272 A.3d 324, 342 (Md. 2022)(internal citations and quotations omitted). For this reason, "a corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary[.]" *Id.* Seven of the nine corroborating patents refer to a subsidiary of TFS, Invitrogen, not to any other member of the TFS corporate family. The other two patents refer only to "Thermo Scientific"—not specifically identifying which members of the TFS corporate family, many of which have names which begin with the words "Thermo Scientific," these cells were purchased from. While Plaintiff has appropriately alleged claims against the entire TFS corporate family,[2] TFS has not cited any authority that would permit a parent company to bootstrap a statute of limitations defense based on a subsidiary's conduct—and surely not at the motion to dismiss stage.

Simply put, the patent filings raise myriad questions that cannot be resolved on a motion to dismiss.

### D. TFS Ignores The Separate Accrual Doctrine And Continuing Violations Doctrine.

---

[2] Am. Compl., (ECF No. 33 at ¶ 33) ("As used in this complaint, "Thermo Fisher Scientific" refers both to Thermo Fisher Scientific Inc. and to its subsidiaries, affiliates, agents, and other entities within its control that have owned, manufactured, distributed, monitored, or sold HeLa cells or related products.").

TFS contends that the patent submissions prove that "Thermo Fisher was conferred the HeLa cell line long before the limitations period." Letter Brief at 1. As noted above, that is not correct. In all events, even if TFS were right, the argument ignores the fact that Plaintiff is relying on two well-settled doctrines of law—separate accrual and continuing violations— that permit Plaintiff to recover even if some portion of TFS's unjust enrichment accrued prior to the statute of limitations period. ECF No. 41 at 31-40. TFS does not and cannot explain how its submission is at all relevant to either doctrine.

Indeed, TFS's Letter Brief strengthens Plaintiff's arguments in favor of the application of both doctrines. If one accepts TFS's framing of events as set forth in its letter, TFS appears to have purchased HeLa cells at many different times to serve discrete commercialization efforts. This only underscores why the Court should deny TFS's motion to dismiss and allow discovery relevant to the separate accrual and continuing violations doctrines.

\* \* \*

This Court should reject TFS's post-argument effort to inundate the Court with new arguments and evidentiary material in support of its Rule 12(b)(6) motion. TFS's gambit raises more questions than it answers and only underscores why courts, with rare exceptions, do not decide statute of limitations defenses on a motion to dismiss.

Respectfully submitted,

/s/ Kim Parker
Kim Parker, Esquire
Federal Bar No.: 23894
**LAW OFFICES OF KIM PARKER, P.A.**
2123 Maryland Ave.
Baltimore, MD 21218
Telephone: 410-234-2621
Fax: 443-486-1691
kp@kimparkerlaw.com

Christopher A. Seeger (*admitted pro hac vice*)
Jeffrey S. Grand (*admitted pro hac vice*)
Christopher L. Ayers *(admitted pro hac vice)*
Nigel P. Halliday *(admitted pro hac vice)*
Yasmine G. Meyer (*admitted pro hac vice*)
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor

The Honorable Deborah L. Boardman
May 20, 2022
Page 7

                                 Ridgefield Park, NJ  07660
                                 Telephone: 212-584-0700
                                 cseeger@seegerweiss.com
                                 jgrand@seegerweiss.com
                                 cayers@seegerweiss.com
                                 nhalliday@seegerweiss.com
                                 ymeyer@seegerweiss.com

                                 Ben Crump *(admitted pro hac vice)*
                                 Christopher O'Neal *(admitted pro hac vice)*
                                 **BEN CRUMP LAW, PLLC**
                                 717 D Street, N.W. Suite 310
                                 Washington D.C. 20004
                                 Telephone: 860.922.3030
                                 ben@bencrump.com
                                 chris@bencrump.com

                                 ATTORNEYS FOR RON L. LACKS, PERSONAL REPRESENTATIVE OF THE ESTATE OF HENRIETTA LACKS

cc:
JoAnna Adkisson, Esq.
Adam Dec, Esq.
Andrew T. George, Esq.
Eileen F Hyde, Esq.
Tonya Kelly Cronin, Esq.