```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
 2                      NORTHERN DIVISION

 3   RON L. LACKS, PERSONAL          )
     REPRESENTATIVE OF THE ESTATE    )
 4   OF HENRIETTA LACKS,             )
           Plaintiff,                )
 5           vs.                     )CIVIL CASE NO.
     THERMO FISHER SCIENTIFIC INC.   )1:21-cv002524-DLB
 6         Defendant.                )
     _____)
 7                                    Baltimore, Maryland
                                      May 17, 2022
 8                                    10:12 a.m.

 9

10               THE ABOVE-ENTITLED MATTER CAME ON FOR
                          MOTIONS HEARING
11           BEFORE THE HONORABLE DEBORAH L. BOARDMAN

12

13                    A P P E A R A N C E S

14   On Behalf of the Plaintiff:
           CHRISTOPHER A. SEEGER, ESQUIRE
15         KIM F. PARKER, ESQUIRE
           BENJAMIN L. CRUMP, ESQUIRE
16   On Behalf of the Defendant:
           ANDREW T. GEORGE, ESQUIRE
17         TONYA KELLY CRONIN, ESQUIRE
           NADIRA CLARKE, ESQUIRE
18
     Also Present:
19         RICK FINST, THERMO FISHER SCIENTIFIC
           GILLIAN THACKRAY, THERMO FISHER SCIENTIFIC
20

21         (Computer-aided transcription of stenotype notes)

22

23                        Reported by:
                    Ronda J. Thomas, RMR, CRR
24                   Federal Official Reporter
                  101 W. Lombard Street, 4th Floor
25                   Baltimore, Maryland 21201
```

2

```
 1                    P R O C E E D I N G S

 2         THE CLERK:  The matter now pending before this court

 3   is Civil Docket Number DLB-21-cv-2524, Lacks v. Thermo Fisher

 4   Scientific, Inc.  This matter comes before the Court for the

 5   purpose of a motions hearing.

 6      Counsel for the Plaintiffs, will you please introduce

 7   yourselves for the record.

 8         MR. SEEGER:  Good morning, Your Honor.  Christopher

 9   Seeger for the Lacks family.

10         MR. CRUMP:  Good morning, Your Honor.  Ben Crump for

11   the Lacks family.

12         MS. PARKER:  Good morning, Your Honor.  Kim Parker on

13   behalf of the Lacks family.

14         THE COURT:  Good morning to all of you.

15         THE CLERK:  Counsel for the defense, will you please

16   introduce yourselves for the record.

17         MS. KELLY:  Yes.  Good morning, Your Honor.  Ty Kelly

18   and Andrew George and Nadira Clarke on behalf of the

19   Defendants.  Also present is Rick Finst and Gillian Thackray

20   who are representatives of the company.

21         THE COURT:  Good morning to all of you.

22         MS. KELLY:  Thank you.

23         THE COURT:  You may have a seat.  Thank you all for

24   being here in this very important case.  We are here today on a

25   motions hearing on the pending Motion to Dismiss that the
```

1   Defendant Thermo Fisher Scientific has filed in this case.

2        There is pending before the Court a one-count complaint

3   filed by the Personal Representative of the Estate of Henrietta

4   Lacks.  The count in the complaint is unjust enrichment and,

5   undoubtedly, we will talk a lot about Maryland law and unjust

6   enrichment today.

7        Before we begin, I do have a number of questions.  I would

8   like to offer counsel the opportunity if they would like to

9   take it for a brief opening statement.  If not, we can get

10  right into the remarks.

11       So who will be speaking on behalf of the Plaintiff?  It's

12  not necessary, but if that's something you're interested in I'm

13  offering it to you.

14       **MR. SEEGER:**  Your Honor, Chris Seeger for the record.

15  Ben Crump and I will be addressing the arguments.  I didn't

16  really prepare an opening statement.

17       **THE COURT:**  Okay.

18       **MR. SEEGER:**  On the other hand, there are some facts

19  we are going to be weaving into the responses.  If I can handle

20  it that way, I can do it that way.  If that's okay with the

21  Court.

22       **THE COURT:**  Why don't you just have a seat then.

23  Thank you.

24       Why don't I do this, I'd like to set the stage by -- I've

25  got what I've prepared as a summary in the allegations in the

1  complaint that I'd like to read into the record.  And for the

2  benefit of the nonlawyers here, on a Motion to Dismiss stage,

3  which is where we're at, the Court has to assume that all of

4  the allegations in the Plaintiff's complaint are true.  And I

5  will read those allegations or summarize them now to provide

6  context for this.

7      The HeLa cell line is one of the most important and

8  widely-used cell lines in the world.  A cell line is a

9  population of cells sharing common lineage that can be

10 maintained in culture, retaining characteristics and functions.

11 While most cell samples die shortly after they are removed from

12 the body, the progenitor cells of the HeLa cell line survived

13 and reproduced.

14     This exceptional quality enabled the cultivation of the

15 first known immortal cell line.  A cell line that could

16 reproduce indefinitely in laboratory conditions.  Medical

17 researchers have used HeLa cells to develop an enormous number

18 of scientific and medical innovations, including the polio

19 vaccine, gene mapping and in vitro fertilization.

20     The origin of the HeLa cell line was once known only to

21 researchers at Johns Hopkins where the line was first

22 cultivated.  Today, the origin has been widely publicized.

23 HeLa cells are named for Henrietta Lacks, a black woman,

24 grandmother, mother, and community leader who received

25 treatment for cervical cancer at Johns Hopkins in

February 1951.

        During a procedure to address a malignant tumor and while
Mrs. Lacks, or Henrietta, was under anesthesia, a white doctor
cut away two tissue samples from her cervix.  This harvest was
not medically necessary.  Nor did Henrietta consent to it.  She
was not told of the plan to harvest tissue samples from her
cervix just as she was not warned of a sure consequence of the
prescribed course of treatment for her cancer, the use of rods
of radioactive radium left Ms. Lacks infertile.  The treatment
also proved ineffective.  Mrs. Lacks died of cervical cancer
eight months after receiving treatment and was buried in an
unmarked grave.

        At the time it was not uncommon for medical institutions
to abuse the trust of black patients in the name of research
and training.

        For example, the United States Public Health Service
working with the Tuskegee Institute in Macon, Alabama, denied
hundreds of black men treatment for syphilis to study how the
disease progressed when untreated.  Poor black women were
subject to systemic forced sterilization through the procedure
known as the Mississippi appendectomy where doctors would
perform, and inexperienced doctors would practice,
hysterectomies under the pretense of appendectomies in order to
prevent poor black women from reproducing.  And during the II
World War, the United States tested chemical agents on black

1  men and threatened soldiers who complained of the practice with

2  prison time.

3      Doctors of Johns Hopkins were no stranger to the manner of

4  research.  The harvested cervical tissue from Mrs. Lacks's

5  unconscious body was not an isolated incident.  Two

6  high-ranking doctors at Johns Hopkins had implemented a

7  practice of collecting tissue samples without consent from

8  black patients with cervical cancer in the hospital's

9  segregated wards.  Dr. Richard Wesley TeLinde, Chair of

10 Gynecology, concocted the plan with Dr. George Gey, Head of

11 Tissue Research.

12     Dr. TeLinde was facing widespread criticism for his

13 practice of frequently removing the cervix, uterus, and

14 substantial portions of the vagina of patients with carcinoma

15 in situ, a condition most of the time did not believe to be

16 deadly.  He believed evidence that carcinoma in situ behaved

17 similar to other forms of cervical cancer, known to be deadly,

18 would validate his approach and repair his reputation.  For

19 this research he wanted cells that could survive in a

20 laboratory.

21     Dr. Gey's research interests were focused on the creation

22 of an immortal cell line, but he required an open-ended supply

23 of human cell samples to repeatedly test the process of

24 creating such a line.

25     Dr. TeLinde proposed having the doctors under his

1  supervision harvest tissue samples from patients in the
2  segregated ward and Gey agreed to use those samples to attempt
3  to cultivate cells that could survive in a laboratory.
4      One doctor involved in the practice summarized, quote,
5  "Hopkins with its large, indigent black population had no derth
6  of clinical material," end quote.
7      For reasons that the scientific community would not come
8  to understand until decades later, Mrs. Lacks's cells had
9  unique properties that enabled them to survive in laboratory
10 conditions.
11     Around the time she passed away, Dr. Gey appeared on
12 television holding a vial of her cells and proclaiming the
13 creation of the first immortal human cell line.  Dr. Gey
14 claimed that the cells came from a person named Helen Lane.
15 HeLa cells were given for free to scientists around the world
16 becoming an essential resource for medical research and part of
17 the foundation for countless scientific papers and numerous
18 medical breakthroughs.
19     The continued cultivation and use of HeLa cells have
20 brought millions of dollars to many companies.  Mrs. Lacks's
21 family and estate have not received any revenue from the use of
22 HeLa cells.  Only recently has the true origin of HeLa cells
23 become public knowledge, including through a best-selling
24 nonfiction book, a movie, thousands of academic and news
25 articles, an official recognition of Mrs. Lacks's contributions

1  to medical science by the United States House of

2  Representatives.

3       Thermo Fisher Scientific, one of the largest biotechnology

4  companies in the world, cultivates HeLa cells and sells them to

5  multiple product lines to buyers around the world.  It also

6  offers contract development and manufacturing services to other

7  biotechnology companies.  Services that involve the use of HeLa

8  cells to support scientific research.

9       Thermo Fisher hosts an article on its website that

10 describes the origin of HeLa cells, including the fact that

11 Mrs. Lacks and her family were unaware that her tissue was used

12 in this way.  Another article on the company's website

13 acknowledges the widespread, but unsanctioned, use of HeLa

14 cells from Henrietta Lacks.

15      Thermo Fisher has never sought or received permission for

16 its use of HeLa cells from the Estate of Henrietta Lacks.  Ron

17 Lacks, the grandson of Mrs. Lacks, filed suit in his capacity

18 as the Personal Representative of the Estate in this court on

19 October 4th, 2021.  Lacks claims Thermo Fisher Scientific's use

20 of HeLa cells results in ongoing unjust enrichment, and he

21 seeks restitution.  Thermo Fisher has moved to dismiss the

22 complaint.

23      Mr. Lacks later filed an amended complaint to correct the

24 name of the Plaintiff.  Everyone agrees that the amended

25 complaint does not moot Motion to Dismiss.

1     Opposition has been filed ECF41, a Reply has been filed
2   ECF63, and three *amicus curiae* oppose the Motion to Dismiss.
3   I've considered those.
4       Again, I have just read allegations that were taken from
5   the amended complaint.  I did not provide the citations from
6   the amended complaint, but they are directly from the amended
7   complaint.
8       So with that, let me just tee up what I think are the
9   three main issues:  The first is -- and I'm not sure we'll
10  address them in this order -- but the first is whether or not a
11  claim for unjust enrichment under Maryland law can be a
12  standalone claim, or whether or not there must be an
13  accompanying tort or underlying tort that's actionable as the
14  Defendants have described it.  That's question number one.
15      Question number two -- again not necessarily in the order
16  that we'll address them -- is whether or not the Plaintiff has
17  alleged that Thermo Fisher Scientific was not a *bona fide*
18  purchaser for value of the cells.  Both sides seem to agree
19  that under Maryland law that needs to be pled in the complaint.
20      I understand some of you may disagree with that, but both
21  sides seem to agree that that fact, the fact that Thermo Fisher
22  Scientific was not a *bona fide* purchaser for value must be
23  alleged in the complaint.
24      And then the final question is whether or not the claim
25  for unjust enrichment is too late, whether or not it's barred

1  by Maryland's three-year statute of limitations.  And I suspect

2  that will take the bulk of our discussion today.

3         So who will be arguing for the Defendant?  Mr. George?

4         **MR. GEORGE:**  Yes, Your Honor.

5         **THE COURT:**  Okay.  Good morning to you.

6         **MR. GEORGE:**  Good morning.

7         **THE COURT:**  Let's just start briefly with the first

8  question, which is your position that an unjust enrichment

9  claim in Maryland cannot stand on its own.  I have found zero

10  support in the case law for that, other than the case that you

11  cited by Judge Bredar, the Washington County case, and the case

12  that Judge Russell decided essentially referring to the Judge

13  Bredar case.

14         So what authority, other than those two cases, okay, and

15  we can talk about those in a moment, what authority do you have

16  that says an unjust enrichment claim cannot stand alone?

17         **MR. GEORGE:**  Sure, Your Honor.  So we are relying

18  predominantly on those two cases, though I believe Judge Bredar

19  cited other cases in referring to that as the standard approach

20  and I believe --

21         **THE COURT:**  He cited one other case from 2015 from

22  Judge Blake.

23         **MR. GEORGE:**  Right, sorry.  As the quote/unquote,

24  "standard approach" that's taken when an unjust enrichment

25  claim is made and is standalone while still being based on

1   tortious conduct.

2        To be clear, what we mean when we say that it can't stand

3   alone, what I believe these cases stand for -- and I believe

4   this includes the *Monterey Mushrooms* case, which is the third

5   of the three recent cases from this court -- the common thread

6   that runs through those cases is that where you're basing a

7   claim of unjust enrichment on an allegation that the

8   defendant -- or that someone has wronged the plaintiff, that it

9   needs to be based on an actionable tort that's pled in the

10  case.  There's a good reason for that, which is that without a

11  rule like that then unjust enrichment would be -- would

12  essentially swallow all of tort law because you could --

13           THE COURT:  But it only would -- I'm just going to

14  interrupt you --

15           MR. GEORGE:  Sure.

16           THE COURT:  -- just for everyone's benefit, I'm going

17  to try not to interrupt, but this is a conversation, okay.  And

18  I want it to be a conversation, and I hope it can be a

19  respectful discussion, okay.

20       When I looked at the two cases, the Washington -- let me

21  get the names correct here -- the Washington County case

22  decided by Judge Bredar and the *Temescal* case decided by Judge

23  Russell, in both of those cases the judges found that the

24  accompanying torts, in the Washington County case it was

25  Maryland -- there was a negligent misrepresentation claim and

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

 1    it was a Maryland Consumer Protection Act claim and a fraud

 2    claim that accompanied the unjust enrichment claims.  In those

 3    cases, Judge Bredar found that the plaintiff had failed to

 4    allege the essential elements of those torts.  Same for the

 5    Judge Russell case, *Temescal*.

 6        The difference here, though, is it's not -- you're not

 7    alleging that they couldn't have alleged the elements of a

 8    battery.  You're alleging that a battery would have been

 9    time-barred.  That's a very, in my mind, that's a big

10    difference between the holdings in those two cases and this

11    particular case.  So talk to me about that distinction.

12             **MR. GEORGE:**  So if Your Honor were to look back at the

13    Washington County case, I believe Chief Judge Bredar three

14    times in that case said that the conduct that had been alleged

15    in that case was troubling, that it might well be tortious.

16    But that the claim itself that had been pleaded under the

17    Maryland Consumer Protection Act itself hadn't been adequately

18    pleaded.  But he never made a finding that the conduct itself

19    wasn't tortious.  He just found that the tort they had tried to

20    state was not itself actionable under the Maryland Consumer

21    Protection Act.

22             **THE COURT:**  He just found they failed to allege the

23    elements.  It was a pretty standard motion to dismiss case,

24    which they just didn't allege the elements.

25             **MR. GEORGE:**  Correct.  But it wouldn't really make so

1  much sense to have a different rule where the plaintiff fails

2  to allege a tort at all than one where a plaintiff does allege

3  a tort and the tort fails.

4       THE COURT:  But your argument assumes that a statute

5  of limitations for a tort that underlies an unjust enrichment

6  claim, and the unjust enrichment claim will always go

7  hand-in-hand, and they won't always go hand-in-hand.  They

8  could have different dates of accrual.

9       So here we have a tort that occurred allegedly, but it

10 seems no one disputes that it did, in the 1950s, and of course

11 any battery claim would be time-barred.  But the unjust

12 enrichment based on that isn't necessarily time-barred just

13 because the underlying tort is.

14       MR. GEORGE:  Respectfully, Your Honor, I don't think

15 that we're assuming that the statutes of limitations go

16 hand-in-hand.  Our point in talking about the statute of

17 limitations with respect to the underlying tort issue is that

18 the -- the problem is not solvable on an amended complaint.

19 That's the only point.  There's no underlying tort that can now

20 be alleged here --

21       THE COURT:  But that assumes there has to be an

22 underlying tort.  Go ahead.

23       MR. GEORGE:  For purposes of this argument, we believe

24 that there does have to be an underlying tort in light of --

25       THE COURT:  But let's say we have an underlying tort,

1    which is battery.

2            MR. GEORGE:  To be clear, not just an underlying tort,

3    there has to be a pleaded tort that's actionable in the case.

4    And I don't -- so if Washington County is correctly decided,

5    that is, I believe, what Washington County says because in

6    Washington County, like I was saying, in Washington County the

7    Court, Chief Judge Bredar, three times in the decision said

8    that this conduct that's been alleged in this case may well

9    have violated the law, it might well be tortious, but the

10   specific claim that's been pleaded under the Maryland Consumer

11   Protection Act they haven't met the elements of that claim that

12   they tried to plead.

13           THE COURT:  But here they would meet them if they

14   could, they would just be time-barred?

15           MR. GEORGE:  That might be true, but one way or

16   another it's not actionable and you end up in the situation

17   that's just like what Judge Bredar described at the end of his

18   opinion where you're basing potentially millions of dollars in

19   liability on principles of fairness and justice alone.

20           THE COURT:  All right.  Other than those two cases,

21   and the *Monterey Mushrooms* case, I'm happy to hear from you on

22   that case, too.  I think I know what you might say.  But what

23   other cases from the Maryland Court of Appeals or Court of

24   Special Appeals do you have to support your position?  Because

25   we found cases in the Maryland state courts where a solo unjust

```
 1  enrichment claim has either survived on its own or survived
 2  after dismissal of other claims.
 3           MR. GEORGE:  I am aware that there are such claims,
 4  Your Honor.  To my knowledge, I am not aware of ones where it
 5  was based on tortious conduct versus, say, the *Monterey*
 6  *Mushrooms* case is a perfect example.  That's an overpayments
 7  case where one party is alleged to have paid too much money to
 8  the other party and wants to get the overage back, right.
 9      In a case like that there's no need to plead a tort
10  because you're not claiming that the other party has wronged
11  you in some way.  You're just saying that I paid too much money
12  and I should be paid some of it back.
13      So it makes sense in the *Monterey Mushrooms* case that the
14  court departed from what even Judge Blake noted was the
15  standard practice or the standard approach that this court
16  takes to standalone unjust enrichment cases.
17           THE COURT:  What if you had a situation where there
18  was a conversion that happened in, let's say, 2010, and then an
19  unjust enrichment accrued where the property that was converted
20  was then transferred to someone else.  So the unjust enrichment
21  claim didn't accrue until -- yeah, didn't accrue until, I don't
22  know, five years later.  You've got a time-barred conversion
23  claim, and you've got an unjust enrichment claim that didn't
24  accrue until well after the fact.  Would you be, if you were
25  the defense lawyer, filing a motion to dismiss in that case as
```

```
 1   well?
 2           MR. GEORGE:  I understand your point, Your Honor, but
 3   at the same time I don't think that the purpose behind unjust
 4   enrichment is to be a way around statutes of limitations for
 5   other tort claims that are now time-barred.
 6       So I think in that case that, yes, there would be a motion
 7   to dismiss and it would be proper because you needed to bring
 8   the conversion claim when it was ripe -- excuse me -- when it
 9   was within the limitations period.
10           THE COURT:  So under your theory, the Lacks family
11   would have had to have brought a battery claim against the
12   state of Maryland or I guess the Hopkins doctors as soon as
13   they learned about it in order for them to have any claim here?
14           MR. GEORGE:  So as soon as the Lacks family was on
15   notice that they had a claim, then under the statute of
16   limitations they were required to bring their claim within the
17   limitations period, yes.
18           THE COURT:  Okay.  All right.  Is there anything else
19   on this particular issue?  If not, I'll pause and turn to
20   Mr. Crump or Mr. Seeger.
21           MR. GEORGE:  No.
22           THE COURT:  Okay.  Thank you very much.  Tough
23   argument but thank you.  Mr. Seeger?
24           MR. SEEGER:  Judge, I think I'm winning that one.  I'm
25   almost afraid to speak.  But I would like to go through some of
```

1    the cases.

2        THE COURT:  Yeah, I mean, I think you can tell by my

3    discussion with him I'm not necessarily persuaded that the two

4    cases they cite compel the conclusion here, but the fact

5    remains that you have an unjust enrichment claim that is based

6    on tortious conduct that occurred in the 1950s and that claim

7    is not actionable whether it's because it's time-barred or you

8    could not allege it.

9        MR. SEEGER:  If you don't mind, I'd like to go through

10   that with you, Your Honor.

11       THE COURT:  Please.

12       MR. SEEGER:  It is clearly the law in Maryland that an

13   unjust enrichment claim can stand alone.  You do get a

14   little -- I know you're looking for cases, you get a little

15   assistance from the professors who are draftspersons of the

16   restatement, which is the law of Maryland.  But to give a

17   perfect example where a bank mistakenly deposits money into

18   someone's account.  The question is is the recipient -- has he

19   committed a tort?  No.  Has he breached the contract?  No.  Has

20   the recipient broken a law?  No.  Do they have to return the

21   money?  Yes.

22       THE COURT:  Sorry for the interruption.

23       MR. SEEGER:  That's okay.

24       THE COURT:  But you've alleged unjust enrichment based

25   on a tort so doesn't that mean that example doesn't necessarily

1    apply here?

2           THE WITNESS:  No, if you give me just a minute or

3    two --

4           THE COURT:  All right.

5           MR. SEEGER:  -- to try to get through some of this and

6    flush it all out.

7           THE COURT:  Go ahead.

8           MR. SEEGER:  So let's start with *Hill v. Cross County*,

9    which is a 2007 Court of Appeals case where the mortgage wasn't

10   paid off at the time of closing and the plaintiff tried to hold

11   the closing agent responsible.

12       The Court of Appeals in that case made clear the defendant

13   who has received money from a plaintiff by mistake, even though

14   the mistake is honest, one may be compelled to make

15   restitution.

16       In that case also the language is very telling --

17           THE COURT:  If you could slow down for our court

18   reporter.

19           MR. SEEGER:  Oh, I'm sorry.  I do speak fast.  I'll

20   try to slow down.

21           THE COURT REPORTER: Thank you.

22           MR. SEEGER:  Restitution's aim is not to compensate

23   plaintiff but forcing the defendant to disgorge benefits that

24   would be unjust for him to keep.

25       In *Phressia*, Your Honor, you make a passing reference to

1  *Mallinckrodt*, it wasn't really part of your opinion so I'm not
2  going to spend a lot of time on that.  The bottom line is all
3  of the cases cited by the Defendant are in opposite in this
4  respect.  The Courts found that there was no underlying illegal
5  conduct.  You can't have an unjust enrichment claim without
6  unjust, you can't have unjust enrichment claim without wrongful
7  conduct.
8      So if your consumer fraud claim is dismissed and your tort
9  claim is dismissed, I've never seen a claim where the unjust
10 enrichment claim stands.  And I think that's what the Defendant
11 is trying to confuse the Court with.
12     By the way, the other cases they rely on, the *Temescal*
13 *Wellness* case, which is a cannabis case, that is the case
14 there.  So the underlying tort is dismissed and the unjust
15 enrichment claim must fall.  Judges in this court, as you know
16 in *Monterey Mushrooms v. Healthcare Systems*, Judge Blake
17 states, a quote from her opinion, "Notably, Maryland Court of
18 Special Appeals and the U.S. District Court for the District of
19 Maryland have permitted cases to go forward with a sole claim
20 of unjust enrichment."
21     In *Bank of America v. Gibbons*, a 2007 case where a husband
22 stole money, put it in his wife's account, wife didn't know
23 anything about the wrongdoing and had to return the money.
24     The *Gibbons* court held a cause of action may lie with the
25 transferee with whom plaintiff has no contract, transaction or

1  dealing either directly or indirectly.  This is the case here.

2  The battery upon Mrs. Lacks wasn't committed by TFS, but they

3  knew that the cells came -- where they came from and how they

4  were obtained.  That's on their website.

5      It's clearly -- it's clearly not needed but if Your Honor

6  thinks that a tort must be pled, we've got allegations in the

7  complaint where we plead the breach of fiduciary duty by the

8  doctors and the battery.  Now, again, not required, does not

9  have to be specifically pled, but we do put those facts in

10 there.  And I think that that's -- that's critical.

11     One last really quick point, Your Honor, we may circle

12 back to it on one of the other ones.  It is a misconception by

13 the Defendant to think that the state of Maryland did not

14 require Mrs. Lacks's consent.  There are cases that go back to

15 1889 involving surgery and tooth extraction by a dentist, a

16 1930 case that make it very clear she had every right to

17 consent to what was done to her.

18     Last point on this, and it goes to the fact but it's an

19 important fact.  The cervical cancer in situ is a stage zero

20 cancer.  By today's standards it's considered pre-cancerous, a

21 pre-cancerous cells.  For that they inserted radium rods into

22 her, which cooked her from the inside out, and then while she

23 was undergoing that procedure they stole pieces of her body.  I

24 mean, everybody knows about this horrible conduct.  They

25 shouldn't be allowed to benefit from it, to copyright those

```
 1  cells, to patent them, to create new cell lines without even a
 2  phone conversation with the family, Your Honor.
 3          THE COURT:  Okay.  Thank you.  One last question for
 4  you, Mr. George, on this point.  I didn't see in your
 5  submission an argument that what occurred to Mrs. Lacks in the
 6  1950s was not tortious.  So are you contesting, are you
 7  conceding that there was a battery?
 8          MR. GEORGE:  No.  We're accepting the pleaded
 9  allegations as true.  And just to -- on Mr. Seeger's last
10  point, I am sorry for Ms. Lacks's experience at Johns Hopkins.
11  And I just want to acknowledge, I understand there are a lot of
12  strong feelings in the room about this.  That's not lost on me
13  or my client.  We understand that.  No one is arguing here
14  about that.
15          THE COURT:  Okay.  Thank you.
16          MR. CRUMP:  Your Honor, may I respond to that?
17          THE COURT:  You may.
18          MR. CRUMP:  I simply rise, Your Honor, to say during
19  this tragic history Thermo Fisher, nonetheless, asked this
20  Court that it is allowed to profit from the HeLa cells in
21  perpetuity.  This Court should deny that request on the basis
22  of fairness.
23      If ever there was a case in which this Court should give
24  the benefit of the doubt, Judge Boardman, to allow going
25  forward, this is it.
```

1       The HeLa cells did not derive from Henrietta Lacks, the
2  HeLa cells are Henrietta Lacks.  They are Henrietta Lacks's
3  living cells.  Try as they may, Ms. Henrietta Lacks's identity
4  cannot be removed from her cells.  Ms. Henrietta and her estate
5  have never been compensated for the commercialization of
6  Henrietta Lacks's cells.  This Court has the authority, power,
7  and legal capacity to apply existing law of unjust enrichment
8  to provide justice to Henrietta Lacks and prevent further harm
9  from her.

10      Henrietta Lacks lives.  She lives today with each new cell
11 that Thermo Fisher Scientific duplicates and sells for
12 unsanctioned profit.  Thermo Fisher utilizes Henrietta Lacks's
13 cells as chattel property, as if she wasn't real, seeking
14 intellectual property rights and staking a claim to Ms. Lacks
15 as if Ms. Lacks can be dissociated from her very own HeLa
16 cells.

17      The legal fiction of chattel property has been manipulated
18 to sanction ill treatment of black bodies and create a legal
19 dehumanization of black people in this country throughout
20 history.

21      I pause just for a moment, Your Honor, to say that
22 Lawrence Lacks, Henrietta Lacks's only living child, is present
23 in the court.  And he is surrounded by his sister and brothers'
24 children and grandchildren who are in this courtroom.

25      He was -- just turned 16 years old when his mother

1  succumbed to Johns Hopkins butchering her.  His little brother

2  and sisters were ages 4 and 3, and his youngest brother, Abdul,

3  was merely one years old.  He had just been born a few months

4  before Johns Hopkins butchered their mother.  She only lived

5  eight months later.  Deborah, Sonny, her other children, they

6  were robbed of their mother.

7       And a big part of this is about humanity of their mother

8  and black people.  We have other things to say to the Court,

9  but we thought it important in light of Defendant saying they

10 acknowledge the tortious conduct, the wrongdoing, but yet, Your

11 Honor, they continue to benefit from it and try to say these

12 HeLa cells are something that did not benefit them from the

13 tortious, evil conduct of medical racism that continues to be

14 put as a footnote in these matters.  But it is real to a lot of

15 people in this world.

16      **THE COURT:**  Thank you, Mr. Crump.

17      I think we can all agree that the facts underlying this

18 case, what happened to Mrs. Lacks, what's happened to the Lacks

19 family, is unlike any other set of facts that we've seen in our

20 lifetime.

21      I also think that that makes it particularly challenging

22 here in a court of law to take these extraordinary facts, these

23 extraordinarily unique facts and apply them to the existing law

24 that we have.  It's a challenge.

25      It's my obligation, though, to consider the allegations in

```
 1  the complaint.  That's one of the reasons why I read them early

 2  in this hearing.  It's my obligation to consider those

 3  allegations and to determine whether under the law of Maryland,

 4  which is the applicable law, the personal representative of

 5  Mrs. Lacks's estate has stated a claim.  So I think that's

 6  where I'd like to turn my attention to.

 7       Let's turn to the issue of *bona fide* purchaser for value.

 8  I'd like to start with the Plaintiff, either Mr. Crump or

 9  Mr. Seeger.  In my introductory remarks, I stated that it

10  appears that both sides believe or, excuse me, concede that

11  under Maryland law a plaintiff must allege that the defendant

12  was not a *bona fide* purchaser for value.

13       Can we just agree that we're on the same page there?

14            MR. SEEGER:  That it's required?

15            THE COURT:  That it's required to be alleged.

16            MR. SEEGER:  It is required to be alleged.  But I

17  don't want to get tripped up on this, Judge, I'm not trying to

18  get cute with you on it.  We do allege that in the complaint.

19  Do we have the magic words that say not a *bona fide* purchaser?

20  I don't recall offhand.  But we clearly state in the complaint,

21  and we clearly meet the law of standard to argue that they were

22  not and are not a *bona fide* purchaser.

23            THE COURT:  Okay.  I understand your arguments.  So

24  there are two issues.  One, whether under the law in Maryland

25  the plaintiff is required to affirmatively allege that the
```

1    defendant was not a *bona fide* purchaser.  The next question is

2    what you appropriately got at, does the plaintiff have to use

3    the magic words "not a *bona fide* purchaser," I don't think they

4    do.  But do they have to use words that from which I can draw

5    reasonable inference that Thermo Fisher was not a *bona fide*

6    purchaser.  And I think, of course, you need to do that.

7        And, frankly, I'm not convinced you have done that.  I've

8    read that complaint, your complaint, several times trying to

9    draw every inference in your favor because that's what the law

10   requires me to do.

11       The closest I come is that you have alleged that Thermo

12   Fisher Scientific knew at some point that the cells were taken

13   from Ms. Lacks in the way that's been described and that they

14   have cultivated those cells.  But based on the allegations in

15   the complaint as they stand, it's not clear to me that you have

16   alleged that they had that knowledge before they first acquired

17   them or before the benefit of the cells was first conferred on

18   them.

19       So if you could direct me to the complaint where you think

20   you have alleged that?

21       MR. SEEGER:  I think our allegations in the complaint

22   do allege that, Your Honor.  I'm focused mostly on Paragraphs

23   4, 8, 11, 40 and 41, 42 and 45.  Now, let me just summarize the

24   argument that I believe they go to and what they would support.

25       I want to make sure if I'm confused, please interrupt me,

1  Judge, because I don't want to waste your time arguing

2  something you don't want to hear.  To be a *bona fide* purchase,

3  you can't be a conscious wrongdoer as defined by the

4  restatement.  Section 51 of the restatement says you can't

5  acquire a benefit knowing that the underlying conduct, how that

6  benefit was obtained, was wrongful.  Now, they knew that.  So I

7  think your question is how and when.

8       And we say -- what we say in the complaint is that well,

9  first of all, at some point everybody knew.  I mean, let's just

10  be honest.  I mean, we agree with them.  This has been a widely

11  publicized case.  A book has been written, a movie has been

12  written on it.  Now, we think when we get into discovery in

13  this case, we're going to show that Thermo Fisher, being a part

14  of that community and the companies that they purchased along

15  the way, Invitrogen, and the other one Microbiological, I think

16  it's called, knew exactly how those cells were obtained because

17  of the relationship between the doctors at Johns Hopkins and

18  others.

19       Now, I'm trying to -- I'm stretching my memory to see

20  exactly how we pled this.  We do plead that they knew, so we do

21  think we met our burden by alleging that.  We think we have the

22  right to discovery on the *bona fide* purchaser affirmative

23  defense and it is not appropriate in a 12(b)(6) motion.

24          THE COURT:  Where in the complaint -- and I think the

25  closest you've come is Paragraph 42 -- but where in the

27

```
1  complaint do you allege that when Thermo Fisher Scientific
2  first acquired the cells or was conferred the benefit of the
3  cells, that they knew at that time the source of the cells?
4          MR. SEEGER:  Let me go to Paragraph 42, Your Honor.
5      So we say on Paragraph 45 that Thermo Fisher Scientific's
6  business is to commercialize cells and all the while Thermo
7  Fisher Scientific understands, indeed acknowledges on its own
8  website, that the genetic material was stolen from Mrs. Lacks.
9      The information that informs us as to exactly that date is
10 in their files, Judge, but we've made the allegation.  And I
11 think it has to be accepted as true at this point in the case.
12         THE COURT:  If I granted you leave to amend, you don't
13 think you could cure it without discovery?  To me it seems
14 like -- well, what's the answer to that?
15         MR. SEEGER:  I think the answer is we could -- we
16 could absolutely cure it with discovery.  It is an affirmative
17 defense that they assert.  They have the burden on that.
18         THE COURT:  Hold on.  That's why I asked you early on.
19 You agree that it's not an affirmative defense.
20         MR. SEEGER:  Then I misunderstood, Your Honor.
21         THE COURT:  I just want to make sure I understand
22 that, that the parties have told me, and I've read the cases,
23 that in Maryland it is part of your pleading requirement and
24 then proof requirement to show that they were not a *bona fide*
25 purchaser for value, right?
```

1      MR. SEEGER:  It's the for-value part that I keep

2  getting hung up on because I don't think the for-value piece is

3  really a part of the elements of making up the fact that

4  they're not a *bona fide* purchaser.  They may have paid for

5  this, but they knew that the conduct was illegal.

6      THE COURT:  Right.  Let's agree, the for-value is not

7  really an issue.

8      MR. SEEGER:  I'm sorry.

9      THE COURT:  It's whether or not at the time that they

10 first acquired the cells or were conferred the benefit of the

11 cells, to be more precise, whether or not at that time they

12 knew that the cells had been taken from Ms. Lacks in the way

13 that they were.  That needs to be alleged, correct?

14     MR. SEEGER:  I don't -- I didn't read -- I didn't

15 understand the law to have the timing requirement that Your

16 Honor is asking for, that we had to say at the time.  But,

17 having said that, if we had to amend the complaint I can tell

18 you what we do know sitting here right now.  They purchased

19 Invitrogen in 2014.  There's no doubt by 2014 everybody knew

20 about the wrongful underlying conduct.

21     THE COURT:  So to the extent that there's a defect in

22 this, you could cure it?

23     MR. SEEGER:  You could cure it.

24     THE COURT:  Probably by the end of the day tomorrow?

25     MR. SEEGER:  Oh, absolutely.

1          THE COURT:  Okay.  You can have a seat.

2      Mr. George, is there anything more to be said on this

3  particular issue?  If there's a problem with the current

4  complaint as it stands, why couldn't they just cure with an

5  amended complaint?

6          MR. GEORGE:  Well, I think the trouble is actually

7  that the facts may not be there for them to be able to cure it.

8  So the allegation that was just made about Invitrogen, the law

9  doesn't work that way.

10      If they were on notice of Invitrogen having acquired or

11  been conferred the HeLa cell line by the time of the book's

12  publication, which publicized that fact, then they were

13  required to sue Invitrogen within the limitations period.  So

14  you run into the statute of limitations no matter what.  That

15  said --

16          THE COURT:  I'm talking about --

17          MR. GEORGE:  I understand.

18          THE COURT:  I understand they may have strategically

19  not alleged that because their team thought about where that

20  would ultimately take them, but just on my one question.

21          MR. GEORGE:  So I think the trouble is -- I don't

22  think it's enough.  I agree with Mr. Seeger, this has nothing

23  to do with magic words.  It's about whether there are

24  sufficient facts in the complaint for the Court to infer that

25  at the time Thermo Fisher was conferred -- was conferred this

1  benefit, that Thermo Fisher was already on notice.

2      The allegation here has been that Thermo Fisher made a

3  conscious choice to continue to sell products based on the HeLa

4  cell line after becoming aware through the widespread publicity

5  of -- of the problems with informed consent back in 1951 and in

6  fact the widespread publicity says that Invitrogen was already

7  selling HeLa cells.

8      So I think the timing may be a problem factually to be

9  able to say that at the time of the conferral Thermo Fisher was

10  already on notice.  The widespread publicity that's being cited

11  already includes the fact that the Thermo Fisher subsidiary at

12  issue, Invitrogen, already --

13      THE COURT:  Seems like a very appropriate use of upon

14  information and belief pleading.

15      MR. GEORGE:  I think there would be, frankly, Your

16  Honor, a Rule 11 problem with making that information and

17  belief allegation because the document they're relying on for

18  the widespread publicity says that Invitrogen already is

19  selling.  I don't know how they get around that.

20      MR. SEEGER:  I can help with that.

21      THE COURT:  Okay.  Mr. Seeger?

22      MR. SEEGER:  Your Honor, we get around it because each

23  and every time they grow these cells, and they produce a new

24  cell line, and they file a copyright or a patent or create a

25  new product that this very much is going to tie into our next

1   argument.

2          THE COURT:  All right.  Let's just go to the next

3   argument then.

4          MR. SEEGER:  Can I point out a case, Your Honor?

5          THE COURT:  Yes, please.

6          MR. SEEGER:  It's Judge Bredar's case in *Hobbs v. St.*

7   *Martin*, it's a 2017 case.  It's only a couple lines if I might

8   read it to Your Honor.

9      Judge Bredar said that "Defendant knew that Hagen" -- who

10  was a wrongdoer there -- "was engaged in fraudulent activity

11  and knew the money in Defendant's account was likely the result

12  of that activity.  In an action for unjust enrichment, it does

13  not matter how the Defendant came into possession of the

14  property in question if, in equity and good conscious, he's not

15  entitled to hold it against the true owner even if the

16  Defendant paid consideration."

17         THE COURT:  Okay.  That, I think, is consistent with

18  everything we've talked about.

19         MR. SEEGER:  I think --

20         THE COURT:  I'm just not sure -- help me tie that to

21  what your argument is.

22         MR. SEEGER:  I'm just trying to reinforce that to be

23  a -- to claim a defense of being a *bona fide* purchaser in a

24  case like this I think is going to be almost impossible.  It

25  doesn't go to the issue that we can amend on information and

1    belief and try to isolate.  But I think there's just no -- they

2    acknowledge on their website.  They know about the wrongful

3    conduct underlying the production of these cells.

4          THE COURT:  Understood.  Let's move to I think,

5    frankly, the hardest question here, which is whether or not

6    this unjust enrichment claim was brought too late.  In some of

7    the things that we've talked about with respect to *bona fide*

8    purchaser, of course, relate to that.

9          So, Mr. Seeger, I'd like to start with you.  And let me

10   just state for the record what the elements of an unjust

11   enrichment claim are.

12         And for the nonlawyers in the room, I apologize, this may

13   be boring, but this really is what the case turns on.  I'm

14   going to read the elements, and this is from a Maryland Court

15   of Appeals case from 2007, *Hill against Cross Country*

16   *Settlements, LLC*, the cite is 936 A.2d. 343 pinpoint cite 351:

17   "Unjust enrichment consists of three elements:  1) a benefit

18   conferred upon the defendant by the plaintiff.  I want to

19   repeat that one.  A benefit conferred upon the Defendant by the

20   Plaintiff.  2) an appreciation or knowledge by the defendant of

21   the benefit, and 3) the acceptance or retention by the

22   defendant of the benefit under circumstances as to make it

23   inequitable for the defendant to retain the benefit without the

24   payment of its value."

25         Mr. Seeger, do you agree that those are the elements of an

 1    unjust enrichment claim?

 2              **MR. SEEGER:**  I do, Your Honor.

 3              **THE COURT:**  Mr. George, do you agree with that as

 4    well?

 5              **MR. GEORGE:**  Yes, Your Honor.

 6              **THE COURT:**  All right.  Some agreement.  Great.

 7         (Laughter.)

 8              **THE COURT:**  Okay.  Let's start with the first element,

 9    "A benefit conferred upon the defendant by the plaintiff."

10    When I looked at your complaint -- and I'm looking at it right

11    now -- I am looking in particular at Count 1, which is your

12    only count for unjust enrichment, Paragraphs 48, 49, 50 and 51,

13    which are the meat of your count there.  And I recognize the

14    prior paragraphs have been incorporated by reference.

15         Paragraph 48 says:  "Thermo Fisher Scientific was unjustly

16    enriched because it received a benefit from Henrietta Lacks,

17    understood it received a benefit from Mrs. Lacks, and did so in

18    circumstances in which acceptance or retention of the benefit

19    was inequitable without payment or permission."

20         You then go on to say:  "Acceptance or retention of the

21    HeLa cell line" -- which is the benefit you're alleging -- "was

22    inequitable without payment or permission because the HeLa cell

23    line was created through breach of a relationship of trust and

24    confidence."  You then state:  "Acceptance or retention of the

25    HeLa cell line" -- again, the benefit is the HeLa cell line as

```
 1  alleged" -- that it was "inequitable without payment or
 2  permission because the cell line was created through the
 3  unlawful conduct described above."
 4      So can we agree that as to the first element, you are
 5  alleging that the benefit conferred upon the Defendant by the
 6  Plaintiff was the HeLa cell line?
 7              MR. SEEGER:  Yes, Your Honor.
 8              THE COURT:  Okay.
 9              MR. SEEGER:  If I drill down on it, I would maybe
10  restate it a little differently.  It would be the taking of her
11  tissue, which contained cells that had ultimately developed
12  into the HeLa cell line.  I'm sorry to be picky.  I just want
13  to make sure that if I were redrafting this I might have
14  clarified that a little bit more.
15              THE COURT:  Well --
16              MR. SEEGER:  But yes, the answer is yes, the HeLa cell
17  line.
18              THE COURT:  That's the benefit?
19              MR. SEEGER:  Yes.
20              THE COURT:  Okay.  So element two is an appreciation
21  or knowledge by the defendant of the benefit.  There seems to
22  be no dispute or discussion about that particular element; is
23  that correct?
24              MR. SEEGER:  Not from our perspective, Your Honor.
25              THE COURT:  Mr. George?
```

1      MR. GEORGE:  Correct, Your Honor.

2      THE COURT:  All right.  Then we get to the third

3 element, "the acceptance or retention by the Defendant" -- and

4 here that's Thermo Fisher Scientific -- "of the benefit" -- and

5 that's where we're going to have a debate -- "of the benefit,"

6 and we've already discussed the benefit alleges the HeLa cell

7 line -- "under such circumstances as to make it inequitable for

8 the Defendant to retain the benefit of the HeLa cell line

9 without the payment of its value."

10     Do you agree that those are the allegations that support

11 number three?

12     MR. SEEGER:  Yes, Your Honor.

13     THE COURT:  All right.  Okay.  Why wasn't this claim

14 brought 10 years ago?  Right after the movie came out or the

15 book came out in 2010?

16     MR. SEEGER:  You know, Judge, standing here right now

17 I don't think I'm going to give you a satisfactory answer to

18 it.  A question like that could have been posed in the Eastern

19 District in New York in the Holocaust cases where they went

20 after the banks of the Jewish victims of the Holocaust and they

21 retained the assets of their money in European banks.  It's the

22 same question that could have been asked.  That court applied a

23 different doctrine, the continuous act doctrine, because you

24 didn't have all the separate accruals of illegal wrong like we

25 have here.

```
 1          I only say that to you to make the point that, you know,
 2   this is a family that has been victimized from the day they
 3   victimized Henrietta Lacks and all their children.  I could ask
 4   the question -- I don't want to take this out of the realm of
 5   legal, Judge, and I apologize for just 10 seconds of it.
 6   There's no reason Thermo Fisher couldn't have contacted this
 7   family and did the right thing?  Why didn't they?
 8          THE COURT:  Well, there's a lot of what ifs and how
 9   did this happen and how did we get here?
10          MR. SEEGER:  That's right.
11          THE COURT:  It was bad advice given.  Who knows what
12   happened.
13          MR. SEEGER:  That's what they say.  I don't have
14   knowledge of that standing here, Your Honor.
15          THE COURT:  I don't have knowledge of it either.  I
16   have no idea what happened.  Okay.
17          If we can -- if we just agree that those are the
18   allegations supporting your claim, how are there separate
19   accruals -- first off, there's no case in Maryland that applies
20   to separate accrual doctrine to unjust enrichment.  I don't
21   think it's foreclosed necessarily.  But I couldn't find -- we
22   couldn't find any cases that applied the separate accrual
23   doctrine to an unjust enrichment case.  I can think of
24   circumstances in which it probably would be appropriate.  It's
25   been rejected by courts outside of Maryland.
```

37

1       But how, in our view, does the separate accrual doctrine

2   apply here and save your one count of unjust enrichment from

3   being time-barred?

4           MR. SEEGER:  I think the facts of our case -- and I

5   can't speak to all the other unjust enrichment cases -- make

6   this exactly like the case before Your Honor in *Phreesia*, I'm

7   going to go into why, and the *Petrella* case, the Supreme Court

8   case where Judge Ginsburg ruled in favor of a plaintiff in that

9   case where there was copyright infringement.

10      So what I'm saying to you is I may not be able to show you

11  a case on point involving unjust enrichment, but I can tell you

12  the facts of this case is very much like *Phreesia* where every

13  time the Defendant went into the Plaintiff's database and took

14  information and secrets you found a separate unlawful act.

15      In the *Petrella* case in front of Judge Ginsburg and the

16  Supreme Court, there were copyright infringers involving the

17  Raging Bull, the movie Raging Bull involving Robert De Niro and

18  Jake La Motta, and each and every time that copyright was

19  infringed Judge Ginsburg said you started the clock running all

20  over here.

21      Well, here we have TFS that develops all the time brand

22  new cell lines.  They grow brand new cells.  They file patents.

23          THE COURT:  I don't think there's any dispute about

24  that, but we have to root this discussion in your legal claim,

25  which is the benefit conferred upon the Defendant by Mrs. Lacks

38

```
 1  is her cell line.  When did the conferral of that benefit
 2  occur?  No one has told me that.  That's the big, pink elephant
 3  in the room.  It hasn't been alleged.  They won't say it.  No
 4  one will say it.  So it's when the benefit was conferred upon
 5  Thermo Fisher by the Plaintiff.  It's not, as far as I can
 6  tell, when the sales of that benefit occurred years down the
 7  road.
 8          MR. SEEGER:  I -- I think that's part of it, Judge.  I
 9  think it is -- actually, I think there's an illustration in the
10  restatement -- which somebody will help me with -- where it
11  talks about a doctor who took blood from a patient for a
12  medical purpose but then resold the blood to researchers, many
13  researchers.  And all of that, all of those acts, and all of
14  that money had to be returned to the patient.
15      The point I'm trying to make is I think we have to focus
16  on the specific acts and what's going on.  I think this is
17  driven by the facts.  Yes, the initial harm took place when
18  there was a battery in 1951.  But those cells are alive.  Those
19  cells are alive, and they're being harvested and grown and
20  cultivated.  So every time they do that it's --
21          THE COURT:  So are you saying the benefit is conferred
22  up the --
23          MR. SEEGER:  Each and every time.
24          THE COURT:  -- upon the Defendant forever?
25          MR. SEEGER:  I am saying that.
```

1    **THE COURT:**  So there would never be a statute of

2   limitations against Thermo Fisher Scientific or any

3   pharmaceutical company similar to them?

4    **MR. SEEGER:**  There would be a statute of limitations

5   and in Maryland it's three years.  And we're saying that we --

6   we've also argued the continuous act doctrine, I'm going to

7   focus on the separate accrual doctrine, should allow us to go

8   back at least three years in this case and going forward in

9   perpetuity.  Because every time they create a new cell line

10  without their permission, from their mother and grandmother's

11  cells, they have to account for it.

12   **THE COURT:**  So if in 20 years great grandchildren

13  decide to sue another company, who happens to be doing business

14  in Maryland, they can come in and sue because they're the

15  personal representative of the estate?  And I'm not trying to

16  be flip.  I just need to understand where this would go.  And

17  so they could sue a company and allege that the cells were

18  regenerated in the past three years so they could recover sales

19  from the -- from three years preceding that in let's say 2050.

20   **MR. SEEGER:**  As to this Defendant, we are seeking as

21  part of the remedy a constructive trust where we take back

22  possession of their grandmother and mother cells.  And or

23  create a trust where at least the proceeds to compensate the

24  family go into that.

25   Now, look, all of this obviously is up for a discussion

1  that could occur down the road, Judge.  But for right now

2  that's -- and we think -- our argument, by the way is supported

3  by cases right here in this Court.

4      I'm sorry, I was pulling them out.

5      We talked about *Petrella*.  *Johnson v. Silver*, a

6  Judge Grimm decision where he found each and every wage and

7  hour violation started tolling the clock over again.

8      *Litz* is a toxic dumping case, a little bit different I

9  would concede, but same concept.

10      And *Blake v. JPMorgan*, it's a Third Circuit case where

11  there was an insurance scheme involving kickbacks.  That court

12  said each and every kickback starts the clock running again.

13          THE COURT:  But right now, sitting here right now, are

14  HeLa cells replicating?

15          MR. SEEGER:  Yeah.

16          THE COURT:  Okay.

17          MR. SEEGER:  But they're doing it -- they're not doing

18  it on their own, Judge.  I don't mean to be flip.  They're not

19  walking down the street --

20          THE COURT:  I understand.  There needs to be

21  cultivation.  They're in a laboratory.  They need assistance,

22  of course.

23          MR. SEEGER:  Yes.  And without them doing what they're

24  doing it doesn't happen.

25          THE COURT:  So your position is -- I'm not sure I read

this in the papers -- but your position is that the benefit
conferred by the Estate of Henrietta Lacks is the HeLa cells
and that it wasn't just -- when it was conferred when Thermo
Fisher purchased it, purchased Invitrogen, it's that the
benefit is the benefit that keeps on giving?

      MR. SEEGER:  It does.  Because they were not after
tissue for tissue sake.  They were looking for cells that
replicate it.  And Henrietta Lacks had those cells, these
miracle cells that miraculously, unexpectedly, let's be candid,
replicated outside of her body in a petri dish.

      THE COURT:  But your argument, and your complaint in
your arguments, talk more about the sales of the cells and not
the daily, if not hourly, replication of the cells.

      MR. SEEGER:  Actually I think, Your Honor, we do --

      THE COURT:  Correct me if I'm wrong.

      MR. SEEGER:  And by the way, if that is not clear, we
can fix that along with anything else that needs to be fixed by
the end of the day tomorrow, Your Honor.

      THE COURT:  That was just an arbitrary deadline for
color.

      THE WITNESS:  I was just going with it.

      THE COURT:  Okay.  Good.

   I'm waiting for you, right?

      MR. SEEGER:  I'm sorry, Judge.

      THE COURT:  I wanted you to tell me where you allege

1  that the benefit was more than the -- when the HeLa line was

2  conferred upon the Defendant that it's this ongoing

3  regeneration.

4         MR. SEEGER:  So we have several paragraphs on it.  I'm

5  looking at Paragraph 9.  It says "One of the largest

6  biotechnology companies in the world, Thermo Fisher, has

7  continued to mass produce and sell Ms. Lacks's bodily tissue

8  for its own profit without permission."

9      Paragraph 10, "Thermo Fisher Scientific literally sells

10 her cellular material, develops and manufacturers cellular

11 products incorporating HeLa cells and seeks intellectual

12 property rights on these products staking a claim to her

13 genetic material."

14        THE COURT:  Right, but that's not the benefit.  I just

15 want to focus on the benefit.  The benefit is the cell line.

16 It's not what they do with it later, like, sell it.

17        MR. SEEGER:  But you have to create it and each time

18 they create it we're arguing that is an act of separate --

19        THE COURT:  Do the cells have value just sitting in a

20 petri dish or test tube?

21        MR. SEEGER:  To me, no.  To the scientific community

22 and Thermo Fisher, yes.

23        THE COURT:  And the value only arises after they've

24 been developed and --

25        MR. SEEGER:  Yeah.  And they've done genetic map

1  account on it.  They've created different cell lines from her
2  genetics so that vaccines, like the HPV vaccine, like the COVID
3  vaccines can be tested.  Paragraph 43 I'm being told by my
4  colleague, Mr. Crump, is on point.  Talks about Thermo Fisher's
5  cultivates and sells HeLa cells.  Maybe cultivates is a
6  loaded -- we can break that out obviously.  And then talks
7  about all the different product lines.
8      THE COURT:  Now, I guess, let me just be clear.  I
9  understand you have alleged, very thoroughly, what Thermo
10 Fisher Scientific does with the cells.  They cultivate them,
11 they sell them.  And these are extraordinary medical
12 advancements solely because of Mrs. Lacks's bodily tissue.
13     MR. SEEGER:  And the battery committed upon her.
14     THE COURT:  And the battery.  My question is just
15 routing this into the elements of unjust enrichment, the
16 benefit conferred.  We agreed it was the HeLa cell line.  It
17 seems that you're also expanding it to the sale of the cell
18 line and the development of products that are sold.  And I just
19 think those are two very different -- very different benefits.
20     MR. SEEGER:  I think if you thought of this almost in
21 terms of a property interest, like in the *Petrella* case
22 involving a copyright infringement and, Judge, I'm not telling
23 you how to approach, I'm giving you my view --
24     THE COURT:  I'm here for you to tell me how to
25 approach it.  I want to consider everything you say.

1    MR. SEEGER:  We do not have a clean case -- or a clean

2    fact pattern.

3    THE COURT:  I understand.  We are operating almost in

4    the dark here.  We are working with principles of law that have

5    been given to us from the 1900s, from the 1960s and, you know,

6    as recently as *Cain*.

7    MR. SEEGER:  But the reason we picked this claim,

8    Judge, is because it is an equitable claim and there's a

9    balancing of the equities.  It is not difficult to look at the

10   situation --

11   THE COURT:  Doesn't there have to be some limiting

12   principle?  We still have a statute of limitations that --

13   MR. SEEGER:  We do think there are limiting principles

14   and we are -- that is why we said -- we haven't said to you

15   that we should go back 60 years, like in the Holocaust cases

16   where that court had to find the continuous act doctrine

17   applied to get the victims what they were entitled to.  We're

18   not doing that.

19   THE COURT:  I understand.  But this set of facts is so

20   unique because the benefit we're talking about can go on in

21   perpetuity.  It's not retrospective.  It can go on in

22   perpetuity which, of course, causes your clients's family great

23   harm, benefits them tremendously, but from the Court's

24   perspective this means that, according to your theory, there

25   could be claims for unjust enrichment forever.

Ronda J. Thomas, RMR, CRR - Federal Official Reporter

```
 1           MR. SEEGER:  Well, no, well, as to Thermo Fisher this
 2   ends here.  Hopefully we're going to be back in front of Your
 3   Honor litigating in discovery.  And ultimately they're even
 4   going to settle this case or we're going to try it in front of
 5   a jury, and we're going to have a remedy that sets up whatever
 6   it is.  That case ends between the Lacks family and Thermo
 7   Fisher here and now.  But they have not yet had their day in
 8   court, and I'm not saying that just because they haven't
 9   they're entitled to some magical result.  This isn't a magical
10   result.
11           This case is very much like your Phressia case.  Each and
12   every time they went into that database and took information it
13   was a separate accrual.  Why is that any different -- I'm not
14   putting a question to the Court.  I'm just simply saying I
15   don't see the difference between cases like that and this.
16           THE COURT:  Well, in Phressia, since we're talking
17   about my case in Phressia --
18           MR. SEEGER:  It is your case.
19           THE COURT:  In Phreesia, the alleged misconduct ended.
20   It had a date certain in which it ended.  There were different
21   acts of hacking into a computer system, each of which statued
22   alleged violation of the Computer Fraud and Protection Act.
23   So --
24           MR. SEEGER:  But they continued -- if Phreesia was
25   still -- if it was still ongoing, even while they were in front
```

1   of Your Honor, if the Defendant was still hacking into the
2   database, you'd say --
3            THE COURT:  I'd probably grant an injunction,
4   understood.  But I don't have the power here to grant an
5   injunction against the immortal cell line.
6            MR. SEEGER:  No, but you can create a constructive
7   trust that forces them to do the right thing finally.
8            THE COURT:  Understood.
9       Mr. Crump, do you have anything to add substantively on
10  that, and then I need to turn to Mr. George.
11           MR. CRUMP:  Your Honor, just briefly.  I only wanted
12  to say it struck me when you said, "Well, this can go on in
13  perpetuity," that, you know, this -- the grandchildren can come
14  against other companies and so forth.
15      The only thing I felt convicted to say to the Court, well,
16  we believe in justice in perpetuity.  They should have a chance
17  at justice forever, just like they get a chance to benefit and
18  make millions and billions of dollars forever off of this
19  battery and this tortious act.
20      And courts, Your Honor -- courts that we remember through
21  our history, when they look at an injustice, they remember what
22  we all learned the first year of law school, laws are dead
23  words on paper, we give them life how they interpret it.
24      I think when you look at the Court dealing with the Jewish
25  survivers of the Holocaust that's exactly what they did.  You

1   look at the *Grimes* court here in Maryland and they said that

2   "scientific advancements made at the expense of patients cannot

3   be separated from the real impacts on the subject's bodily

4   autonomy."  I think that's substantive, Your Honor.

5       The *Grimes* court recognized that individual subjects

6   stands to gain nothing and lose everything, including his or

7   her right to self-determination when they do this medical

8   racism and this medical experimentation just because they're

9   poor, black, indigenous people.

10      So to hear Thermo Fisher relying on past discrimination

11  against black people as an excuse to justify profit making

12  should not be condoned by the Court.

13      Denying this motion does not only put us on the right side

14  of the law, we believe, but on the right side of history.  And

15  importantly, Your Honor, on the right side of humanity.

16  Henrietta Lacks was a human being.  And all we're asking, as I

17  said at the very beginning, is for the Estate of Henrietta

18  Lacks's family to finally be able to put forth their arguments

19  in court.

20      If ever there was a case in court should be given the

21  benefit of the doubt to allow to go forward to discovery and

22  preferably to a jury we submit this is it.  It is

23  unprecedented, we believe, in every way.

24          THE COURT:  I certainly agree it's unprecedented

25  without a doubt.

1      Mr. George, let me ask you this:  You know, unjust

2  enrichment is an equitable remedy.  I don't want to call it a

3  catchall, but it's very amorphous.  It should adapt to the

4  facts of the case.  It's not particularly rigid as far as I

5  read in the cases.

6      I think Mr. Seeger and Mr. Crump make compelling equitable

7  arguments that Mrs. Lacks and her family and her children and

8  grandchildren will never get any recovery here.  Her cell line,

9  her body, will continually be replicated, and it's in the

10  possession of your client and other companies who make billions

11  of dollars from this.  Why isn't that unjust?

12          **MR. GEORGE:**  I think that that's really more of a

13  policy question than a legal question.  The Plaintiff here has

14  sued a single company and singled out that company as though it

15  were the only actor participating in what is actually a

16  worldwide commercial practice.  Whether it's right or wrong is

17  an absolutely fair debate to have.

18      What we're arguing in our motion is simply that the law be

19  followed here.  Statutes of limitation, they can feel harsh at

20  time, but we have them for good reasons, right.  Witnesses die,

21  evidence fades.  We have an actual witness die in the past 10

22  years, Dr. Jones --

23          **THE COURT:**  Well, I saw that in your papers.  I kind

24  of thought that was irrelevant.  I mean, we know what -- I

25  mean, I don't know that there would be a mini trial on exactly

1  what happened to her back then.  You've told me that you're

2  accepting that as true.

3          MR. GEORGE:  That's true, Your Honor.  But at the end

4  of the day if this -- we're accepting everything as true for

5  purposes of this stage of the case.  But if Thermo Fisher is

6  put in the place of having to defend itself on the merits at

7  trial then Thermo Fisher, which had nothing to do with any of

8  this conduct, is going to have to go back and see were these

9  circumstances actually unjust.  For now, we accept that they

10  are, and no one is challenging that.  But to be able to wait

11  forever -- and Your Honor is correct, there is no limiting

12  principle here.

13      I thought when Mr. Seeger said, "We're going to be back in

14  front of Your Honor," I thought what he was going to say was

15  suing other companies because they could do it at any time

16  forever.  And companies, and the world, needs to have finality,

17  settled expectations to be able to order their affairs, to be

18  able to order their businesses.

19          THE COURT:  So is the Lacks family entitled to any

20  finality?  Maybe your answer is -- I don't know what your

21  answer is, but.

22          MR. GEORGE:  So, like I said, Your Honor, I think that

23  in the abstract kind of moral question I understand where the

24  Plaintiffs are coming from here.  I understand it.  But I also

25  think that this is a poor way, this proceeding, is a poor way

1    of accomplishing that because they have sued a single specific

2    company under a limitless theory that is not consistent with

3    the way unjust enrichment actually works.

4          THE COURT:  Let's direct our attention back to the

5    elements of unjust enrichment then.  So you heard my discussion

6    with Mr. Seeger about what the benefit conferred upon your

7    client by the Lacks family is, it's the HeLa cell line.  Their

8    position is, it seems undisputed, that the HeLa cell line

9    replicates hourly, daily, will go on forever.  So why isn't

10   this the benefit here not just the cells that were acquired

11   initially, either when they purchased Invitrogen or however

12   they initially acquired them, but why isn't the benefit the

13   immortal cell line, meaning the benefit is in perpetuity?

14         MR. GEORGE:  So I think that would be quite

15   inconsistent with the way that the benefit is typically

16   analyzed in an unjust enrichment case.

17         THE COURT:  We don't have any case that talks about a

18   benefit like this so tell me about --

19         MR. GEORGE:  Well, I think that most benefits, one way

20   or another, can continue to provide downstream additional

21   benefits down the line.  We've cited the three cases that we

22   could find on this issue.  The *Brakeman* case, the first one

23   that we cited, was one where the investigator gave the services

24   to the legal -- the lawyers and the lawyers didn't get paid

25   until later.  And the investigator was saying that that was

51

```
 1  unjust enrichment because he deserved a cut of their payment.
 2  And the court said no, the benefit wasn't when the lawyers made
 3  money, it was when the lawyers got something from you, the
 4  Plaintiff.
 5          THE COURT:  That, I think, applies well if this second
 6  benefit is the sale of the products.  But here the benefit,
 7  I've heard alleged at least orally here, is that it's the
 8  replication of the cells.
 9          MR. GEORGE:  So I think that they're alleging both
10  because certainly --
11          THE COURT:  They are alleged both.
12          MR. GEORGE:  -- certainly the sale.  But if you think
13  about the replication of the cells that takes you to a really
14  tough-to-pin-down legal claim.
15          THE COURT:  I don't disagree with you.
16          MR. GEORGE:  Because what they're essentially arguing
17  is this replicates every time the cell divides that there's a
18  new legal claim.  And I think actually the difference between
19  that and the *Phreesia* case.  Your Honor said in the *Phreesia*
20  case the separate accrual approach is appropriate where, quote,
21  "The law forbids a discrete act," end quote.
22      There is no law that forbids Thermo Fisher from
23  cultivating the HeLa cell line.  There's no law that forbids
24  any of the other companies around the world or researchers and
25  labs that do that every day.  There's no law against that.  And
```

1    without that, there's no basis to find that every time a cell

2    divides that there is a new legal claim that can be raised.

3        The benefit was conferred from the Plaintiff to the

4    Defendant when the benefit claimed in the complaint, the HeLa

5    cell line was conferred.  And there is no question, and I don't

6    think any debate that the Plaintiff was on notice of that --

7        **THE COURT:**  Well, inquiry notice is different from

8    when the claim initially accrued.  So in order for the claim to

9    accrue all of the elements have to have been met, including the

10   initial, I think, conferral of the benefit, the cell line, on

11   Thermo Fisher Scientific.  I have yet to see in any document

12   that I'm allowed to consider the truth of the matter asserted

13   in when that occurred.

14       You've provided me with, I think, a screenshot of a

15   PowerPoint slide in Oprah Winfrey's movie that told the watcher

16   that Thermo Fisher was one of the companies that was developing

17   the cells.  But I can't consider that because to consider that

18   I would need to consider the truth of the matter asserted.  I

19   can consider -- take judicial notice of the fact that there was

20   a movie about it.

21       **MR. GEORGE:**  So we're not asking the Court to take

22   judicial notice of -- excuse me -- to take notice of anything

23   for its truth.  It's for the impact on the Plaintiff whether

24   the Plaintiff was on notice that the Plaintiff had a claim

25   against companies generally, and Thermo Fisher specifically.  I

1  don't think the law requires notice as to the specific actor

2  that's causing the alleged injury.

3          THE COURT:  I don't think it does either.  But this is

4  a weird situation in which you're claiming that, I think, the

5  inquiry notice occurred possibly before the actual accrual of

6  the claim.  Because it's unclear to me when the initial benefit

7  was conferred on Thermo Fisher Scientific.

8       I heard Mr. Seeger say it was in 2014 when they purchased

9  Invitrogen but that's -- that's nowhere in the complaint.

10  That's not in a document that I can consider the truth of the

11  matter in.

12       So maybe this is a technicality, but I have to be -- I'm

13  bound by the Fourth Circuit law, which says I can only consider

14  on a motion to dismiss for statute of limitations purposes,

15  which of course only occurs rarely, I can consider the face of

16  the complaint and on the face of the complaint I don't know

17  when the claim accrued.  Do I?

18          MR. GEORGE:  Well, I -- I understand the trouble that

19  the Court is having.  I think that what it comes back to is --

20  first of all, I just want to be clear.  I'm not trying to be

21  difficult about the date.  I don't know.  This is part of the

22  hard thing about when statute of limitations --

23          THE COURT:  It's your burden then.  It's your burden.

24  You want to dismiss this claim early on based on statute of

25  limitations and it's your burden to do so.  It's rarely done.

1  So point to me the evidence to satisfy your burden.

2        MR. GEORGE:  Right.  So it is absolutely rare at this

3  stage to dismiss a case based on the sufficiency of a record

4  for statute of limitations.  But we have it here.  We know for

5  sure.  Whether or not we know the exact date of conferral, we

6  know the date of notice is no later than the book.  But if

7  you -- even if you take away the book, the Plaintiff went on

8  media tours with the Plaintiff's lawyers in 2017 and 2018

9  before the limitations period about the lawsuits that they plan

10 to file against various actors, including pharmaceutical

11 companies.

12        THE COURT:  So your position is it doesn't matter when

13 the claim accrued against you.  What matters is that they're on

14 inquiry notice of any potential claim against any

15 pharmaceutical company years ago.  But your claim, I have no

16 idea, what if you just first started -- first got HeLa cells

17 last year?

18        MR. GEORGE:  Right.  So the reason that we're asking

19 here to just apply logic and say, well, the conferral has to be

20 before the date of notice.  And, again, I don't think that it

21 needs to be specific to Thermo Fisher.  It's notice that the

22 HeLa cell line has been conferred to companies.  And it's right

23 there on the cover of the book.  The HeLa cell line has been

24 conferred to companies.  If you looked into the book, it

25 includes Invitrogen, what became a Thermo Fisher subsidiary and

it's not the case --

          THE COURT:  But I can't consider the contents of that
book right now.

          MR. GEORGE:  I think you can, Your Honor, not for its
truth but for their notice.  And as a matter of logic, they're
on notice as of that point, and that means that the conferral
has to have occurred before they became aware that the
conferral had occurred.  Again, it doesn't have to be specific
to Thermo Fisher but it's a known fact.  And I don't think
they're disputing, and I don't see how they could, that
companies -- that they have known that companies have the HeLa
cell line and use it commercially for more than three years
before --

          THE COURT:  I understand that.  So let's just say
there's a hypothetical.  Let's say there's company ABC that
hasn't been created yet, but is created next week, and ABC
decides that it wants to develop similar products, wants to
compete with your client, and in doing so it acquires HeLa
cells.

     At that point, could the family sue that company?  Or if
you represented that company would you say "Oh, they knew about
this years ago?"  But the question really is when did the claim
against Thermo Fisher Scientific accrue?

          MR. GEORGE:  So in that hypothetical situation, I
think you'd have a laches problem because the law encourages

1  parties to come forward with their claims when they have them

2  within a certain reasonable period of time.  Here, three years.

3  So I don't think it's the case that one party is -- has claims

4  against it barred by the statute of limitations, whereas

5  another party could still be liable for engaging in the exact

6  same conduct.  That's what I think the equitable doctrine of

7  laches would prevent in that hypothetical scenario.

8           THE COURT:  But let's just say, hypothetically -- so

9  this complaint was filed October 21st, I believe, of 2021, or

10  October 18th maybe.  Let's say that you -- your client first

11  acquired the cells or the benefit was first conferred upon your

12  client in 2019.  Everyone is telling me different, but I don't

13  know that right now as the judge.  It's not in the complaint.

14  It's not any document that I can consider the truth of the

15  matter of.

16      So if you first apply it in 2018, they'd have a cause of

17  action against you that's not time-barred, correct?  Setting

18  aside your other arguments about whether you can have a solo

19  unjust enrichment claim.

20           MR. GEORGE:  For the reasons that I just said, Your

21  Honor, no, I don't think so.  I think that the Plaintiff was

22  required to bring a claim here against any companies that had

23  come into possession of the HeLa cell line within three years

24  of becoming aware of the bases for the unjust enrichment claim

25  here --

57

1        **THE COURT:**  Help me with that?  This is tricky.  So
2  what case should I look at to support that?
3        **MR. GEORGE:**  So it would be barred by laches.  I'd be
4  happy to provide the Court with a brief on that.  I don't know
5  the case off the top of my head, but in that situation you have
6  essentially the flip side of the statute of limitations, which
7  is -- I mean, they were required to bring this within three
8  years of knowing about the problem.
9        **THE COURT:**  So they would have just filed a claim in
10 Maryland state court saying we know this is happening, we don't
11 know who's doing it but we're suing John Doe, Company Doe?
12 They would have had to have done that to protect their rights?
13        **MR. GEORGE:**  Not at all, Your Honor.  That would only
14 be in a situation where there was some sort of a concealment
15 going on.  This is -- I mean, it's -- I think everyone can see
16 this is an open commercial practice.  And in the *Clarks v.*
17 *Private Goldmine* case, I believe it was made pretty clear by
18 this Court that it's the Plaintiff's duty to ask reasonable
19 questions and to do a reasonable investigation --
20        **THE COURT:**  I understand.  I think we're conflating --
21        **MR. GEORGE:**  I'm sorry.
22        **THE COURT:**  -- and I want to turn to -- no apologies.
23 This is a respectful discussion.  One minute, Mr. Seeger.
24     We're conflating the inquiry notice with the accrual time
25 and inquiry notice operates to delay the statute of limitations

1    not, I think, to start it earlier.

2          MR. GEORGE:  And I was just -- agreed.  I was just

3    responding to the Court's question about what they were

4    required to do between, say, the book.  If the book is the

5    period where they became on notice of the informed consent

6    issues, which I don't know, but assuming that's the latest time

7    because that is referenced in the complaint, then they had

8    three years from that date to investigate who might be sueable,

9    who might be liable under unjust enrichment, and to bring the

10   claim.  Whoever that was.  If it was Invitrogen then fine, that

11   would have been one of the companies that they need to sue in

12   that time.

13        The fact that Invitrogen -- that that acquisition, the

14   corporate acquisition didn't happen until 2014 is irrelevant.

15   When you buy a company, you buy its liability.

16          THE COURT:  Okay.

17          MR. GEORGE:  I'm sorry if I haven't --

18          THE COURT:  It's not that you haven't.  I think you've

19   done a very capable job given what you have.  But you're asking

20   me to dismiss a complaint very early on, which is only done

21   rarely.  I can only do it when on the face of the complaint or

22   documents that I can take judicial notice of show me

23   conclusively that the claim is time-barred and setting aside

24   the separate accrual doctrine or whether or not there's a

25   continuing violation.  I don't know when the one claim alleged

1    has accrued.

2         You're saying I should make reasonable inferences or it's

3    logical, and maybe it is, but if I'm just being intellectually

4    honest and adherent to the law, I'm just not sure that you've

5    met your burden to dismiss the case this early.

6              **MR. GEORGE:**  So if Your Honor can give me one moment?

7              **THE COURT:**  Okay.

8              **MR. GEORGE:**  Like I said, Your Honor, I think that the

9    trouble here is we don't know the original conferral date, and

10   I've agreed.  That's why I think this is going to be a

11   difficult case to state the *bona fide* purchaser for-value

12   requirement.  But we have provided the Court with materials in

13   our pleadings that show that -- not only that this was a

14   widespread commercial practice, but that Invitrogen and Thermo

15   Fisher themselves were purveyors of the HeLa cells or were

16   engaged in this commercial practice.

17        The Court is entitled to take judicial notice and, in

18   fact, under Rule 201 the Court should take judicial notice of

19   those because nobody is contesting their reliability or their

20   authenticity of what -- anything that they say.

21        Nobody is contesting that what's said in the book on that

22   score or the papers that we've cited that show that HeLa cells

23   were acquired from Thermo Fisher or Invitrogen, I don't think

24   there's been any contest that any of that is -- is -- was

25   available publicly or whether or not it was true.  But I don't

1  think the Court needs to get there because ultimately whether

2  or not we know the exact date of conferral, we absolutely know

3  the date of notice.  And knowing the date of notice, I think,

4  tells the Court enough to say that no matter what the date of

5  conferral was, this is time-barred.

6      And I'd be happy to provide the Court with a brief on the

7  laches issue if the Court would like.

8          THE COURT:  Okay.  Just give me one moment and I'll

9  turn to you, Mr. Seeger.  So on a motion to dismiss I can

10 consider documents integral to the complaint and the book, *The*

11 *Immortal Life of Henrietta Lacks* by Ms. Skloot was referenced

12 in the complaint, but I don't think it's integral to the

13 complaint.  It's not like a contract or a document that forms

14 the basis of a fraud claim or a magazine article and a liable

15 action.

16     I mean, I can take judicial notice of the book's

17 existence, its date of publication, but the contents of the

18 book -- for instance, if it says when your client first

19 acquired the cells, or the contents of the movie that tells us

20 when, you know, what companies were using the cells, I don't

21 think I can consider that on a motion to dismiss, can I, for

22 purposes of determining the accrual date of the claim?

23         MR. GEORGE:  So I'm not sure about that, Your Honor,

24 but you can certainly consider it for purposes of determining

25 the Plaintiff's notice.

1      **THE COURT:**  Inquiry notice.  All right.  I understand

2  your argument.  Thank you very much.

3      Mr. Seeger?

4      **MR. SEEGER:**  Judge, I just have to respond to a couple

5  points made by Mr. George.  There is nothing, nothing out there

6  that ties Thermo Fisher Scientific to these cells.  Not even at

7  the time of the book or the movie.

8      In fact, if you look at their Reply Brief on Page 11, they

9  proudly put this slide up where Thermo Fisher's name is on

10  this.  So what we did is we went and found the video.  This is

11  literally flashed up on the television screen during the HBO

12  movie for, like, a nanosecond.  I would challenge anybody in

13  this courtroom to pull up this video and see how long that

14  slide is on the screen, and from that they want you to throw

15  out this family's claim.  It's really disingenuous.

16      The other thing I'd like to point out, this is as

17  important, is the *Brakeman* case, the complete misstatement of

18  the facts.  The *Brakeman* case involved an investigator that was

19  fired by the lawyers.  They wrote him a letter saying he will

20  not be paid.  They then settled case and the investigator

21  showed up for his fee.

22      I mean, these cases are not on point.  I understand they

23  got a difficult -- they've got a little bit of a hill to climb

24  on some of these things.  But that's the facts of *Brakeman*.

25      I want to make sure I'm answering the Court's questions,

```
 1   but I would like to spend 10 seconds on the Grimes case.  If
 2   Your Honor hasn't read it, it is worth reading.  Because
 3   they're dealing with a lead dust.  It's a nontherapeutic
 4   experimentation they're dealing with in Grimes, it's the Court
 5   of Appeals in 2001, where they're literally testing abatement
 6   theories on poor black, brown children in Maryland.  It's the
 7   Kennedy Krieger Institute that was doing it.  The Court goes
 8   through an entire history of horrible incidences in our
 9   country's history, the Tuskegee syphilis experiment.  They talk
10   about giving LSD to soldiers, and they cite to U.S. v. Stanley,
11   which is an opinion written by Justice O'Connor where she says
12   "The voluntary consent of humans is absolutely essential to
13   satisfy moral, ethical and legal concepts."  And that's where
14   this case starts.  And it just takes -- it takes you through a
15   really -- it takes you through a court that's struggling with a
16   very similar situation you're struggling with, Your Honor.  And
17   I get it and the family gets it.  We've told them, you've got
18   tough issues in front of you, but this has to stop.  I mean,
19   this has to stop for a lot of reasons.
20        They are making billions of dollars on the back of this
21   family.  Have you asked them a question?  Have you ever tried
22   to reach out to the Lackes?  The answer is no.  They're making
23   their billions and they're satisfied to sit back and do it.
24        If we let them -- here's the bigger concern, not that
25   somebody is going to come up later and sue them for unjust
```

1  enrichment, it's that companies get away with this kind of

2  conduct, and they don't stop, and they don't do the right

3  thing.

4       THE COURT:  Let me ask you on the statute of

5  limitations issue.  You argue both, I think, that the separate

6  accrual doctrine and the continuing violation doctrine apply.

7  Is it both or either?

8       MR. SEEGER:  I honestly believe that either doctrine

9  could apply, and I'm happy to go through it.  But to be honest

10 with you, Your Honor, we don't need to get to the continuous

11 acts doctrine.  The separate accrual doctrine will satisfy the

12 purposes of this case and what this family needs from it.

13     The continuous acts doctrine, I will admit, is a little

14 bit more complicated.  And it was employed, as I said, in the

15 Eastern District of New York.  It's a different fact pattern.

16 We don't need to stretch the law that far.

17      THE COURT:  Okay.  So let's focus on separate accrual.

18      MR. SEEGER:  Okay.

19      THE COURT:  So your argument is that a new claim of

20 unjust enrichment accrues every time Thermo Fisher Scientific

21 develop -- replicates the cells in their laboratories?

22      MR. SEEGER:  That's correct, Your Honor.

23      THE COURT:  So possibly, in the past hour, a thousand

24 different claims have been accrued?

25      MR. SEEGER:  It's possible.  And, again, we don't have

```
 1    any discovery in this case.  The answer to your question
 2    broadly is yes.  But, more narrowly, we're not looking for a
 3    ridiculous result.  I think what we're really more focused on
 4    is the fact of the replicating of new cells leads to new
 5    products, the development of new genetic cell lines, and all
 6    the other things that we've spent two hours talking to you
 7    about.
 8              THE COURT:  Okay.
 9              MR. SEEGER:  Without these cells -- and we're not just
10    talking about vaccines and things like that, that could cause
11    one to pause and say "Wow, these are really good developments
12    for the human race."  But it's used to test sunscreens, it's
13    used to test lotions, there are billions and billions of
14    dollars being used by this family and not one Defendant has had
15    the decency to contact the family.
16              MR. CRUMP:  Your Honor, if I may?
17              THE COURT:  Yes.
18              MR. CRUMP:  I simply rise, Your Honor, to bring the
19    Court's attention that restitution law requires common law
20    advancements to serve the overarching purpose to assure
21    wrongdoers cannot retain unjust enrichment.  There is a reason
22    we continue to talk about unjust enrichment, Your Honor.
23         Professor Deleso Alford, who's present in the court,
24    Professor at Southern University, a black college who submitted
25    an *amicus* brief.
```

1           **THE COURT:**  Thank you for your *amicus* brief, sir.  I'm

2     sorry, there you are, ma'am.  Thank you very much.

3           **MR. CRUMP:**  She had wrote an article 10 years ago

4     called *HeLa Cells Unjust Enrichment in the Human Body*,

5     published in the Annals of Health Law, Journal Volume 21,

6     Special Edition where they were dealing with medical racism.

7     And it kind of went unnoticed, Judge, like disregarded.  Much

8     in the way courts have found ways to disregard medical racism

9     and in fact racism in many regards.

10          So we look, and we talk -- since we're having a

11    conversation about, you know, the norms -- Thermo Fisher isn't

12    the only one.  It's worldwide that companies benefit from

13    discrimination in the past.  It's, like, oh the victim should

14    have did something about it, but discrimination norms don't

15    rule.  The law does.  And unjust enrichment, I believe, was

16    invented by the Courts to try to deal with issues just as this

17    very one, Your Honor.

18          My grandmother said when you get a chance to speak truth

19    to power, you do it.  The courts are all powerful in our system

20    of justice.

21          You often wonder, from the family's perspective, what if

22    Johns Hopkins would have treated Henrietta Lacks like a human

23    being worthy of dignity and respect, and what if they would

24    have sought to get consent?  Then you would have had the

25    family, a black family in 1951, have an incredible intellectual

1  property.  Thermo Fisher, all the pharmaceutical companies,
2  would have had to come like they did all the white families and
3  say we have to get your permission and your consent and we have
4  to compensate you.

5      And so, in perpetuity, they would have to come to the
6  heirs of Henry Ford and the heirs of Bill Gates and everybody
7  else.  But because this was a black family and a discriminatory
8  society with discriminatory laws that you don't have to do
9  that.  You are entitled just to make billions and billions and
10 billions and the black family and the descendents have to
11 forever be marginalized.

12     Equity requires that the courts use whatever authority and
13 power, whether unjust enrichment, the Court in the Holocaust
14 case and so many cases to say we will not reward injustice.  I
15 share great legal minds and counsel has been very intellectual.
16 He can come up with all kind of intellectual ways to justify
17 discrimination, but we can also come up with intellectual ways
18 to address discrimination, Your Honor.

19          THE COURT:  Thank you, Mr. Crump.  Give me one moment
20 and see if I have any other questions.

21     Mr. George, let me ask you this:  You put in a footnote in
22 your Reply Brief -- I'll pull it up.  On Page 6 of your Reply
23 Brief you said the accrual timing, meaning the time that the
24 cause of action accrues, becomes a cause of action, the accrual
25 timing would not change if Plaintiff alleged Thermo Fisher

1  acquired additional HeLa cells during the limitations period."

2      I just don't know the business and how this works if

3  additional cells need to be acquired externally when you have

4  them and they replicate on their own.

5          MR. GEORGE:  Right.  This is Footnote 8 I think, Your

6  Honor.

7          THE COURT:  This is Footnote 8, correct.

8          MR. GEORGE:  Yes.  Just responding to the possible

9  hypothetical point.  I don't know.  I don't know that -- you're

10  right, the benefit that's been identified here is the HeLa cell

11  line, right, not individual HeLa cells but the HeLa cell line.

12  So if Thermo Fisher was to acquire more -- they still are

13  getting -- they already have the benefit.  The benefit has been

14  continual.  It's having the HeLa cell line.

15          THE COURT:  Why wouldn't a subsequent separate

16  acquisition of the HeLa cell line be a separate unjust

17  enrichment claim?

18          MR. GEORGE:  So this is a little bit uncharted, but I

19  think --

20          THE COURT:  All of this is.

21          MR. GEORGE:  But I think that the closest or closest

22  analogous type of law would be something like misappropriation

23  of a trade secret where in that situation when something is

24  alleged -- when a trade secret is alleged to be misappropriated

25  you look to the first misappropriation, the first act of

1   misappropriation.  And I think, similarly here, at some point

2   there has to be a limit to the liability.  It can't be forever

3   and it can't be so long as a party continues to engage in what

4   is a widespread commercial practice.

5           THE COURT:  But are you able to tell me as a factual

6   matter, and perhaps you either don't know or you strategically

7   don't want to tell me, but whether or not Thermo Fisher

8   Scientific goes out and purchases or acquires additional cells

9   from third parties, rather than continues to cultivate them on

10  their own?

11          MR. GEORGE:  It's hard for me to answer that question,

12  Your Honor, because I don't know enough to answer it.

13          THE COURT:  Okay.  All right.  But it's your position

14  that even if they do acquire them through third parties, let's

15  say last week, it doesn't matter because the initial

16  conference date is what matters?

17          MR. GEORGE:  Yes.  And I think this gets back to what

18  we were talking about a few moments ago in terms of if you were

19  to go with that hypothetical, and we would be happy to file a

20  brief on this if the Court is struggling with this issue, you

21  would run right into laches anyways because at the end of the

22  day we know the date of notice.  And so if beyond that

23  additional conduct occurs, and the Plaintiff has taken no

24  action to at some point assert the Plaintiffs's rights, what

25  you end up with is continually expanding liability and the

```
1   Plaintiff able to wait as the liability gets greater and
2   greater, the amount of money gets greater and greater, and what
3   laches says is that you have to bring your claim when you have
4   it.
5        And so they were required to bring against -- and I
6   understand they may not have known the identities of the
7   companies that were engaged in the practice, assuming that they
8   didn't actually read the book and notice Invitrogen being
9   mentioned in it.
10       But there's no doubt that they were aware that
11  companies -- that companies were using the HeLa cell line
12  commercially at the very latest by 2010, and certainly by the
13  time they were going out in the media with their lawyers, who
14  they had at the time, different counsel, with their lawyers who
15  they had at the time talking about all the lawsuits they were
16  going to file including against pharmaceutical companies.  And
17  they still waited more than three years after that.
18            THE COURT:  I understand your argument.
19       Mr. Seeger?
20            MR. SEEGER:  The laches brief is not going to help
21  you, that's an affirmative defense, that's not appropriate for
22  a motion to dismiss.  And, ultimately, I think what you're
23  hearing -- I don't mean this in any offensive way to counsel,
24  he's a nice guy and doing his job -- he can't answer the
25  questions you're asking.  And that's exactly why this case
```

1  should move forward, and we should get some discovery.  We

2  should be able to look under the hood.

3          THE COURT:  Let me ask you this:  Let's assume I let

4  the case go forward.  What sort of discovery do you think would

5  be appropriate given some of the very important issues about

6  whether or not this case should even go forward?

7      I mean, I saw in your paper, there's a footnote,

8  everything is buried in footnotes, the most important stuff is

9  in the footnotes apparently, that you'd want full-blown

10  discovery on all of the products they're selling, how much

11  money they've made off of them.  I'm not sure that even is

12  relevant to your claim, which is that the benefit, according to

13  you, is this -- the immortal cell line.

14          MR. SEEGER:  I'm really hoping what I'm about to say

15  does not sound immodest in any way, but for 30 years I've sued

16  pharmaceutical.  I've never been accused -- been accused of

17  maybe asking for too much.  We've never abused that process.

18      I know how to take discovery against pharmaceutical

19  companies in a way that's efficient, including Thermo Fisher

20  who is not a pharmaceutical company.  And, you know, as far as

21  what we -- I mean, there are a lot of ways to model this.

22  First of all, notice is an important issue.  What they knew

23  when they knew it is an important issue and --

24          THE COURT:  And notice for you is relevant, too.

25          MR. SEEGER:  Yes.

1          **THE COURT:**  Let's just talk about that.  The knowledge

2     for a plaintiff would be the knowledge of the personal

3     representative starting with Deborah Lacks, Mrs. Lacks's

4     daughter and then Lawrence Lacks and then Ron Lacks, correct?

5          **MR. SEEGER:**  I would imagine there are going to be

6     positions they want in the case and they're going to want to

7     ask those issues.  I mean, I don't want to do their work for

8     them.  But, yeah, I would imagine they would want to talk to

9     family members and ultimately come back to the court and take

10    another shot at getting the case dismissed.

11         But discovery is not going to be, I think, an issue and

12    I'm trying to -- I'm trying to satisfy any concern you might

13    have that you think we're going to make them turn over records.

14    I don't think we've got to go back 50, 60, 70 years.  We have

15    to have more information than we have right now.

16          **THE COURT:**  How long have they been a company?

17          **MR. SEEGER:**  I don't know how long they've been.  But

18    they've acquired -- I run across this all the time, a

19    pharmaceutical company owns a drug but they bought the company

20    that researched it, developed it, got it approved from the FDA.

21    So there's some discovery.  I would imagine these great

22    lawyers, when they purchased Invitrogen, did some due

23    diligence, you know.  Might have asked some questions of the

24    company.  Some of those questions might not directly bear on

25    what we're talking about, but they may.  They may be very

1 important.

2      One last thing -- unless you have more for me, Judge, I'll

3 be here all day.  Mr. George seems really concerned about the

4 fact that we've only sued them right now.  We're going to be

5 suing others.  There were defense lawyers sitting in this

6 audience right now who I know who represent pharmaceutical

7 companies.  They know this is coming.  But everybody is kind of

8 looking to this case right now and we'll see.

9           THE COURT:  We will see.  Just give me -- give me a

10 few minutes to confer with my trusted advisers over here.  All

11 right.

12      (Whereupon, a recess was taken from 11:56 a.m. to 12:06

13 p.m.)

14           THE COURT:  Mr. George, I just have a couple of

15 questions for you about the statute of limitations argument and

16 accrual, and I recognize we're in uncharted territory, and the

17 cases we're relying on can be distinguished six ways from

18 Sunday.

19      Do you have a case where the discovery rule or inquiry

20 notice precedes the accrual of a claim, which is essentially

21 what you're arguing here, that they were on notice of other

22 pharmaceutical companies doing what Thermo Fisher Scientific is

23 doing as early as 2010, but I don't know what the claim against

24 your client accrued?

25           MR. GEORGE:  I am not aware of a case in which they

```
 1   deal with that scenario.  If the Court is truly concerned about
 2   not knowing the exact date of the conferral, I think the way
 3   that this works is it doesn't matter whether the conferral is
 4   to Thermo Fisher.  But in any case, they haven't included a
 5   date in their complaint, that's why we brought up the bona fide
 6   purchaser for-value issue.  And I think they're going to need
 7   to.
 8           THE COURT:  I don't know that they have to include a
 9   date.
10           MR. GEORGE:  Well, to show that we were -- that we
11   purchased them while on notice I would think they would need a
12   date because notice occurs after this widespread publicity.
13       They would need to show that the purchase first occurred
14   after the widespread publicity, but if this is an issue that
15   the Court is truly concerned about, we can provide an affidavit
16   to show that Thermo Fisher -- excuse me -- that Thermo Fisher
17   acquire cells prior or Invitrogen, its subsidiary, acquired
18   cells prior to the notice date, that it was prior to 2018.
19   It's not going to be difficult but it will be futile.  It's
20   right there in the book.  But we can provide that if need be to
21   settle this issue.
22           THE COURT:  Okay.  For your position.
23       Mr. Seeger, anything to add?
24           MR. SEEGER:  No, Your Honor.  Thank you for your
25   consideration and time.
```

1            **THE COURT:**  All right.  I'm going to take this under

2    advisement.  I'll issue a written decision as soon as I can.

3    Please have patience with me.  This is a very challenging case,

4    and I want to make sure that I get it as right as possible.

5    Thank you very much.

6            **MR. CRUMP:**  On behalf of the family, I'd like to thank

7    you, Your Honor.

8            **THE COURT:**  This Honorable Court now stands adjourned.

9        (Hearing concluded at 12:09 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Ronda J. Thomas, Registered Merit Reporter, Certified

5   Realtime Reporter, in and for the United States District Court

6   for the District of Maryland, do hereby certify, pursuant to 28

7   U.S.C. § 753, that the foregoing is a true and correct

8   transcript of the stenographically-reported proceedings held in

9   the above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                         Dated this 25th day of May 2022.

13

14

15          _____

16                 Ronda J. Thomas, RMR, CRR
                   Federal Official Reporter

17

18

19

20

21

22

23

24

25

MR. CRUMP: [8]  2/10 21/16 21/18
46/11 64/16 64/18 65/3 74/6
MR. GEORGE: [53]  10/4 10/6 10/17
10/23 11/15 12/12 12/25 13/14 13/23
14/2 14/15 15/3 16/2 16/14 16/21 21/8
29/6 29/17 29/21 30/15 33/5 35/1 48/12
49/3 49/22 50/14 50/19 51/9 51/12
51/16 52/21 53/18 54/2 54/18 55/4
55/24 56/20 57/3 57/13 57/21 58/2
58/17 59/6 59/8 60/23 67/5 67/8 67/18
67/21 68/11 68/17 72/25 73/10
MR. SEEGER: [76]
MS. KELLY: [2]  2/17 2/22
MS. PARKER: [1]  2/12
THE CLERK: [2]  2/2 2/15
THE COURT: [139]
THE WITNESS: [2]  18/2 41/21

**1**
10 [6]  35/14 36/5 42/9 48/21 62/1 65/3
101 [1]  1/24
10:12 [1]  1/8
11 [3]  25/23 30/16 61/8
11:56 [1]  72/12
12 [1]  26/23
12:06 [1]  72/12
12:09 [1]  74/9
16 [1]  22/25
17 [1]  1/7
1889 [1]  20/15
18th [1]  56/10
1900s [1]  44/5
1930 [1]  20/16
1950s [3]  13/10 17/6 21/6
1951 [4]  5/1 30/5 38/18 65/25
1960s [1]  44/5
1:21-cv002524-DLB [1]  1/5

**2**
20 [1]  39/12
2001 [1]  62/5
2007 [3]  18/9 19/21 32/15
201 [1]  59/18
2010 [4]  15/18 35/15 69/12 72/23
2014 [4]  28/19 28/19 53/8 58/14
2015 [1]  10/21
2017 [2]  31/7 54/8
2018 [3]  54/8 56/16 73/18
2019 [1]  56/12
2021 [2]  8/19 56/9
2022 [2]  1/7 75/12
2050 [1]  39/19
21 [1]  65/5
21201 [1]  1/25
21st [1]  56/9
2524 [1]  2/3

25th [1]  75/12
28 [1]  75/6

**3**
30 [1]  70/15
343 [1]  32/16
351 [1]  32/16

**4**
40 [1]  25/23
41 [1]  25/23
42 [3]  25/23 26/25 27/4
43 [1]  43/3
45 [2]  25/23 27/5
48 [2]  33/12 33/15
49 [1]  33/12
4th [1]  1/24 8/19

**5**
50 [2]  33/12 71/14
51 [2]  26/4 33/12

**6**
60 [2]  44/15 71/14

**7**
70 [1]  71/14
753 [1]  75/7

**9**
936 [1]  32/16

**A**
A.2d [1]  32/16
a.m [2]  1/8 72/12
abatement [1]  62/5
ABC [2]  55/15 55/16
Abdul [1]  2/1
able [10]  29/7 30/9 37/10 47/18 49/10
49/17 49/18 68/5 69/1 70/2
about [56]  3/5 10/15 12/11 13/16 16/13
19/23 20/24 21/12 21/14 23/7 28/20
29/8 29/16 29/19 29/23 31/18 32/2 32/7
34/22 37/23 38/11 40/5 41/12 43/4 43/7
44/20 45/17 50/6 50/17 50/18 51/13
52/20 53/21 53/22 54/9 55/21 56/18
57/8 58/3 60/23 62/10 64/7 64/10 64/22
65/11 65/14 68/18 69/15 70/5 70/14
71/1 71/25 72/3 72/15 73/1 73/15
above [3]  1/9 34/3 75/9
above-entitled [2]  1/9 75/9
absolutely [6]  27/16 28/25 48/17 54/2
60/2 62/12
abstract [1]  49/23
abuse [1]  5/14
abused [1]  70/17
academic [1]  7/24
accept [1]  49/9

acceptance [5]  32/21 33/18 33/20
33/24 35/3
accepted [1]  27/11
accepting [3]  21/8 49/2 49/4
accompanied [1]  12/2
accompanying [2]  9/13 11/24
accomplishing [1]  50/1
according [2]  44/24 70/12
account [5]  17/18 19/22 31/11 39/11
43/1
accrual [18]  13/8 36/20 36/22 37/1
39/7 45/13 51/20 53/5 57/24 58/24
60/22 63/6 63/11 63/17 66/23 66/24
72/16 72/20
accruals [2]  35/24 36/19
accrue [5]  15/21 15/21 15/24 52/9
55/23
accrued [7]  15/19 52/8 53/17 54/13
59/1 63/24 72/24
accrues [2]  63/20 66/24
accused [2]  70/16 70/16
acknowledge [3]  21/11 23/10 32/2
acknowledges [2]  8/13 27/7
acquire [4]  26/5 67/12 68/14 73/17
acquired [13]  25/16 27/2 28/10 29/10
50/10 50/12 56/11 59/23 60/19 67/1
67/3 71/18 73/17
acquires [2]  55/18 68/8
acquisition [3]  58/13 58/14 67/16
across [1]  71/18
act [13]  12/1 12/17 12/21 14/11 35/23
37/14 39/6 42/18 44/16 45/22 46/19
51/21 67/25
action [7]  19/24 31/12 56/17 60/15
66/24 66/24 68/24
actionable [6]  9/13 11/9 12/20 14/3
14/16 17/7
activity [2]  31/10 31/12
actor [2]  48/15 53/1
actors [1]  54/10
acts [5]  38/13 38/16 45/21 63/11 63/13
actual [2]  48/21 53/5
actually [8]  29/6 38/9 41/14 48/15 49/9
50/3 51/18 69/8
adapt [1]  48/3
add [2]  46/9 73/23
additional [5]  50/20 67/1 67/3 68/8
68/23
address [4]  5/2 9/10 9/16 66/18
addressing [1]  3/15
adequately [1]  12/17
adherent [1]  59/4
adjourned [1]  74/8
admit [1]  63/13
advancements [3]  43/12 47/2 64/20
advice [1]  36/11
advisement [1]  74/2
advisers [1]  72/10

# A

**affairs** [1] 49/17
**affidavit** [1] 73/15
**affirmative** [4] 26/22 27/16 27/19 69/21
**affirmatively** [1] 24/25
**afraid** [1] 16/25
**after** [12] 4/11 5/11 15/2 15/24 30/4 35/14 35/20 41/6 42/23 69/17 73/12 73/14
**again** [9] 9/4 9/15 20/8 33/25 40/7 40/12 54/20 55/8 63/25
**against** [20] 16/11 31/15 32/15 39/2 46/5 46/14 47/11 51/25 52/25 54/10 54/13 54/14 55/23 56/4 56/17 56/22 69/5 69/16 70/18 72/23
**agent** [1] 18/11
**agents** [1] 5/25
**ages** [1] 23/2
**ago** [5] 35/14 54/15 55/22 65/3 68/18
**agree** [14] 9/18 9/21 23/17 24/13 26/10 27/19 28/6 29/22 32/25 33/3 34/4 35/10 36/17 47/24
**agreed** [4] 7/2 43/16 58/2 59/10
**agreement** [1] 33/6
**agrees** [1] 8/24
**ahead** [2] 13/22 18/7
**aided** [1] 1/21
**aim** [1] 18/22
**Alabama** [1] 5/17
**Alford** [1] 64/23
**alive** [2] 38/18 38/19
**all** [48] 2/14 2/21 2/23 4/3 11/12 13/2 14/20 16/18 18/4 18/6 19/2 23/17 26/9 27/6 31/2 33/6 35/2 35/13 35/24 36/3 37/5 37/19 37/21 38/13 38/13 38/13 39/25 43/7 46/22 47/16 52/9 53/20 57/13 61/1 64/5 65/19 66/1 66/2 66/16 67/20 68/13 69/15 70/10 70/22 71/18 72/3 72/10 74/1
**allegation** [5] 11/7 27/10 29/8 30/2 30/17
**allegations** [12] 3/25 4/4 4/5 9/4 20/6 21/9 23/25 24/3 25/14 25/21 35/10 36/18
**allege** [13] 12/4 12/22 12/24 13/2 13/2 17/8 24/11 24/18 24/25 25/22 27/1 39/17 41/25
**alleged** [27] 9/17 9/23 12/7 12/14 13/20 14/8 15/7 17/24 24/15 24/16 25/11 25/16 25/20 28/13 29/19 34/1 38/3 43/9 45/19 45/22 51/7 51/11 53/2 58/25 66/25 67/24 67/24
**allegedly** [1] 13/9
**alleges** [1] 35/6
**alleging** [6] 12/7 12/8 26/21 33/21 34/5 51/9

**allow** [3] 21/24 39/7 47/21
**allowed** [3] 20/25 21/20 52/12
**almost** [4] 16/25 31/24 43/20 44/3
**alone** [4] 10/16 11/3 14/19 17/13
**along** [2] 26/14 41/17
**already** [8] 30/1 30/6 30/10 30/11 30/12 30/18 35/6 67/13
**also** [10] 1/18 2/19 5/10 8/5 18/16 23/21 39/6 43/17 49/24 66/17
**always** [2] 13/6 13/7
**am** [6] 15/3 15/4 21/10 33/11 38/25 72/25
**amend** [3] 27/12 28/17 31/25
**amended** [7] 8/23 8/24 9/5 9/6 9/6 13/18 29/5
**America** [1] 19/21
**amicus** [3] 9/2 64/25 65/1
**amorphous** [1] 48/3
**amount** [1] 69/2
**analogous** [1] 67/22
**analyzed** [1] 50/16
**ANDREW** [2] 1/16 2/18
**anesthesia** [1] 5/3
**Annals** [1] 65/5
**another** [6] 8/12 14/16 39/13 50/20 56/5 71/10
**answer** [11] 27/14 27/15 34/16 35/17 49/20 49/21 62/22 64/1 68/11 68/12 69/24
**answering** [1] 61/25
**any** [28] 7/21 13/11 16/13 23/19 36/22 37/23 39/2 45/13 48/8 49/7 49/15 49/19 50/17 51/24 52/6 52/11 54/14 54/14 56/14 56/22 59/24 59/24 64/1 66/20 69/23 70/15 71/12 73/4
**anybody** [1] 61/12
**anything** [8] 16/18 19/23 29/2 41/17 46/9 52/22 59/20 73/23
**anyways** [1] 68/21
**apologies** [1] 57/22
**apologize** [2] 32/12 36/5
**apparently** [1] 70/9
**Appeals** [7] 14/23 14/24 18/9 18/12 19/18 32/15 62/5
**appeared** [1] 7/11
**appears** [1] 24/10
**appendectomies** [1] 5/23
**appendectomy** [1] 5/21
**applicable** [1] 24/4
**applied** [3] 35/22 36/22 44/17
**applies** [2] 36/19 51/5
**apply** [8] 18/1 22/7 23/23 37/2 54/19 56/16 63/6 63/9
**appreciation** [2] 32/20 34/20
**approach** [7] 6/18 10/19 10/24 15/15 43/23 43/25 51/20
**appropriate** [7] 26/23 30/13 36/24 51/20 69/21 70/5

**appropriately** [1] 25/2
**approved** [1] 71/20
**arbitrary** [1] 41/19
**are** [59] 2/20 2/24 3/18 3/19 4/4 4/11 4/23 9/6 9/8 10/17 15/3 16/5 17/15 19/3 20/14 21/6 21/6 21/11 22/2 22/2 22/24 23/12 24/22 24/24 29/23 32/11 32/25 33/13 34/4 35/10 36/17 36/18 38/18 38/19 38/21 39/20 40/13 43/11 43/18 43/19 44/3 44/4 44/13 44/14 46/22 49/10 49/24 51/11 61/22 62/20 64/11 64/13 65/2 65/19 66/9 67/12 68/5 70/21 71/5
**argue** [2] 24/21 63/5
**argued** [1] 39/6
**arguing** [7] 10/3 21/13 26/1 42/18 48/18 51/16 52/22
**argument** [14] 13/4 13/23 16/23 21/5 25/24 31/1 31/3 31/21 40/2 41/11 61/2 63/19 69/18 72/15
**arguments** [6] 3/15 24/23 41/12 47/18 48/7 56/18
**arises** [1] 42/23
**around** [7] 7/11 7/15 8/5 16/4 30/9 30/22 51/24
**article** [4] 8/9 8/12 60/14 65/3
**articles** [1] 7/25
**as** [61] 3/25 5/7 5/21 8/18 9/13 10/19 10/23 15/25 16/12 16/12 16/14 16/14 19/15 21/9 22/3 22/13 22/13 22/15 23/14 25/15 26/3 27/9 27/11 29/4 32/22 33/3 33/25 34/4 35/7 38/5 38/5 39/20 39/20 44/6 44/6 45/1 47/11 47/16 48/4 48/4 48/14 49/2 49/4 53/1 55/5 55/6 56/13 61/16 63/14 65/16 68/3 68/5 69/1 70/20 70/20 72/23 72/23 74/2 74/2 74/4 74/4
**aside** [2] 56/18 58/23
**ask** [7] 36/3 48/1 57/18 63/4 66/21 70/3 71/7
**asked** [5] 21/19 27/18 35/22 62/21 71/23
**asking** [7] 28/16 47/16 52/21 54/18 58/19 69/25 70/17
**assert** [2] 27/17 68/24
**asserted** [2] 52/12 52/18
**assets** [1] 35/21
**assistance** [2] 17/15 40/21
**assume** [2] 4/3 70/3
**assumes** [2] 13/4 13/21
**assuming** [3] 13/15 58/6 69/7
**assure** [1] 64/20
**attempt** [1] 7/2
**attention** [3] 24/6 50/4 64/19
**audience** [1] 72/6
**authenticity** [1] 59/20
**authority** [4] 10/14 10/15 22/6 66/12
**autonomy** [1] 47/4

**A**

available **[1]** 59/25
aware **[7]** 15/3 15/4 30/4 55/7 56/24
69/10 72/25
away **[4]** 5/4 7/11 54/7 63/1

**B**

back **[20]** 12/12 15/8 15/12 20/12
20/14 30/5 39/8 39/21 44/15 45/2 49/1
49/8 49/13 50/4 53/19 62/20 62/23
68/17 71/9 71/14
bad **[1]** 36/11
balancing **[1]** 44/9
Baltimore **[2]** 1/7 1/25
bank **[2]** 17/17 19/21
banks **[2]** 35/20 35/21
barred **[14]** 9/25 12/9 13/11 13/12
14/14 15/22 16/5 17/7 37/3 56/4 56/17
57/3 58/23 60/5
based **[10]** 10/25 11/9 13/12 15/5 17/5
17/24 25/14 30/3 53/24 54/3
bases **[1]** 56/24
basing **[2]** 11/6 14/18
basis **[3]** 21/21 52/1 60/14
battery **[12]** 12/8 12/8 13/11 14/1 16/11
20/2 20/8 21/7 38/18 43/13 43/14 46/19
be **[125]**
bear **[1]** 71/24
became **[3]** 54/25 55/7 58/5
because **[43]** 11/12 13/13 14/5 14/24
15/10 16/7 17/7 25/9 26/1 26/16 28/2
29/19 30/17 30/22 33/16 33/22 34/2
35/23 39/9 39/14 41/6 43/12 44/8 44/20
45/8 47/8 49/15 50/1 51/1 51/10 51/6
52/17 53/6 55/25 58/7 59/19 60/1 62/2
66/7 68/12 68/15 68/21 73/12
because certainly **[1]** 51/10
become **[1]** 7/23
becomes **[1]** 66/24
becoming **[3]** 7/16 30/4 56/24
been **[41]** 4/22 9/1 9/1 12/8 12/14
12/16 12/17 14/8 14/10 22/5 22/17 23/3
25/13 26/10 26/11 26/11 28/12 29/11
30/2 33/14 35/18 35/22 36/2 36/25 38/3
42/24 44/5 52/9 54/22 54/23 55/16
58/11 59/24 63/24 66/15 67/10 67/13
70/16 70/16 71/16 71/17
before **[14]** 1/10 2/2 2/4 3/2 3/7 23/4
25/16 25/17 37/6 53/5 54/9 54/20 55/7
55/13
begin **[1]** 3/7
beginning **[1]** 47/17
behalf **[6]** 1/14 1/16 2/13 2/18 3/11
74/6
behaved **[1]** 6/16
behind **[1]** 16/3
being **[13]** 2/24 10/25 26/13 30/10

**B (cont.)**

31/23 37/3 38/19 43/3 47/16 59/3 64/14
65/23 69/8
belief **[3]** 30/14 30/17 32/1
believe **[17]** 6/15 10/18 10/20 11/3
11/3 12/13 13/23 14/5 24/10 25/24
46/16 47/14 47/23 56/9 57/17 63/8
65/15
believed **[1]** 6/16
Ben **[2]** 2/10 3/15
benefit **[65]** 4/2 11/16 20/25 21/24
23/11 23/12 25/17 26/5 26/6 27/2 28/10
30/1 32/17 32/19 32/21 32/22 32/23
33/9 33/16 33/17 33/18 33/21 33/25
34/5 34/18 34/21 35/4 35/5 35/6 35/8
37/25 38/1 38/4 38/6 38/21 41/1 41/5
41/5 42/1 42/14 42/15 42/15 43/16
44/20 46/17 47/21 50/6 50/10 50/12
50/13 50/15 50/18 51/2 51/6 51/6 52/3
52/4 52/10 53/6 56/11 65/12 67/10
67/13 67/13 70/12
benefits **[5]** 18/23 43/19 44/23 50/19
50/21
BENJAMIN **[1]** 1/15
best **[1]** 7/23
best-selling **[1]** 7/23
between **[6]** 12/10 26/17 45/6 45/15
51/18 58/4
beyond **[1]** 68/22
big **[3]** 12/9 23/7 38/2
bigger **[1]** 62/24
Bill **[1]** 66/6
billions **[9]** 46/18 48/10 62/20 62/23
64/13 64/13 66/9 66/9 66/10
biotechnology **[3]** 8/3 8/7 42/6
bit **[5]** 34/14 40/8 61/23 63/14 67/18
black **[18]** 4/23 5/14 5/18 5/19 5/24
5/25 6/8 7/5 22/18 23/8 47/9 47/9
47/11 62/6 64/24 65/25 66/7 66/10
Blake **[4]** 10/22 15/14 19/16 40/10
blood **[2]** 38/11 38/12
blown **[1]** 70/9
BOARDMAN **[2]** 1/10 21/24
bodies **[1]** 22/18
bodily **[3]** 42/7 43/12 47/3
body **[6]** 4/12 6/5 20/23 41/10 48/9
65/4
bona **[17]** 9/17 9/22 24/7 24/12 24/19
24/22 25/1 25/3 25/5 26/2 26/22 27/24
28/4 31/23 32/7 59/11 73/5
book **[16]** 7/24 26/11 35/15 54/6 54/7
54/23 54/24 55/3 58/4 58/4 59/21 60/10
60/18 61/7 69/8 73/20
book's **[2]** 29/11 60/16
boring **[1]** 32/13
born **[1]** 23/3
both **[8]** 9/18 9/20 11/23 24/10 51/9
51/11 63/5 63/7
bottom **[1]** 19/2

**B (cont.)**

bought **[1]** 71/19
bound **[1]** 53/13
Brakeman **[4]** 50/22 61/17 61/18 61/24
brand **[2]** 37/21 37/22
breach **[2]** 20/7 33/23
breached **[1]** 17/19
break **[1]** 43/6
breakthroughs **[1]** 7/18
Bredar **[9]** 10/11 10/13 10/18 11/22
12/3 12/13 14/7 14/17 31/9
Bredar's **[1]** 31/6
brief **[10]** 3/9 57/4 60/6 61/8 64/25 65/1
66/22 66/23 68/20 69/20
briefly **[2]** 10/7 46/11
bring **[8]** 16/7 16/16 56/22 57/7 58/9
64/18 69/3 69/5
broadly **[1]** 64/2
broken **[1]** 17/20
brother **[2]** 23/1 23/2
brothers' **[1]** 22/23
brought **[5]** 7/20 16/11 32/6 35/14 73/5
brown **[1]** 62/6
bulk **[1]** 10/2
Bull **[2]** 37/17 37/17
burden **[7]** 26/21 27/17 53/23 53/23
53/25 54/1 59/5
buried **[2]** 5/11 70/8
business **[2]** 27/6 39/13 67/2
businesses **[1]** 49/18
butchered **[1]** 23/4
butchering **[1]** 23/1
buy **[2]** 58/15 58/15
buyers **[1]** 8/5

**C**

Cain **[1]** 44/6
call **[1]** 48/2
called **[2]** 26/16 65/4
came **[4]** 1/9 7/14 20/3 20/3 31/13
35/14 35/15
can **[58]** 3/9 3/19 3/20 4/9 9/11 10/15
11/18 13/19 17/2 17/13 22/15 23/17
24/13 25/4 28/17 29/1 30/20 31/4 31/25
34/4 36/17 36/23 37/11 38/5 39/14
41/17 43/3 43/6 44/20 44/21 46/6 46/12
46/13 48/19 50/20 52/2 52/19 53/10
53/13 53/15 55/4 56/14 56/18 57/15
58/21 58/22 59/6 60/9 60/16 60/21
60/21 60/24 66/16 66/17 72/17 73/15
73/20 74/2
can't **[11]** 11/2 19/5 19/6 26/3 26/4
37/5 52/17 55/2 68/2 68/3 69/24
cancer **[7]** 4/25 5/8 5/10 6/8 6/17 20/19
20/20
cancerous **[2]** 20/20 20/21
candid **[1]** 41/9
cannabis **[1]** 19/13
cannot **[5]** 10/9 10/16 22/4 47/2 64/21

# C

**capable [1]** 58/19
**capacity [2]** 8/17 22/7
**carcinoma [2]** 6/14 6/16
**case [105]**
**cases [33]** 10/14 10/18 10/19 11/3 11/5 11/6 11/20 11/23 12/3 12/10 14/20 14/23 14/25 15/16 17/1 17/4 17/14 19/3 19/12 19/19 20/14 27/22 35/19 36/22 37/5 40/3 44/15 45/15 48/5 50/21 61/22 66/14 72/17
**catchall [1]** 48/3
**cause [5]** 19/24 56/16 64/10 66/24 66/24
**causes [1]** 44/22
**causing [1]** 53/2
**cell [54]** 4/7 4/8 4/8 4/11 4/12 4/15 4/15 4/20 6/22 6/23 7/13 21/1 22/10 29/11 30/4 30/20 33/21 33/22 33/25 33/25 34/2 34/6 34/12 34/16 35/6 35/8 37/22 38/1 39/9 42/15 43/1 43/16 43/17 46/5 48/8 50/7 50/8 50/13 51/17 51/23 52/1 52/5 52/10 54/22 54/23 55/12 56/23 64/5 67/10 67/11 67/14 67/16 69/11 70/13
**cells [86]**
**cellular [2]** 42/10 42/10
**certain [2]** 45/20 56/2
**certainly [5]** 47/24 51/10 51/12 60/24 69/12
**CERTIFICATE [1]** 74/11
**Certified [1]** 75/4
**certify [1]** 75/6
**cervical [6]** 4/25 5/10 6/4 6/8 6/17 20/19
**cervix [3]** 5/4 5/7 6/13
**Chair [1]** 6/9
**challenge [2]** 23/24 61/12
**challenging [3]** 23/21 49/10 74/3
**chance [3]** 46/16 46/17 65/18
**change [1]** 66/25
**characteristics [1]** 4/10
**chattel [2]** 22/13 22/17
**chemical [1]** 5/25
**Chief [2]** 12/13 14/7
**child [1]** 22/22
**children [5]** 22/24 23/5 36/3 48/7 62/6
**choice [1]** 30/3
**Chris [1]** 3/14
**CHRISTOPHER [2]** 1/14 2/8
**circle [1]** 20/11
**Circuit [2]** 40/10 53/13
**circumstances [5]** 32/22 33/18 35/7 36/24 49/9
**citations [1]** 9/5
**cite [4]** 17/4 32/16 32/16 62/10
**cited [8]** 10/11 10/19 10/21 19/3 30/10

**CIVIL [2]** 1/5 2/3
**claim [77]**
**claimed [2]** 7/14 52/4
**claiming [2]** 15/10 53/4
**clarified [1]** 34/14
**CLARKE [2]** 1/17 2/18
**Clarks [1]** 57/16
**clean [2]** 44/1 44/1
**clear [9]** 11/2 14/2 18/12 20/16 25/15 41/16 43/8 53/20 57/17
**clearly [5]** 17/12 20/5 20/5 24/20 24/21
**client [8]** 21/13 48/10 50/7 55/18 56/10 56/12 60/18 72/24
**clients's [1]** 44/22
**climb [1]** 61/23
**clinical [1]** 7/6
**clock [3]** 37/19 40/7 40/12
**closest [4]** 25/11 26/25 67/21 67/21
**closing [2]** 18/10 18/11
**colleague [1]** 43/4
**collecting [1]** 6/7
**college [1]** 64/24
**color [1]** 41/20
**come [13]** 7/7 25/11 26/25 39/14 46/13 56/1 56/23 62/25 66/2 66/5 66/16 66/17 71/9
**comes [2]** 2/4 53/19
**coming [2]** 49/24 72/7
**commercial [5]** 48/16 57/16 59/14 59/16 68/4
**commercialization [1]** 22/5
**commercialize [1]** 27/6
**commercially [2]** 55/12 69/12
**committed [3]** 17/19 20/2 43/13
**common [3]** 4/9 11/5 64/19
**community [4]** 4/24 7/7 26/14 42/21
**companies [30]** 7/20 8/4 8/7 26/14 42/6 46/14 48/10 49/15 49/16 51/24 52/16 52/25 54/11 54/22 54/25 55/11 55/11 56/22 58/11 60/20 63/1 65/12 66/1 69/7 69/11 69/11 69/16 70/19 72/7 72/22
**company [18]** 2/20 39/3 39/13 39/17 48/14 48/14 50/2 54/15 55/15 55/20 55/21 57/11 58/15 70/20 71/16 71/19 71/19 71/24
**company's [1]** 8/12
**compel [1]** 17/4
**compelled [1]** 18/14
**compelling [1]** 48/6
**compensate [3]** 18/22 39/23 66/4
**compensated [1]** 22/5
**compete [1]** 55/18
**complained [1]** 6/1
**complaint [44]** 3/2 3/4 4/1 4/4 8/22

8/23 8/25 9/5 9/6 9/7 9/19 9/23 13/18 20/7 24/1 24/18 24/20 25/8 25/8 25/15 25/19 25/21 26/8 26/24 27/1 28/17 29/4 29/5 29/24 33/10 41/11 52/4 53/9 53/16 53/16 56/9 56/13 58/7 58/20 58/21 60/10 60/12 60/13 73/5
**complete [1]** 61/17
**complicated [1]** 63/14
**computer [3]** 1/21 45/21 45/22
**Computer-aided [1]** 1/21
**concealment [1]** 57/14
**concede [2]** 24/10 40/9
**conceding [1]** 21/7
**concept [1]** 40/9
**concepts [1]** 62/13
**concern [2]** 62/24 71/12
**concerned [3]** 72/3 73/1 73/15
**concluded [1]** 74/9
**conclusion [1]** 17/4
**conclusively [1]** 58/23
**concocted [1]** 6/10
**condition [1]** 6/15
**conditions [2]** 4/16 7/10
**condoned [1]** 47/12
**conduct [20]** 11/1 12/14 12/18 14/8 15/5 17/6 19/5 19/7 20/24 23/10 23/13 26/5 28/5 28/20 32/3 34/3 49/8 56/6 63/2 68/23
**confer [1]** 72/10
**Conference [1]** 75/10
**conferral [12]** 30/9 38/1 52/10 54/5 54/19 55/6 55/8 59/9 60/2 60/5 73/2 73/3
**conferred [24]** 25/17 27/2 28/10 29/11 29/25 29/25 32/18 32/19 33/9 34/5 37/25 38/4 38/21 41/2 41/3 42/2 43/16 50/6 52/3 52/5 53/7 54/22 54/24 56/11
**conferrence [1]** 68/16
**confidence [1]** 33/24
**conflating [1]** 57/20 57/24
**conformance [1]** 75/10
**confuse [1]** 19/11
**confused [1]** 25/25
**conscious [3]** 26/3 30/3 31/14
**consent [9]** 5/5 6/7 20/14 20/17 30/5 58/5 62/12 65/24 66/3
**consequence [1]** 5/7
**consider [16]** 23/25 24/2 43/25 52/12 52/17 52/17 52/18 52/19 53/10 53/13 53/15 55/2 56/14 60/10 60/21 60/24
**consideration [2]** 31/16 73/25
**considered [2]** 9/3 20/20
**consistent [2]** 31/17 50/2
**consists [1]** 32/17
**constructive [2]** 39/21 46/6
**consumer [5]** 12/1 12/17 12/20 14/10 19/8
**contact [1]** 64/15

# C

contacted [1]  36/6
contained [1]  34/11
contents [3]  55/2 60/17 60/19
contest [1]  59/24
contesting [3]  21/6 59/19 59/21
context [1]  4/6
continual [1]  67/14
continually [2]  48/9 68/25
continue [4]  23/11 30/3 50/20 64/22
continued [3]  7/19 42/7 45/24
continues [3]  23/13 68/3 68/9
continuing [2]  58/25 63/6
continuous [5]  35/23 39/6 44/16 63/10
 63/13
contract [4]  8/6 17/19 19/25 60/13
contributions [1]  7/25
conversation [4]  11/17 11/18 21/2
 65/11
conversion [3]  15/18 15/22 16/8
converted [1]  15/19
convicted [1]  46/15
convinced [1]  25/7
cooked [1]  20/22
copyright [6]  20/25 30/24 37/9 37/16
 37/18 43/22
corporate [1]  58/14
correct [13]  8/23 11/21 12/25 28/13
 34/23 35/1 41/15 49/11 56/17 63/22
 67/7 71/4 75/7
correctly [1]  14/4
could [28]  4/15 6/19 7/3 11/12 13/8
 14/14 17/8 18/17 25/19 27/13 27/15
 27/16 28/22 28/23 35/18 35/22 36/3
 39/17 39/18 40/1 44/25 49/15 50/22
 55/10 55/20 56/5 63/9 64/10
couldn't [5]  12/7 29/4 36/6 36/21 36/22
counsel [6]  2/6 2/15 3/8 66/15 69/14
 69/23
count [6]  3/2 3/4 33/11 33/12 33/13
 37/2
countless [1]  7/17
country [2]  22/19 32/15
country's [1]  62/9
County [9]  10/11 11/21 11/24 12/13
 14/4 14/5 14/6 14/6 18/8
couple [3]  31/7 61/4 72/14
course [7]  5/8 13/10 25/6 32/8 40/22
 44/22 53/15
court [70]  1/1 2/2 2/4 3/2 3/21 4/3 8/18
 11/5 14/7 14/23 14/23 15/14 15/15 18/9
 18/12 18/17 18/21 19/11 19/15 19/17
 19/18 19/24 21/20 21/21 21/23 22/6
 22/23 23/8 23/22 29/24 32/14 35/22
 37/7 37/16 40/3 40/11 44/16 45/8 45/14
 46/15 46/24 47/1 47/5 47/12 47/19
 47/20 51/2 52/21 53/19 57/4 57/10

57/18 59/12 59/17 59/18 60/1 60/4 60/6
 60/7 62/4 62/7 62/15 64/23 66/13 68/20
 71/9 73/1 73/15 74/8 75/5
Court's [4]  44/23 58/3 61/25 64/19
courtroom [2]  22/24 61/13
courts [9]  14/25 19/4 36/25 46/20
 46/20 65/8 65/16 65/19 66/12
cover [1]  54/23
COVID [1]  43/2
create [8]  21/1 22/18 30/24 39/9 39/23
 42/17 42/18 46/6
created [5]  33/23 34/2 43/1 55/16
 55/16
creating [1]  6/24
creation [2]  6/21 7/13
critical [1]  20/10
criticism [1]  6/12
CRONIN [1]  1/17
Cross [2]  18/8 32/15
CRR [2]  1/23 75/16
CRUMP [10]  1/15 2/10 3/15 16/20
 23/16 24/8 43/4 46/9 48/6 66/19
cultivate [3]  7/3 43/10 68/9
cultivated [3]  4/22 25/14 38/20
cultivates [3]  8/4 43/5 43/5
cultivating [1]  51/23
cultivation [3]  4/14 7/19 40/21
culture [1]  4/10
cure [6]  27/13 27/16 28/22 28/23 29/4
 29/7
curiae [1]  9/2
current [1]  29/3
cut [2]  5/4 51/1
cute [1]  24/18
cv [1]  2/3
cv002524 [1]  1/5

# D

daily [2]  41/13 50/9
dark [1]  44/4
database [3]  37/13 45/12 46/2
date [21]  27/9 45/20 53/21 54/5 54/6
 54/20 58/8 59/9 60/2 60/3 60/4
 60/17 60/22 68/16 68/22 73/2 73/5 73/9
 73/12 73/18
Dated [1]  75/12
dates [1]  13/8
daughter [1]  71/4
day [9]  28/24 36/2 41/18 45/7 49/4
 51/25 68/22 72/3 75/12
De [1]  37/17
dead [1]  46/22
deadline [1]  41/19
deadly [2]  6/16 6/17
deal [2]  65/16 73/1
dealing [5]  20/1 46/24 62/3 62/4 65/6
debate [3]  35/5 48/17 52/6
DEBORAH [3]  1/10 23/5 71/3

decades [1]  7/8
decency [1]  64/15
decide [1]  39/13
decided [4]  10/12 11/22 11/22 14/4
decides [1]  55/17
decision [3]  14/7 40/6 74/2
defect [1]  28/21
defend [1]  49/6
defendant [34]  1/6 1/16 3/1 10/3 11/8
 18/12 18/23 19/3 19/10 20/13 23/9
 24/11 25/1 31/9 31/13 31/16 32/18
 32/19 32/20 32/22 32/23 33/9 34/5
 34/21 35/3 35/8 37/13 37/25 38/24
 39/20 42/2 46/1 52/4 64/14
Defendant's [1]  31/11
Defendants [2]  2/19 9/14
defense [8]  2/15 15/25 26/23 27/17
 27/19 31/23 69/21 72/5
defined [1]  26/3
dehumanization [1]  22/19
delay [1]  57/25
Deleso [1]  64/23
denied [1]  5/17
dentist [1]  20/15
deny [1]  21/21
Denying [1]  47/13
departed [1]  15/14
deposits [1]  17/17
derive [1]  22/1
derth [1]  7/5
descendents [1]  66/10
described [4]  9/14 14/17 25/13 34/3
describes [1]  8/10
deserved [1]  51/1
determination [1]  47/7
determine [1]  24/3
determining [2]  60/22 60/24
develop [3]  4/17 55/17 63/21
developed [3]  34/11 42/24 71/20
developing [1]  52/16
development [3]  8/6 43/18 64/5
developments [1]  64/11
develops [2]  37/21 42/10
did [18]  5/5 6/15 9/5 13/10 20/13 22/1
 23/12 33/17 36/7 36/9 36/9 38/1 46/25
 55/22 61/10 65/14 66/2 71/22
didn't [14]  3/15 12/24 15/21 15/21
 15/23 19/22 21/4 28/14 28/14 35/24
 36/7 50/24 58/14 69/8
didn't read [1]  28/14
die [3]  4/11 48/20 48/21
died [1]  5/10
difference [4]  12/6 12/10 45/15 51/18
different [15]  13/1 13/8 35/23 40/8
 43/1 43/7 43/19 43/19 45/13 45/20 52/7
 56/12 63/15 63/24 69/14
differently [1]  34/10
difficult [5]  44/9 53/21 59/11 61/23

**D**

difficult... [1] 73/19
dignity [1] 65/23
diligence [1] 71/23
direct [2] 25/19 50/4
directly [3] 9/6 20/1 71/24
disagree [2] 9/20 51/15
discovery [14] 26/12 26/22 27/13
 27/16 45/3 47/21 64/1 70/1 70/4 70/10
 70/18 71/11 71/21 72/19
discrete [1] 51/21
discrimination [5] 47/10 65/13 65/14
 66/17 66/18
discriminatory [2] 66/7 66/8
discussed [1] 35/6
discussion [8] 10/2 11/19 17/3 34/22
 37/24 39/25 50/5 57/23
disease [1] 5/19
disgorge [1] 18/23
dish [2] 41/10 42/20
disingenuous [1] 61/15
dismiss [16] 2/25 4/2 8/21 8/25 9/2
 12/23 15/25 16/7 53/14 53/24 54/3
 58/20 59/5 60/9 60/21 69/22
dismissal [1] 15/2
dismissed [4] 19/8 19/9 19/14 71/10
dispute [2] 34/22 37/23
disputes [1] 13/10
disputing [1] 55/10
disregard [1] 65/8
disregarded [1] 65/7
dissociated [1] 22/15
distinction [1] 12/11
distinguished [1] 72/17
DISTRICT [8] 1/1 1/1 19/18 19/18
 35/19 63/15 75/5 75/6
divides [1] 51/17 52/2
DIVISION [1] 1/2
DLB [2] 1/5 2/3
DLB-21-cv-2524 [1] 2/3
do [51] 3/7 3/20 3/24 10/15 14/24
 17/13 17/20 18/19 20/9 24/18 24/19
 25/4 25/4 25/6 25/10 25/22 26/20 26/20
 27/1 28/18 29/23 32/25 33/2 33/3 35/10
 38/20 41/14 42/16 42/19 44/1 44/13
 46/7 46/9 47/7 49/7 49/15 51/25 53/17
 53/25 57/19 58/4 58/21 62/23 63/2
 65/19 66/8 68/14 70/4 71/7 72/19 75/6
Docket [1] 2/3
doctor [3] 5/3 7/4 38/11
doctors [8] 5/21 5/22 6/3 6/6 6/25
 16/12 20/8 26/17
doctrine [16] 35/23 35/23 36/20 36/23
 37/1 39/6 39/7 44/16 56/6 58/24 63/6
 63/6 63/8 63/11 63/11 63/13
document [5] 30/17 52/11 53/10 56/14
 60/13

documents [2] 58/22 60/10
Doe [2] 57/11 57/11
does [13] 8/25 13/2 13/24 20/8 25/2
 31/12 37/1 41/6 43/10 47/13 53/3 65/15
 70/15
doesn't [10] 17/25 17/25 29/9 31/25
 40/24 44/11 54/12 55/8 68/15 73/3
doing [12] 39/13 40/17 40/17 40/23
 40/24 44/18 55/18 57/11 62/7 69/24
 72/22 72/23
dollars [6] 7/20 14/18 46/18 48/11
 62/20 64/14
don't [70] 3/22 3/24 13/14 14/4 15/21
 16/3 17/9 24/17 24/20 25/3 26/1 26/2
 27/12 28/2 28/14 29/21 30/19 35/17
 36/4 36/13 36/15 36/20 37/23 40/18
 45/15 46/4 48/2 48/25 49/20 50/17
 51/15 52/5 53/1 53/3 53/16 53/21 54/20
 55/9 55/10 56/3 56/12 56/21 57/4 57/10
 58/6 58/25 59/9 59/23 59/25 60/12
 60/20 63/2 63/2 63/10 63/16 63/25
 65/14 66/8 67/2 67/9 67/9 68/6 68/7
 68/12 69/23 71/7 71/14 71/17 72/23
 73/8
done [7] 20/17 25/7 42/25 53/25 57/12
 58/19 58/20
doubt [5] 21/24 28/19 47/21 47/25
 69/10
down [8] 18/17 18/20 34/9 38/6 40/1
 40/19 50/21 51/14
downstream [1] 50/20
Dr. [8] 6/9 6/10 6/12 6/21 6/25 7/11
 7/13 48/22
Dr. George [1] 6/10
Dr. Gey [2] 7/11 7/13
Dr. Gey's [1] 6/21
Dr. Jones [1] 48/22
Dr. Richard [1] 6/9
Dr. TeLinde [2] 6/12 6/25
draftspersons [1] 17/15
draw [2] 25/4 25/9
drill [1] 34/9
driven [1] 38/17
drug [1] 71/19
due [1] 71/22
dumping [1] 40/8
duplicates [1] 22/11
during [5] 5/2 5/24 21/18 61/11 67/1
dust [1] 62/3
duty [2] 20/7 57/18

**E**

each [19] 22/10 30/22 37/18 38/23 40/6
 40/12 42/17 45/11 45/21
earlier [1] 58/1
early [6] 24/1 27/18 53/24 58/20 59/5
 72/23
Eastern [2] 35/18 63/15

ECF41 [1] 9/1
ECF63 [1] 9/2
Edition [1] 65/6
efficient [1] 70/19
eight [2] 5/11 23/5
either [9] 15/1 20/1 24/8 36/15 50/11
 53/3 63/7 63/8 68/6
element [5] 33/8 34/4 34/20 34/22 35/3
elements [11] 12/4 12/7 12/23 12/24
 14/11 28/3 32/10 32/14 32/17 32/25
 43/15 50/5 52/9
elephant [1] 38/2
else [4] 15/20 16/18 41/17 66/7
employed [1] 63/14
enabled [2] 4/14 7/9
encourages [1] 55/25
end [9] 7/6 14/16 14/17 28/24 41/18
 49/3 51/21 68/21 68/25
ended [3] 6/22 45/19 45/20
ends [2] 45/2 45/6
engage [1] 68/3
engaged [3] 31/10 59/16 69/7
engaging [1] 56/5
enormous [1] 4/17
enough [3] 29/22 60/4 68/12
enriched [1] 33/16
enrichment [58] 3/4 3/6 8/20 9/11 9/25
 10/8 10/16 10/24 11/7 11/11 12/2 13/5
 13/6 13/12 15/1 15/16 15/19 15/20
 15/23 16/4 17/5 17/13 17/24 19/5 19/6
 19/10 19/15 19/20 22/7 31/12 32/6
 32/11 32/17 33/1 33/12 36/20 36/23
 37/2 37/5 37/11 43/15 44/25 48/2 50/3
 50/5 50/16 51/1 56/19 56/24 58/9 63/1
 63/20 64/21 64/22 65/4 65/15 66/13
 67/17
entire [1] 62/8
entitled [8] 1/9 31/15 44/17 45/9 49/19
 59/17 66/9 75/9
equitable [4] 44/8 48/2 48/6 56/6
equities [1] 44/9
equity [2] 31/14 66/12
ESQUIRE [6] 1/14 1/15 1/15 1/16 1/17
 1/17
essential [3] 7/16 12/4 62/12
essentially [5] 10/12 11/12 51/16 57/6
 72/20
estate [10] 1/3 3/3 7/21 8/16 8/18 22/4
 24/5 39/15 41/2 47/17
ethical [1] 62/13
European [1] 35/21
even [11] 15/14 18/13 21/1 31/15 45/3
 45/25 54/7 61/6 68/14 70/6 70/11
ever [3] 21/23 47/20 62/21
every [16] 20/16 25/9 30/23 37/12
 37/18 38/20 38/23 39/9 40/6 40/12
 45/12 47/23 51/17 51/25 52/1 63/20
everybody [5] 20/24 26/9 28/19 66/6

**E**

**everybody... [1]** 72/7
**everyone [3]** 8/24 56/12 57/15
**everyone's [1]** 11/16
**everything [5]** 31/18 43/25 47/6 49/4 70/8
**evidence [3]** 6/16 48/21 54/1
**evil [1]** 23/13
**exact [4]** 54/5 56/5 60/2 73/2
**exactly [7]** 26/16 26/20 27/9 37/6 46/25 48/25 69/25
**example [4]** 5/16 15/6 17/17 17/25
**exceptional [1]** 4/14
**excuse [5]** 16/8 24/10 47/11 52/22 73/16
**existence [1]** 60/17
**existing [2]** 22/7 23/23
**expanding [2]** 43/17 68/25
**expectations [1]** 49/17
**expense [1]** 47/2
**experience [1]** 21/10
**experiment [1]** 62/9
**experimentation [2]** 47/8 62/4
**extent [1]** 28/21
**externally [1]** 67/3
**extraction [1]** 20/15
**extraordinarily [1]** 23/23
**extraordinary [2]** 23/22 43/11

**F**

**face [3]** 53/15 53/16 58/21
**facing [1]** 6/12
**fact [21]** 8/10 9/21 9/21 15/24 17/4 20/18 20/19 28/3 29/12 30/6 30/11 44/2 52/19 55/9 58/13 59/18 61/8 63/15 64/4 65/9 72/4
**facts [15]** 3/18 20/9 23/17 23/19 23/22 23/23 29/7 29/24 37/4 37/12 38/17 44/19 48/4 61/18 61/24
**factual [1]** 68/5
**factually [1]** 30/8
**fades [1]** 48/21
**failed [2]** 12/3 12/22
**fails [2]** 13/1 13/3
**fair [1]** 48/17
**fairness [2]** 14/19 21/22
**fall [1]** 19/15
**families [1]** 66/2
**family [30]** 2/9 2/11 2/13 7/21 8/11 16/10 16/14 21/2 23/19 36/2 36/7 39/24 44/22 45/6 47/18 48/7 49/19 50/7 55/20 62/17 62/21 63/12 64/14 64/15 65/25 65/25 66/7 66/10 71/9 74/6
**family's [2]** 61/15 65/21
**far [4]** 38/5 48/4 63/16 70/20
**fast [1]** 18/19
**favor [2]** 25/9 37/8

**FDA [1]** 71/20
**February [1]** 5/1
**February 1951 [1]** 5/1
**Federal [2]** 1/24 75/16
**fee [1]** 61/21
**feel [1]** 48/19
**feelings [1]** 21/12
**felt [1]** 46/15
**fertilization [1]** 4/19
**few [3]** 23/3 68/18 72/10
**fiction [1]** 22/17
**fide [17]** 9/17 9/22 24/7 24/12 24/19 24/22 25/1 25/3 25/5 26/2 26/22 27/24 28/4 31/23 32/7 59/11 73/5
**fiduciary [1]** 20/7
**file [5]** 30/24 37/22 54/10 68/19 69/16
**filed [8]** 3/1 3/3 8/17 8/23 9/1 9/1 56/9 57/9
**files [1]** 27/10
**filing [1]** 15/25
**final [1]** 9/24
**finality [2]** 49/16 49/20
**finally [2]** 46/7 47/18
**find [5]** 36/21 36/22 44/16 50/22 52/1
**finding [1]** 12/18
**fine [1]** 58/10
**FINST [2]** 1/19 2/19
**fired [1]** 61/19
**first [27]** 4/15 4/21 7/13 9/9 9/10 10/7 25/16 25/17 26/9 27/2 28/10 33/8 34/4 36/19 46/22 50/22 53/20 54/16 54/16 56/10 56/11 56/16 60/18 67/25 67/25 70/22 73/13
**FISHER [64]** 1/5 1/19 1/19 2/3 3/1 8/3 8/9 8/15 8/19 8/21 9/17 9/21 21/19 22/11 22/12 25/5 25/12 26/13 27/1 27/5 27/7 29/25 30/11 30/24 30/9 30/11 33/15 35/4 36/6 38/5 39/2 41/4 42/6 42/9 42/22 43/10 45/1 45/7 47/10 49/5 49/7 51/22 52/11 52/16 52/25 53/7 54/21 54/25 55/9 55/23 59/15 59/23 61/6 63/20 65/11 66/1 66/25 67/12 68/7 70/19 72/22 73/4 73/16 73/16
**Fisher's [2]** 43/4 61/9
**five [1]** 15/22
**fix [1]** 41/17
**fixed [1]** 41/17
**flashed [1]** 61/11
**flip [3]** 39/16 40/18 57/6
**Floor [1]** 1/24
**flush [1]** 18/6
**focus [4]** 38/15 39/7 42/15 63/17
**focused [3]** 6/21 25/22 64/3
**followed [1]** 4/8
**footnote [5]** 23/14 66/21 67/5 67/7 70/7
**footnotes [2]** 70/8 70/9
**forbids [3]** 51/21 51/22 51/23

**forced [1]** 5/20
**forces [1]** 46/7
**forcing [1]** 18/23
**Ford [1]** 66/6
**foreclosed [1]** 36/21
**foregoing [1]** 75/7
**forever [9]** 38/24 44/25 46/17 46/18 49/11 49/16 50/9 66/11 68/2
**format [1]** 75/9
**forms [2]** 6/17 60/13
**forth [2]** 46/14 47/18
**forward [8]** 19/19 21/25 39/8 47/21 56/1 70/1 70/4 70/6
**found [11]** 10/9 11/23 12/3 12/19 12/22 14/25 19/4 37/14 40/6 61/10 65/8
**foundation [1]** 7/17
**Fourth [1]** 53/13
**frankly [3]** 25/7 30/15 32/5
**fraud [4]** 12/1 19/8 45/22 60/14
**fraudulent [1]** 31/10
**free [1]** 7/15
**frequently [1]** 6/13
**front [6]** 37/15 45/2 45/4 45/25 49/14 62/18
**full [1]** 70/9
**full-blown [1]** 70/9
**functions [1]** 4/10
**further [1]** 22/8
**futile [1]** 73/19

**G**

**gain [1]** 47/6
**Gates [1]** 66/6
**gave [1]** 50/23
**gene [1]** 4/19
**generally [1]** 52/25
**genetic [4]** 27/8 42/13 42/25 64/5
**genetics [1]** 43/2
**GEORGE [14]** 1/16 2/18 6/10 10/3 21/4 29/2 33/3 34/25 46/10 48/1 61/5 66/21 72/3 72/14
**get [26]** 3/9 11/21 15/8 17/13 17/14 18/5 24/17 24/18 26/12 30/19 30/22 35/2 36/9 44/17 46/17 48/8 50/24 60/1 62/17 63/1 63/10 65/18 65/24 66/3 70/1 74/4
**gets [4]** 62/17 68/17 69/1 69/2
**getting [3]** 28/2 67/13 71/10
**Gey [4]** 6/10 7/2 7/11 7/13
**Gey's [1]** 6/21
**Gibbons [2]** 19/21 19/24
**GILLIAN [2]** 1/19 2/19
**Ginsburg [3]** 37/8 37/15 37/19
**give [10]** 17/16 18/2 21/23 35/17 46/23 59/6 60/8 66/19 72/9 72/9
**given [6]** 7/15 36/11 44/5 47/20 58/19 70/5
**giving [3]** 41/5 43/23 62/10

**G**

go [30]  13/6 13/7 13/15 13/22 16/25 17/9 18/7 19/19 20/14 25/24 27/4 31/2 31/25 33/20 37/7 39/7 39/16 39/24 44/15 44/20 44/21 46/12 47/21 49/8 50/9 63/9 68/19 70/4 70/6 71/14
goes [2]  20/18 62/7 68/8
going [37]  3/19 11/13 11/16 19/2 21/24 26/13 30/25 31/24 32/14 35/5 35/17 37/7 38/16 39/6 39/8 41/21 45/2 45/4 45/4 45/5 49/8 49/13 49/14 57/15 59/10 62/25 69/13 69/16 69/20 71/5 71/6 71/11 71/13 72/4 73/6 73/19 74/1
Goldmine [1]  57/17
good [13]  2/8 2/10 2/12 2/14 2/17 2/21 10/5 10/6 11/10 31/14 41/22 48/20 64/11
got [12]  3/25 15/22 15/23 20/6 25/2 51/3 54/16 61/23 61/23 62/17 71/14 71/20
grandchildren [4]  22/24 39/12 46/13 48/8
grandmother [3]  4/24 39/22 65/18
grandmother's [1]  39/10
grandson [1]  8/17
grant [2]  46/3 46/4
granted [1]  27/12
grave [1]  5/12
great [5]  33/6 39/12 44/22 66/15 71/21
greater [4]  69/1 69/2 69/2 69/2
Grimes [4]  47/1 47/5 62/1 62/4
Grimm [1]  40/6
grow [2]  30/23 37/22
grown [1]  38/19
guess [2]  16/12 43/8
guy [1]  69/24
Gynecology [1]  6/10

**H**

hacking [2]  45/21 46/1
had [35]  6/6 7/5 7/8 12/3 12/14 12/16 12/19 15/17 16/11 16/15 19/23 20/16 23/3 25/16 28/12 28/16 28/17 34/11 38/14 41/8 44/16 45/7 45/20 49/7 52/24 55/8 56/22 57/12 58/7 64/14 65/3 65/24 66/2 69/14 69/15
hadn't [1]  12/17
Hagen [1]  31/9
hand [7]  3/18 13/7 13/7 13/7 13/7 13/16 13/16
handle [1]  3/19
happen [3]  36/9 40/24 58/14
happened [6]  15/18 23/18 23/18 36/12 36/16 49/1
happening [1]  57/10
happens [1]  39/13
happy [5]  14/21 57/4 60/6 63/9 68/19

hard [2]  53/22 68/11
hardest [1]  32/5
harm [3]  22/8 38/17 44/23
harsh [1]  48/19
harvest [3]  5/4 5/6 7/1
harvested [2]  6/4 38/19
has [45]  3/1 4/3 4/22 7/22 8/15 8/21 9/1 9/1 9/16 11/8 13/21 14/3 15/1 15/10 17/18 17/19 17/19 18/13 19/25 22/6 22/17 24/5 26/10 26/11 26/11 27/11 29/22 30/2 36/2 38/2 42/6 48/13 54/19 54/22 54/23 55/7 56/3 59/1 62/18 62/19 64/14 66/15 67/13 68/2 68/23
hasn't [3]  38/3 55/16 62/2
have [137]
haven't [6]  14/11 44/14 45/8 58/17 58/18 73/4
having [7]  6/25 28/17 29/10 49/6 53/19 65/10 67/14
HBO [1]  61/11
he [19]  6/16 6/19 6/22 8/20 10/21 12/18 12/19 12/22 17/18 17/19 22/23 22/25 23/3 40/6 49/14 51/1 61/19 66/16 69/24
he's [2]  31/14 69/24
head [2]  6/10 57/5
Health [2]  5/16 65/5
Healthcare [1]  19/16
hear [3]  14/21 26/2 47/10
heard [3]  50/5 51/7 53/8
hearing [6]  1/10 2/5 2/25 24/2 69/23 74/9
heirs [2]  66/6 66/6
HeLa [58]  4/7 4/12 4/17 4/20 4/23 7/15 7/19 7/22 7/22 8/4 8/7 8/10 8/13 8/16 8/20 21/20 22/1 22/2 22/15 23/12 29/11 30/3 30/7 33/21 33/22 33/25 33/25 34/6 34/12 34/16 35/6 35/8 40/14 41/2 42/1 42/11 43/5 43/16 50/7 50/8 51/23 52/4 54/16 54/22 54/23 55/11 55/18 56/23 59/15 59/22 65/4 67/1 67/10 67/11 67/11 67/14 67/16 69/11
held [2]  19/24 75/8
Helen [1]  7/14
help [5]  30/20 31/20 38/10 57/1 69/20
HENRIETTA [25]  1/4 3/3 4/23 5/3 5/5 8/14 8/16 22/1 22/2 22/2 22/3 22/4 22/6 22/8 22/10 22/12 22/22 33/16 36/3 41/2 41/8 47/16 47/17 60/11 65/22
Henry [1]  66/6
her [30]  5/4 5/6 5/8 7/12 8/11 8/11 19/17 20/17 20/22 20/22 20/23 22/4 22/4 22/9 22/15 23/1 23/5 34/10 38/1 41/10 42/10 42/12 43/1 43/13 47/7 48/7 48/7 48/8 48/9 49/1
here [52]  2/24 2/24 4/2 11/21 12/6 13/9 13/20 14/13 16/13 17/4 18/1 20/1 21/13 23/22 28/18 30/2 32/5 35/4 35/16 35/25

36/9 36/14 37/2 37/20 37/21 40/3 40/13 43/24 44/4 45/2 45/7 46/4 47/1 48/8 48/13 48/19 49/12 49/24 50/10 51/6 51/7 54/4 54/19 56/2 56/22 56/25 59/9 67/10 68/1 72/3 72/10 72/21
here's [1]  62/24
hereby [1]  75/6
high [1]  6/6
high-ranking [1]  6/6
hill [3]  18/8 32/15 61/23
him [3]  17/3 18/24 61/19
his [14]  6/12 6/18 6/18 6/25 8/17 14/17 19/22 22/23 22/25 23/1 23/2 47/6 61/21 69/24
history [6]  21/19 22/20 46/21 47/14 62/8 62/9
Hobbs [1]  31/6
hold [3]  18/10 27/18 31/15
holding [1]  7/12
holdings [1]  12/10
Holocaust [5]  35/19 35/20 44/15 46/25 66/13
honest [4]  18/14 26/10 59/4 63/9
honestly [1]  63/8
Honor [68]  2/8 2/10 2/12 2/17 3/14 10/4 10/17 12/12 13/14 15/4 16/2 17/10 18/25 20/5 20/11 21/2 21/16 21/18 22/21 23/11 25/22 27/4 27/20 28/16 30/16 30/22 31/4 31/8 33/2 33/5 34/7 34/24 35/1 35/12 36/14 37/6 41/14 41/18 45/3 46/1 46/11 46/20 47/4 47/15 49/3 49/11 49/14 49/22 51/19 55/4 56/21 57/13 59/6 59/8 60/23 62/2 62/16 63/10 63/22 64/16 64/18 64/22 65/17 66/18 67/6 68/12 73/24 74/7
HONORABLE [2]  1/10 74/8
hood [1]  70/2
hope [1]  11/18
Hopefully [1]  45/2
hoping [1]  70/14
Hopkins [11]  4/21 4/25 6/3 6/6 7/5 16/12 21/10 23/1 23/4 26/17 65/22
horrible [2]  20/24 62/8
hospital's [1]  6/8
hosts [1]  8/9
hour [2]  40/7 63/23
hourly [2]  41/13 50/9
hours [1]  64/6
House [1]  8/1
how [22]  5/18 20/3 26/5 26/7 26/16 26/20 30/19 31/13 36/8 36/9 36/18 37/1 43/23 43/24 46/23 55/10 61/13 67/2 70/10 70/18 71/16 71/17
however [12]  50/11
HPV [1]  43/2
human [6]  6/23 7/13 47/16 64/12 65/4 65/22
humanity [2]  23/7 47/15

**H**

humans [1] 62/12
hundreds [1] 5/18
hung [1] 28/2
husband [1] 19/21
hypothetical [5] 55/15 55/24 56/7 67/9
68/19
hypothetically [1] 56/8
hysterectomies [1] 5/23

**I**

I'd [11] 3/24 4/1 17/9 24/6 24/8 32/9
46/3 57/3 60/6 61/16 74/6
I'll [6] 16/19 18/19 60/8 66/22 72/2 74/2
I'm [59] 3/12 9/9 11/13 11/16 14/21
16/24 16/24 17/3 18/19 19/1 24/17 25/7
25/22 25/25 26/19 26/19 28/8 29/16
31/20 31/22 32/13 33/10 34/12 35/17
37/6 37/10 38/15 39/6 39/15 40/4 40/25
41/15 41/23 41/24 42/4 43/3 43/22
43/23 43/24 45/8 45/13 45/14 52/12
53/12 53/20 57/21 58/17 59/3 59/4
60/23 61/25 63/9 65/1 70/11 70/14
70/14 71/12 71/12 74/1
I've [10] 3/24 3/25 9/3 19/9 25/7 27/22
51/7 59/10 70/15 70/16
idea [2] 36/16 54/16
identified [1] 67/10
identities [1] 69/6
identity [1] 22/3
ifs [1] 36/8
II [1] 5/24
ill [1] 22/18
illegal [3] 19/4 28/5 35/24
illustration [1] 38/9
imagine [3] 71/5 71/8 71/21
immodest [1] 70/15
immortal [7] 4/15 6/2 7/13 46/5 50/13
60/11 70/13
impact [1] 52/23
impacts [1] 47/3
implemented [1] 6/6
important [10] 2/24 4/7 20/19 23/9
61/17 70/5 70/8 70/22 70/23 72/1
importantly [1] 47/15
impossible [1] 31/24
INC [2] 1/5 2/4
incidences [1] 62/8
incident [1] 6/5
include [1] 73/8
included [1] 73/4
includes [3] 11/4 30/11 54/25
including [8] 4/18 7/23 8/10 47/6 52/9
54/10 69/16 70/19
inconsistent [1] 50/15
incorporated [1] 33/14
incorporating [1] 42/11

incredible [1] 65/25
indeed [1] 27/7
indefinitely [1] 4/16
indigenous [1] 47/9
indigent [1] 7/5
indirectly [1] 20/1
individual [2] 47/5 67/11
ineffective [1] 5/10
inequitable [5] 32/23 33/19 33/22 34/1
35/7
inexperienced [1] 5/22
infer [1] 29/24
inference [2] 25/5 25/9
inferences [1] 59/2
infertile [1] 5/9
information [7] 27/9 30/14 30/16 31/25
37/14 45/12 71/15
informed [2] 30/5 58/5
informs [1] 27/9
infringed [1] 37/19
infringement [2] 37/9 43/22
infringers [1] 37/16
initial [4] 38/17 52/10 53/6 68/15
initially [3] 50/11 50/12 52/8
injunction [2] 46/3 46/5
injury [1] 53/2
injustice [2] 46/21 66/14
innovations [1] 4/18
inquiry [7] 52/7 53/5 54/14 57/24 57/25
61/1 72/19
inserted [1] 20/21
inside [1] 20/22
instance [1] 60/18
Institute [2] 5/17 62/7
institutions [1] 5/13
insurance [1] 40/11
integral [2] 60/10 60/12
intellectual [6] 22/14 42/11 65/25
66/15 66/16 66/17
intellectually [1] 59/3
interest [1] 43/21
interested [1] 3/12
interests [1] 6/21
interpret [1] 46/23
interrupt [3] 11/14 11/17 25/25
interruption [1] 17/22
introduce [2] 2/6 2/16
introductory [1] 24/9
invented [1] 65/16
investigate [1] 58/8
investigation [1] 57/19
investigator [4] 50/23 50/25 61/18
61/20
Invitrogen [19] 26/15 28/19 29/8 29/10
29/13 30/6 30/12 30/18 41/4 50/11 53/9
54/25 58/10 58/13 59/14 59/23 69/8
71/22 73/17
involve [1] 8/7

involved [2] 7/4 61/18
involving [6] 20/15 37/11 37/16 37/17
40/11 43/22
irrelevant [2] 48/24 58/14
is [240]
isn't [6] 13/12 45/9 48/11 50/9 50/12
65/11
isolate [1] 32/1
isolated [1] 6/5
issue [18] 13/17 16/19 24/7 28/7 29/3
30/12 31/25 50/22 60/7 63/5 68/20
70/22 70/23 71/11 73/6 73/14 73/21
74/2
issues [7] 9/9 24/24 58/6 62/18 65/16
70/5 71/7
it [182]
it's [79]
its [14] 7/5 8/9 8/16 10/9 15/1 27/7
32/24 35/9 42/8 52/23 55/4 58/15 60/17
73/17
itself [5] 12/16 12/17 12/18 12/20 49/6

**J**

Jake [1] 37/18
Jewish [2] 35/20 46/24
job [2] 58/19 69/24
John [1] 57/11
Johns [9] 4/21 4/25 6/3 6/6 21/10 23/1
23/4 26/17 65/22
Johnson [1] 40/5
Jones [1] 48/22
Journal [1] 65/5
JPMorgan [1] 40/10
judge [37] 10/11 10/12 10/12 10/18
10/22 11/22 11/22 12/3 12/5 12/13 14/7
14/17 15/14 16/24 19/16 21/24 24/17
26/1 27/10 31/6 31/9 35/16 36/5 37/8
37/15 37/19 38/8 40/1 40/6 40/18 41/24
43/22 44/8 56/13 61/4 65/7 72/2
Judge Grimm [1] 40/6
judges [2] 11/23 19/15
judicial [7] 52/19 52/22 58/22 59/17
59/18 60/16 75/10
jury [2] 45/5 47/22
just [73] 3/22 5/7 9/4 9/8 10/7 11/13
11/16 12/19 12/22 12/24 13/12 14/2
14/14 14/17 15/11 18/2 21/9 21/11
22/21 22/25 23/3 24/13 25/23 26/9
27/21 29/4 29/8 29/20 31/2 31/20 31/22
32/1 32/10 34/12 36/5 36/17 39/16 41/3
41/19 41/21 42/14 42/19 43/8 43/14
43/18 45/8 45/14 46/11 46/17 47/8
50/10 53/20 54/16 54/19 55/14 56/18
56/20 57/9 58/2 58/2 59/3 59/4 60/8
61/4 62/14 64/9 65/16 66/9 67/2 67/8
71/1 72/9 72/14
justice [6] 14/19 22/8 46/16 46/17
62/11 65/20

**J**

justify [2] 47/11 66/16

**K**

keep [2] 18/24 28/1
keeps [1] 41/5
KELLY [2] 1/17 2/17
Kennedy [1] 62/7
kickback [1] 40/12
kickbacks [1] 40/11
KIM [2] 1/15 2/12
kind [6] 48/23 49/23 63/1 65/7 66/16 72/7
knew [15] 20/3 25/12 26/6 26/9 26/16 26/20 27/3 28/5 28/12 28/19 31/9 31/11 55/21 70/22 70/23
know [46] 14/22 15/22 17/14 19/15 19/22 28/18 30/19 32/2 35/16 36/1 44/5 46/13 48/1 48/24 48/25 49/20 53/16 53/21 54/14 54/6 56/13 57/4 57/10 57/11 58/6 58/25 59/9 60/2 60/2 60/20 65/11 67/2 67/9 67/9 68/6 68/12 68/22 70/18 70/20 71/17 71/23 72/6 72/7 72/23 73/8
knowing [4] 26/5 57/8 60/3 73/2
knowledge [9] 7/23 15/4 25/16 32/20 34/21 36/14 36/15 71/1 71/2
known [7] 4/15 4/20 5/21 6/17 55/9 55/11 69/6
knows [2] 20/24 36/11
Krieger [1] 62/7

**L**

La [1] 37/18
laboratories [1] 63/21
laboratory [5] 4/16 6/20 7/3 7/9 40/21
labs [1] 51/25
laches [7] 55/25 56/7 57/3 60/7 68/21 69/3 69/20
Lackes [1] 62/22
LACKS [50] 1/3 1/4 2/3 2/9 2/11 2/13 3/4 4/23 5/3 5/9 5/10 8/11 8/14 8/16 8/17 8/17 8/18 8/19 8/23 16/10 16/14 20/2 21/5 22/1 22/2 22/8 22/10 22/14 22/15 22/22 23/18 23/18 25/13 27/8 28/12 33/16 33/17 36/3 37/25 41/2 41/8 45/6 47/16 48/7 49/19 50/7 60/11 65/22 71/3 71/4 71/4
Lacks's [16] 6/4 4/7 8/7/20 7/25 20/14 21/10 22/2 22/3 22/6 22/12 22/22 24/5 42/7 43/12 47/18 71/3
Lane [1] 7/14
language [1] 18/16
large [1] 7/5
largest [2] 8/3 42/5
last [7] 20/11 20/18 21/3 21/9 54/17 68/15 72/2

late [2] 9/25 32/6
later [8] 7/8 8/23 15/22 23/5 42/16 50/25 54/6 62/25
latest [2] 58/6 69/12
Laughter [1] 33/7
law [38] 3/5 9/11 9/19 10/10 11/12 14/9 17/12 17/16 17/20 22/7 23/22 23/23 24/3 24/4 24/11 24/21 24/24 25/9 28/15 29/8 44/4 46/22 47/14 48/18 51/21 51/22 51/23 51/25 53/1 53/13 55/25 59/4 63/16 64/19 64/19 65/5 65/15 67/22
Lawrence [2] 22/22 71/4
laws [2] 46/22 66/8
lawsuits [1] 54/9 69/15
lawyer [1] 15/25
lawyers [10] 50/24 50/24 51/2 51/3 54/8 61/19 69/13 69/14 71/22 72/5
lead [1] 62/3
leader [1] 4/24
leads [1] 64/4
learned [2] 16/13 46/22
least [3] 39/8 39/23 51/7
leave [1] 27/12
left [1] 5/9
legal [12] 22/7 22/17 22/18 36/5 37/24 48/13 50/24 51/14 51/18 52/2 62/13 66/15
let [12] 9/8 11/20 25/23 27/4 32/9 43/8 48/1 62/24 63/4 66/21 70/3 70/3
let's [21] 10/7 13/25 15/18 18/8 24/7 26/9 28/6 31/2 32/4 33/8 39/19 41/9 50/4 55/14 55/15 56/8 56/10 63/17 68/14 70/3 71/1
letter [1] 61/19
liability [5] 14/19 58/15 68/2 68/25 69/1
liable [3] 56/5 58/9 60/14
lie [1] 19/24
life [2] 46/23 60/11
lifetime [1] 23/20
light [2] 13/24 23/9
like [43] 3/8 3/8 3/24 4/1 11/11 14/6 14/17 15/9 16/25 17/9 24/6 24/8 27/14 30/13 31/24 32/9 35/18 35/24 37/6 37/12 42/16 43/2 43/2 43/21 44/15 45/11 45/15 46/17 49/22 50/18 59/8 60/7 60/13 61/12 61/16 62/1 64/10 65/7 65/13 65/22 66/2 67/22 74/6
likely [1] 31/11
limit [1] 68/2
limitation [1] 48/19
limitations [24] 10/1 13/5 13/15 13/17 16/4 16/9 16/16 16/17 29/13 29/14 39/2 39/4 44/12 53/14 53/22 53/25 54/4 54/9 56/4 57/6 57/25 63/5 67/1 72/15
limiting [3] 44/11 44/13 49/11
limitless [1] 50/2

line [49] 4/7 4/8 4/12 4/15 4/15 4/20 4/21 6/22 6/24 7/13 19/2 29/11 30/4 30/24 33/21 33/23 33/25 33/25 34/2 34/6 34/12 34/17 35/7 35/8 38/1 39/9 42/1 42/15 43/16 43/18 46/5 48/8 50/7 50/8 50/13 50/21 51/23 52/5 52/10 54/22 54/23 55/12 56/23 67/11 67/11 67/14 67/16 69/11 70/13
lineage [1] 4/9
lines [8] 4/8 8/5 21/1 31/7 37/22 43/1 43/7 64/5
literally [3] 42/9 61/11 62/5
litigating [1] 45/3
little [9] 17/14 17/14 23/1 34/10 34/14 40/8 61/23 63/13 67/18
Litz [1] 40/8
lived [1] 23/4
lives [2] 22/10 22/10
living [2] 22/3 22/22
LLC [1] 32/16
loaded [1] 43/6
logic [2] 54/19 55/5
logical [1] 59/3
Lombard [1] 1/24
long [4] 61/13 68/3 71/16 71/17
look [11] 12/12 39/25 44/9 46/21 46/24 47/1 57/2 61/8 65/10 67/25 70/2
looked [3] 11/20 33/10 54/24
looking [7] 17/14 33/10 33/11 41/7 42/5 64/2 72/8
lose [1] 47/6
lost [1] 21/12
lot [7] 3/5 19/2 21/11 23/14 36/8 62/19 70/21
lotions [1] 64/13
LSD [1] 62/10

**M**

ma'am [1] 65/2
Macon [1] 5/17
made [11] 10/25 12/18 18/12 27/10 29/8 30/2 47/2 51/2 57/17 61/5 70/11
magazine [1] 60/14
magic [3] 24/19 25/3 29/23
magical [2] 45/9 45/9
main [1] 9/9
maintained [1] 4/10
make [20] 12/25 18/14 18/25 20/16 25/25 27/21 32/22 34/13 35/7 36/1 37/5 38/15 46/18 48/6 48/10 59/2 61/25 66/9 71/13 74/4
makes [2] 15/13 23/21
making [5] 28/3 30/16 47/11 62/20 62/22
malignant [1] 5/2
Mallinckrodt [1] 19/1
manipulated [1] 22/17
manner [1] 6/3

**M**

**manufacturers [1]** 42/10
**manufacturing [1]** 8/6
**many [4]** 7/20 38/12 65/9 66/14
**map [1]** 42/25
**mapping [1]** 4/19
**marginalized [1]** 66/11
**Martin [1]** 31/7
**MARYLAND [33]** 1/1 1/7 1/25 3/5 9/11
9/19 10/9 11/25 12/1 12/17 12/20 14/10
14/23 14/25 16/12 17/12 17/16 19/17
19/19 20/13 24/3 24/11 24/24 27/23
32/14 36/19 36/25 39/5 39/14 47/1
57/10 62/6 75/6
**Maryland's [1]** 10/1
**mass [1]** 42/7
**material [4]** 7/6 27/8 42/10 42/13
**materials [1]** 59/12
**matter [16]** 1/9 2/2 2/4 29/14 31/13
52/12 52/18 53/11 54/12 55/5 56/15
60/4 68/6 68/15 73/3 75/9
**matters [3]** 23/14 54/13 68/16
**may [21]** 1/7 2/23 9/20 14/8 18/14
19/24 20/11 21/16 21/17 22/3 28/4 29/7
29/18 30/8 32/12 37/10 64/16 69/6
71/25 71/25 75/12
**maybe [7]** 34/9 43/5 49/20 53/12 56/10
59/3 70/17
**me [50]** 9/8 11/20 12/11 16/8 18/2
21/12 24/10 25/10 25/15 25/19 25/23
25/25 27/4 27/13 27/22 31/20 32/9 38/2
38/10 41/15 41/25 42/21 43/8 43/24
46/12 48/1 49/1 50/18 52/14 52/22 53/6
54/1 56/12 57/1 58/20 58/22 59/6 60/8
63/4 66/19 66/21 68/5 68/7 68/11 70/3
72/2 72/9 72/9 73/16 74/3
**mean [18]** 11/2 17/2 17/25 20/24 26/9
26/10 40/18 48/24 48/25 57/7 57/15
60/16 61/22 62/18 69/23 70/7 70/21
71/7
**meaning [2]** 50/13 66/23
**means [2]** 44/24 55/6
**meat [1]** 33/13
**media [2]** 54/8 69/13
**medical [13]** 4/16 4/18 5/13 7/16 7/18
8/1 23/13 38/12 43/11 47/7 47/8 65/6
65/8
**medically [1]** 5/5
**meet [2]** 14/13 24/21
**members [1]** 71/9
**memory [1]** 26/19
**men [2]** 5/18 6/1
**mentioned [1]** 69/9
**merely [1]** 23/3
**Merit [1]** 75/4
**merits [1]** 49/6
**met [4]** 14/11 26/21 52/9 59/5

**Microbiological [1]** 26/15
**might [11]** 12/15 14/9 14/15 14/22 31/7
34/13 58/8 58/9 71/12 71/23 71/24
**millions [3]** 7/20 14/18 46/18
**mind [2]** 12/9 17/9
**minds [1]** 66/15
**mini [1]** 48/25
**minute [1]** 18/2 57/23
**minutes [1]** 72/10
**miracle [1]** 41/9
**miraculously [1]** 41/9
**misappropriated [1]** 67/24
**misappropriation [3]** 67/22 67/25 68/1
**misconception [1]** 20/12
**misconduct [1]** 45/19
**misrepresentation [1]** 11/25
**Mississippi [1]** 5/21
**misstatement [1]** 61/17
**mistake [2]** 18/13 18/14
**mistakenly [1]** 17/17
**misunderstood [1]** 27/20
**model [1]** 70/21
**moment [5]** 10/15 22/21 59/6 60/8
66/19
**moments [1]** 68/18
**money [13]** 15/7 15/11 17/17 17/21
18/13 19/22 19/23 31/11 35/21 38/14
51/3 69/2 70/11
**Monterey [5]** 11/4 14/21 15/5 15/13
19/16
**months [3]** 5/11 23/3 23/5
**moot [1]** 8/25
**moral [2]** 49/23 62/13
**more [14]** 28/11 29/2 34/14 41/12 42/1
48/12 55/12 63/14 64/2 64/3 67/12
69/17 71/15 72/2
**morning [8]** 2/8 2/10 2/12 2/14 2/17
2/21 10/5 10/6
**mortgage [1]** 18/9
**most [5]** 4/7 4/11 6/15 50/19 70/8
**mostly [1]** 25/22
**mother [7]** 4/24 22/25 23/4 23/6 23/7
39/10 39/22
**motion [14]** 2/25 4/2 8/25 9/2 12/23
15/25 16/6 26/23 47/13 48/18 53/14
60/9 60/21 69/22
**motions [3]** 1/10 2/5 2/25
**Motta [1]** 37/18
**move [2]** 32/4 70/1
**moved [1]** 8/21
**movie [9]** 7/24 26/11 35/14 37/17
52/15 52/20 60/19 61/7 61/12
**Mr. [36]** 8/23 10/3 16/20 16/20 16/23
21/4 21/9 23/16 24/8 24/9 29/2 29/22
30/21 32/9 32/25 33/3 34/25 43/4 46/9
46/10 48/1 48/6 48/6 49/13 50/6 53/8
57/23 60/9 61/3 61/5 66/19 66/21 69/19
72/3 72/14 73/23

**Mr. Crump [7]** 16/20 23/16 24/8 43/4
46/9 48/6 66/19
**Mr. George [11]** 10/3 21/4 29/2 33/3
34/25 46/10 48/1 61/5 66/21 72/3 72/14
**Mr. Lacks [1]** 8/23
**Mr. Seeger [16]** 16/20 16/23 24/9
29/22 30/21 32/9 32/25 48/6 49/13 50/6
53/8 57/23 60/9 61/3 69/19 73/23
**Mr. Seeger's [1]** 21/9
**Mrs. [19]** 5/3 5/10 6/4 7/8 7/20 7/25
8/11 8/17 20/2 20/14 21/5 23/18 24/5
27/8 33/17 37/25 43/12 48/7 71/3
**Mrs. Lacks [11]** 5/3 5/10 8/11 8/17
20/2 21/5 23/18 27/8 33/17 37/25 48/7
**Mrs. Lacks's [8]** 6/4 7/8 7/20 7/25
20/14 24/5 43/12 71/3
**Ms. [10]** 5/9 21/10 22/3 22/4 22/14
22/15 25/13 28/12 42/7 60/11
**Ms. Henrietta [2]** 22/3 22/4
**Ms. Lacks [5]** 5/9 22/14 22/15 25/13
28/12
**Ms. Lacks's [2]** 21/10 42/7
**Ms. Skloot [5]** 60/11
**much [13]** 13/1 15/7 15/11 16/22 30/25
37/12 45/11 61/2 65/2 65/7 70/10 70/17
74/5
**multiple [1]** 8/5
**Mushrooms [5]** 11/4 14/21 15/6 15/13
19/16
**must [5]** 9/12 9/22 19/15 20/6 24/11
**my [18]** 12/9 15/4 17/2 21/13 23/25
24/2 24/6 24/9 26/19 29/20 43/3 43/14
43/23 45/17 50/5 57/5 65/18 72/10

**N**

**NADIRA [2]** 1/17 2/18
**name [3]** 5/14 8/24 61/9
**named [2]** 4/23 7/14
**names [1]** 11/21
**nanosecond [1]** 61/12
**narrowly [1]** 64/2
**necessarily [5]** 9/15 13/12 17/3 17/25
36/21
**necessary [2]** 3/12 5/5
**need [14]** 15/9 25/6 39/16 40/21 46/10
52/18 58/11 63/10 63/16 67/3 73/6
73/11 73/13 73/20
**needed [2]** 16/7 20/5
**needs [9]** 9/19 11/9 28/13 40/20 41/17
49/16 54/21 60/1 63/12
**negligent [1]** 11/25
**never [8]** 8/15 12/18 19/9 22/5 39/1
48/8 70/16 70/17
**new [15]** 21/1 22/10 30/23 30/25 35/19
37/22 37/22 39/9 51/18 52/2 63/15
63/19 64/4 64/4 64/5
**news [1]** 7/24
**next [4]** 25/1 30/25 31/2 55/16

**N**

**nice** [1]  69/24
**Niro** [1]  37/17
**no** [44]  1/5 6/3 7/5 13/10 13/19 15/9
 16/21 17/19 17/19 17/20 18/2 19/4
 19/25 21/8 21/13 28/19 29/14 32/1
 34/22 36/6 36/16 36/19 38/2 38/3 42/21
 45/1 46/6 49/10 49/11 51/2 51/22 51/23
 51/25 52/1 52/5 54/6 54/15 56/21 57/22
 60/4 62/22 68/23 69/10 73/24
**nobody** [2]  59/19 59/21
**nonetheless** [1]  21/19
**nonfiction** [1]  7/24
**nonlawyers** [2]  4/2 32/12
**nontherapeutic** [1]  62/3
**norms** [2]  65/11 65/14
**NORTHERN** [1]  1/2
**not** [135]
**Notably** [1]  19/17
**noted** [1]  15/14
**notes** [1]  1/21
**nothing** [5]  29/22 47/6 49/7 61/5 61/5
**notice** [38]  16/15 29/10 30/1 30/10
 52/6 52/7 52/19 52/22 52/22 52/24 53/1
 53/5 54/6 54/14 54/20 54/21 55/5 55/6
 57/24 57/25 58/5 58/22 59/17 59/18
 60/3 60/3 60/16 60/25 61/1 68/22 69/8
 70/22 70/24 72/20 72/21 73/11 73/12
 73/18
**now** [26]  2/2 4/5 13/19 16/5 20/8 25/23
 26/6 26/12 26/19 28/18 33/11 35/16
 39/25 40/1 40/13 40/13 43/8 45/7 49/9
 55/3 56/13 71/15 72/4 72/6 72/8 74/8
**nowhere** [1]  53/9
**number** [6]  2/3 3/7 4/17 9/14 9/15
 35/11
**numerous** [1]  7/17

**O**

**O'Connor** [1]  62/11
**obligation** [2]  23/25 24/2
**obtained** [3]  20/4 26/6 26/16
**obviously** [2]  39/25 43/6
**occur** [2]  38/2 40/1
**occurred** [9]  13/9 17/6 21/5 38/6 52/13
 53/5 55/7 55/8 73/13
**occurs** [3]  53/15 68/23 73/12
**October** [3]  8/19 56/9 56/10
**October 18th** [1]  56/10
**October 21st** [1]  56/9
**October 4th** [1]  8/19
**off** [5]  18/10 36/19 46/18 57/5 70/11
**offensive** [1]  69/23
**offer** [1]  3/8
**offering** [1]  3/13
**offers** [1]  8/6
**offhand** [1]  24/20

**official** [4]  1/24 7/25 75/1 75/16
**often** [1]  65/21
**oh** [4]  18/19 28/25 55/21 65/13
**okay** [30]  3/17 3/20 10/5 10/14 11/17
 11/19 16/18 16/22 17/23 21/3 21/15
 24/23 29/1 30/21 31/17 33/8 34/8 34/20
 35/13 36/16 40/16 41/22 58/16 59/7
 60/8 63/17 63/18 64/8 68/13 73/22
**old** [2]  22/25 23/3
**once** [1]  4/20
**one** [43]  3/2 4/7 7/4 8/3 9/14 10/21
 13/2 13/10 14/15 15/7 16/24 18/14
 20/11 20/12 21/3 21/13 23/3 24/1 24/24
 26/15 29/20 32/19 37/2 38/2 38/4 42/5
 49/10 50/19 50/22 50/23 52/16 56/3
 57/23 58/11 58/25 59/6 60/8 64/11
 64/14 65/12 65/17 66/19 72/2
**one-count** [1]  3/2
**ones** [2]  15/4 20/12
**ongoing** [3]  8/20 42/2 45/25
**only** [22]  4/20 7/22 11/13 13/19 22/22
 23/4 31/7 33/12 36/1 42/23 46/11 46/15
 47/13 48/15 53/13 53/15 57/13 58/20
 58/21 59/13 65/12 72/4
**open** [2]  6/22 57/16
**open-ended** [1]  6/22
**opening** [2]  3/9 3/16
**operates** [1]  57/25
**operating** [1]  44/3
**opinion** [4]  14/18 19/1 19/17 62/11
**opportunity** [1]  3/8
**oppose** [1]  9/2
**opposite** [1]  19/3
**Opposition** [1]  9/1
**Oprah** [1]  52/15
**orally** [1]  51/7
**order** [7]  5/23 9/10 9/15 16/13 49/17
 49/18 52/8
**origin** [4]  4/20 4/22 7/22 8/10
**original** [1]  59/9
**other** [29]  3/18 6/17 8/6 10/10 10/14
 10/19 10/21 14/20 14/23 15/2 15/8
 15/10 16/5 19/12 20/12 23/5 23/8 23/19
 26/15 37/5 46/14 48/10 49/15 51/24
 56/18 61/16 64/6 66/20 72/21
**others** [2]  26/18 72/5
**our** [17]  10/2 13/16 18/17 23/19 25/21
 26/21 30/25 34/24 37/1 37/4 40/2 46/21
 48/18 50/4 59/13 62/8 65/19
**out** [15]  18/6 20/22 31/4 35/14 35/15
 36/4 40/4 43/6 48/14 61/5 61/15 61/16
 62/22 68/8 69/13
**outside** [2]  36/25 41/10
**over** [4]  37/20 40/7 71/13 72/10
**overage** [1]  15/8
**overarching** [1]  64/20
**overpayments** [1]  15/6
**own** [8]  10/9 15/1 22/15 27/7 40/18

42/8 67/4 68/10
**owner** [1]  31/15
**owns** [1]  71/19

**P**

**p.m** [2]  72/13 74/9
**page** [4]  24/13 61/8 66/22 75/9
**Page 11** [1]  61/8
**Page 6** [1]  66/22
**paid** [8]  15/7 15/11 15/12 18/10 28/4
 31/16 50/24 61/20
**paper** [2]  46/23 70/7
**papers** [4]  7/17 41/1 48/23 59/22
**Paragraph** [7]  26/25 27/4 27/5 33/15
 42/5 42/9 43/3
**Paragraph 10** [1]  42/9
**Paragraph 42** [2]  26/25 27/4
**Paragraph 43** [1]  43/3
**Paragraph 45** [1]  27/5
**Paragraph 48** [1]  33/15
**Paragraph 9** [1]  42/5
**paragraphs** [4]  25/22 33/12 33/14 42/4
**PARKER** [1]  1/15 2/12
**part** [10]  7/16 19/1 23/7 26/13 27/23
 28/1 28/3 38/8 39/21 53/21
**participating** [1]  48/15
**particular** [5]  12/11 16/19 29/3 33/11
 34/22
**particularly** [2]  23/21 48/4
**parties** [4]  27/22 56/1 68/9 68/14
**party** [6]  15/7 15/8 15/10 56/3 56/5
 68/3
**passed** [1]  7/11
**passing** [1]  18/25
**past** [5]  39/18 47/10 48/21 63/23 65/13
**patent** [2]  21/1 30/24
**patents** [1]  37/22
**patience** [1]  74/3
**patient** [2]  38/11 38/14
**patients** [5]  5/14 6/8 6/14 7/1 47/2
**pattern** [2]  44/2 63/15
**pause** [3]  16/19 22/21 64/11
**payment** [6]  32/24 33/19 33/22 34/1
 35/9 51/1
**pending** [3]  2/2 2/25 3/2
**people** [5]  22/19 23/8 23/15 47/9 47/11
**perfect** [2]  15/6 17/17
**perform** [1]  5/22
**perhaps** [1]  68/6
**period** [7]  16/9 16/17 29/13 54/9 56/2
 58/5 67/1
**permission** [7]  8/15 33/19 33/22 34/2
 39/10 42/8 66/3
**permitted** [1]  19/19
**perpetuity** [8]  21/21 39/9 44/21 44/22
 46/13 46/16 50/13 66/5
**person** [1]  7/14
**personal** [6]  1/3 3/3 8/18 24/4 39/15

**P**

personal... [1] 71/2
perspective [3] 34/24 44/24 65/21
persuaded [1] 17/3
Petrella [4] 37/7 37/15 40/5 43/21
petri [2] 41/10 42/20
pharmaceutical [11] 39/3 54/10 54/15
 66/1 69/16 70/16 70/18 70/20 71/19
 72/6 72/22
phone [1] 21/2
Phreesia [6] 37/6 37/12 45/19 45/24
 51/19 51/19
Phressia [4] 18/25 45/11 45/16 45/17
picked [1] 44/7
picky [1] 34/12
piece [1] 28/2
pieces [1] 20/23
pin [1] 51/14
pink [1] 38/2
pinpoint [1] 32/16
place [2] 38/17 49/6
plaintiff [36] 1/4 1/14 3/11 8/24 9/16
 11/8 12/3 13/1 13/2 18/10 18/13 18/23
 19/25 24/8 24/11 24/25 25/2 32/18
 32/20 33/9 34/6 37/8 38/5 48/13 51/4
 52/3 52/6 52/23 52/24 52/24 54/7 56/21
 66/25 68/23 69/1 71/2
Plaintiff's [5] 4/4 37/13 54/8 57/18
 60/25
Plaintiffs [2] 2/6 49/24
Plaintiffs's [1] 68/24
plan [3] 5/6 6/10 54/9
plead [4] 14/12 15/9 20/7 26/20
pleaded [5] 12/16 12/18 14/3 14/10
 21/8
pleading [2] 27/23 30/14
pleadings [1] 59/13
please [2] 2/6 2/15 17/11 25/25 31/5
 74/3
pled [5] 9/19 11/9 20/6 20/9 26/20
point [23] 13/16 13/19 16/2 20/11
 20/18 21/4 21/10 25/12 26/9 27/11 31/4
 36/1 37/11 38/15 43/4 54/1 55/6 55/20
 61/16 61/22 67/9 68/1 68/24
points [1] 61/5
policy [1] 48/13
polio [1] 4/18
poor [6] 5/19 5/24 47/9 49/25 49/25
 62/6
population [2] 4/9 7/5
portions [1] 6/14
posed [1] 35/18
position [8] 10/8 14/24 40/25 41/1
 50/8 54/12 68/13 73/22
positions [1] 71/6
possession [4] 31/13 39/22 48/10
 56/23

possible [3] 63/25 67/8 74/4
possibly [2] 53/5 63/23
potential [1] 54/14
potentially [1] 14/18
power [4] 22/6 46/4 65/19 66/13
powerful [1] 65/19
PowerPoint [1] 52/15
practice [12] 5/22 6/1 6/7 6/13 7/4
 15/15 48/16 57/16 59/14 59/16 68/4
 69/7
pre [2] 20/20 20/21
pre-cancerous [2] 20/20 20/21
precedes [1] 72/20
preceding [1] 39/19
precise [1] 28/11
predominantly [1] 10/18
preferably [1] 47/22
prepare [1] 3/16
prepared [1] 3/25
prescribed [1] 5/8
present [4] 1/18 2/19 22/22 64/23
pretense [1] 5/23
pretty [2] 12/23 57/17
prevent [3] 5/24 22/8 56/7
principle [2] 44/12 49/12
principles [1] 14/19 44/4 44/13
prior [4] 33/14 73/17 73/18 73/18
prison [1] 6/2
Private [1] 57/17
probably [3] 28/24 36/24 46/3
problem [6] 13/18 29/3 30/8 30/16
 55/25 57/8
problems [1] 30/5
procedure [3] 5/2 5/20 20/23
proceeding [1] 49/25
proceedings [1] 75/8
proceeds [1] 39/23
process [2] 6/23 70/17
proclaiming [1] 7/12
produce [2] 30/23 42/7
product [3] 8/5 30/25 43/7
production [1] 32/3
products [8] 30/3 42/11 42/12 43/18
 51/6 55/17 64/5 70/10
Professor [2] 64/23 64/24
professors [1] 17/15
profit [4] 21/20 22/12 42/8 47/11
progenitor [1] 4/12
progressed [1] 5/19
proof [1] 27/24
proper [1] 16/7
properties [1] 7/9
property [8] 15/19 22/13 22/14 22/17
 31/14 42/12 43/21 66/1
proposed [1] 6/25
protect [1] 57/12
Protection [5] 12/1 12/17 12/21 14/11
 45/22

proudly [1] 61/9
proved [1] 5/10
provide [8] 4/5 9/5 22/8 50/20 57/4
 60/6 73/15 73/20
provided [2] 52/14 59/12
public [2] 5/16 7/23
publication [2] 29/12 60/17
publicity [6] 30/4 30/6 30/10 30/18
 73/12 73/14
publicized [3] 4/22 26/11 29/12
publicly [1] 59/25
published [1] 65/5
pull [2] 61/13 66/22
pulling [1] 40/4
purchase [2] 26/2 73/13
purchased [8] 26/14 28/18 41/4 41/4
 50/11 53/8 71/22 73/11
purchaser [16] 9/18 9/22 24/7 24/12
 24/19 24/22 25/1 25/3 25/6 26/22 27/25
 28/4 31/23 32/8 59/11 73/6
purchases [1] 68/8
purpose [4] 2/5 16/3 38/12 64/20
purposes [6] 13/23 49/5 53/14 60/22
 60/24 63/12
pursuant [1] 75/6
purveyors [1] 59/15
put [8] 19/22 20/9 23/14 47/13 47/18
 49/6 61/9 66/21
putting [1] 45/14

**Q**

quality [1] 4/14
question [25] 9/14 9/15 9/24 10/8
 17/18 21/3 25/1 26/7 29/20 31/14 32/5
 35/18 35/22 36/4 43/14 45/14 48/13
 48/13 49/23 52/5 55/22 58/3 62/21 64/1
 68/11
questions [8] 3/7 57/19 61/25 66/20
 69/25 71/23 71/24 72/15
quick [1] 20/11
quite [1] 50/14
quote [6] 7/4 7/6 10/23 19/17 51/20
 51/21
quote/unquote [1] 10/23

**R**

race [1] 64/12
racism [5] 23/13 47/8 65/6 65/8 65/9
radioactive [1] 5/9
radium [2] 5/9 20/21
Raging [2] 37/17 37/17
raised [1] 52/2
ranking [1] 6/6
rare [1] 54/2
rarely [3] 53/15 53/25 58/21
rather [1] 68/9
reach [1] 62/22
read [13] 4/1 4/5 9/4 24/1 25/8 27/22

**R**

**read... [7]** 28/14 31/8 32/14 40/25 48/5 62/2 69/8
**reading [1]** 62/2
**real [3]** 22/13 23/14 47/3
**really [16]** 3/16 12/25 19/1 20/11 28/3 28/7 32/13 48/12 51/13 55/22 61/15 62/15 64/3 64/11 70/14 72/3
**realm [1]** 36/4
**Realtime [1]** 75/5
**reason [5]** 11/10 36/6 44/7 54/18 64/21
**reasonable [5]** 25/5 56/2 57/18 57/19 59/2
**reasons [5]** 7/7 24/1 48/20 56/20 62/19
**recall [1]** 24/20
**received [6]** 4/24 7/21 8/15 18/13 33/16 33/17
**receiving [1]** 5/11
**recent [1]** 11/5
**recently [2]** 7/22 44/6
**recess [1]** 72/12
**recipient [2]** 17/18 17/20
**recognition [1]** 7/25
**recognize [2]** 33/13 72/16
**recognized [1]** 47/5
**record [6]** 2/7 2/16 3/14 4/1 32/10 54/3
**records [1]** 71/13
**recover [1]** 39/18
**recovery [1]** 48/8
**redrafting [1]** 34/13
**reference [2]** 18/25 33/14
**referenced [2]** 58/7 60/11
**referring [2]** 10/12 10/19
**regards [1]** 65/9
**regenerated [1]** 39/18
**regeneration [1]** 42/3
**Registered [1]** 75/4
**regulations [1]** 75/10
**reinforce [1]** 31/22
**rejected [1]** 36/25
**relate [1]** 32/8
**relationship [2]** 26/17 33/23
**relevant [2]** 70/12 70/24
**reliability [1]** 59/19
**rely [1]** 19/12
**relying [4]** 10/17 30/17 47/10 72/11
**remains [1]** 17/5
**remarks [2]** 3/10 24/9
**remedy [3]** 39/21 45/5 48/2
**remember [2]** 46/20 46/21
**removed [2]** 4/11 22/4
**removing [1]** 6/13
**repair [1]** 6/18
**repeat [1]** 32/19
**repeatedly [1]** 6/23
**replicate [2]** 41/8 67/4
**replicated [2]** 41/10 48/9

**replicates [3]** 50/9 51/17 63/21
**replicating [2]** 40/14 64/4
**replication [3]** 41/13 51/8 51/13
**Reply [4]** 9/1 61/8 66/22 66/22
**reported [2]** 1/23 75/8
**reporter [7]** 1/24 18/18 18/21 75/1 74/4 75/5 75/16
**represent [1]** 72/6
**representative [6]** 1/3 3/3 8/18 24/4 39/15 71/3
**representatives [2]** 2/20 8/2
**represented [1]** 55/21
**reproduce [1]** 4/16
**reproduced [1]** 4/13
**reproducing [1]** 5/24
**reputation [1]** 6/18
**request [1]** 21/21
**require [1]** 20/14
**required [12]** 6/22 16/16 20/8 24/14 24/15 24/16 24/25 29/13 56/22 57/7 58/4 69/5
**requirement [4]** 27/23 27/24 28/15 59/12
**requires [4]** 25/10 53/1 64/19 66/12
**research [7]** 5/14 6/4 6/11 6/19 6/21 7/16 8/8
**researched [1]** 71/20
**researchers [5]** 4/17 4/21 38/12 38/13 51/24
**resold [1]** 38/12
**resource [1]** 7/16
**respect [4]** 13/17 19/4 32/7 65/23
**respectful [1]** 11/19 57/23
**Respectfully [1]** 13/14
**respond [2]** 21/16 61/4
**responding [2]** 58/3 67/8
**responses [1]** 3/19
**responsible [1]** 18/11
**restate [1]** 34/10
**restatement [4]** 17/16 26/4 26/4 38/10
**restitution [3]** 8/21 18/15 64/19
**Restitution's [1]** 18/22
**result [4]** 31/11 45/9 45/10 64/3
**results [1]** 8/20
**retain [3]** 32/23 35/8 64/21
**retained [1]** 35/21
**retaining [1]** 4/10
**retention [5]** 32/21 33/18 33/20 33/24 35/3
**retrospective [1]** 44/21
**return [2]** 17/20 19/23
**returned [1]** 38/14
**revenue [1]** 7/21
**reward [1]** 66/14
**Richard [1]** 6/9
**RICK [2]** 1/19 2/19
**ridiculous [1]** 64/3
**right [53]** 3/10 10/23 14/20 15/8 16/18

18/4 20/16 26/22 27/25 28/6 28/18 31/2 33/6 33/10 35/2 35/13 35/14 35/16 36/7 36/10 40/1 40/3 40/13 40/13 41/23 42/14 46/7 47/7 47/13 47/14 47/15 48/16 48/20 54/2 54/18 54/22 55/3 56/13 61/1 63/2 67/5 67/10 67/11 68/13 68/21 71/15 72/4 72/6 72/8 72/11 73/20 74/1 74/4
**rights [4]** 22/14 42/12 57/12 68/24
**rigid [1]** 48/4
**ripe [1]** 16/8
**rise [2]** 21/18 64/18
**RMR [2]** 1/23 75/16
**road [2]** 38/7 40/1
**robbed [1]** 23/6
**Robert [1]** 37/17
**rods [2]** 5/8 20/21
**RON [3]** 1/3 8/16 71/4
**Ronda [3]** 1/23 75/4 75/16
**room [3]** 21/12 32/12 38/3
**root [1]** 37/24
**routing [1]** 43/15
**rule [6]** 11/11 13/1 30/16 59/18 65/15 72/19
**ruled [1]** 37/8
**run [3]** 29/14 68/21 71/18
**running [2]** 37/19 40/12
**runs [1]** 11/6
**Russell [3]** 10/12 11/23 12/5

**S**

**said [23]** 12/14 14/7 28/17 29/2 29/15 31/9 37/19 40/12 44/14 44/14 46/12 47/1 47/17 49/13 49/22 51/2 51/19 56/20 59/8 59/21 63/14 65/18 66/23
**sake [1]** 41/7
**sale [3]** 43/17 51/6 51/12
**sales [3]** 38/6 39/18 41/12
**same [6]** 12/4 16/3 24/13 35/22 40/9 56/6
**samples [7]** 4/11 5/4 5/6 6/7 6/23 7/1 7/2
**sanction [1]** 22/18
**satisfactory [1]** 35/17
**satisfied [1]** 62/23
**satisfy [4]** 54/1 62/13 63/11 71/12
**save [1]** 37/2
**saw [2]** 48/23 70/7
**say [41]** 11/2 13/25 14/22 15/5 15/18 21/18 22/21 23/8 23/11 24/19 26/8 26/8 27/5 28/16 30/9 33/20 36/1 36/13 38/3 38/4 39/19 43/25 46/2 46/12 46/15 49/14 53/8 54/19 55/14 55/15 55/21 56/8 56/10 58/4 59/20 60/4 64/11 66/3 66/14 68/15 70/14
**saying [13]** 14/6 15/11 23/9 37/10 38/21 38/25 39/5 45/8 45/14 50/25 57/10 59/2 61/19

## S

**says [11]** 10/16 14/5 26/4 30/6 30/18 33/15 42/5 53/13 60/18 62/11 69/3
**scenario [2]** 56/7 73/1
**scheme [1]** 40/11
**school [1]** 46/22
**science [1]** 8/1
**scientific [30]** 1/5 1/19 1/19 2/4 3/1 4/18 7/7 7/17 8/3 8/8 9/17 9/22 22/11 25/12 27/1 27/7 33/15 35/4 39/2 42/9 42/21 43/10 47/2 52/11 53/7 55/23 61/6 63/20 68/8 72/22
**Scientific's [2]** 8/19 27/5
**scientists [1]** 7/15
**score [1]** 59/22
**screen [2]** 61/11 61/14
**screenshot [1]** 52/14
**seat [3]** 2/23 3/22 29/1
**second [1]** 51/5
**seconds [2]** 36/5 62/1
**secret [2]** 67/23 67/24
**secrets [1]** 37/14
**Section [1]** 26/4
**Section 51 [1]** 26/4
**see [11]** 21/4 26/19 45/15 49/8 52/11 55/10 57/15 61/13 66/20 72/8 72/9
**SEEGER [19]** 1/14 2/9 3/14 16/20 16/23 24/9 29/22 30/21 32/9 32/25 48/6 49/13 50/6 53/8 57/23 60/9 61/3 69/19 73/23
**Seeger's [1]** 21/9
**seeking [2]** 22/13 39/20
**seeks [2]** 8/21 42/11
**seem [2]** 9/18 9/21
**seems [7]** 13/10 27/13 30/13 34/21 43/17 50/8 72/3
**seen [2]** 19/9 23/19
**segregated [2]** 6/9 7/2
**self [1]** 47/7
**self-determination [1]** 47/7
**sell [4]** 30/3 42/7 42/16 43/11
**selling [4]** 7/23 30/7 30/19 70/10
**sells [4]** 8/4 22/11 42/9 43/5
**sense [2]** 13/1 15/13
**separate [16]** 35/24 36/18 36/20 36/22 37/1 37/14 39/7 42/18 45/13 51/20 58/24 63/5 63/11 63/7 67/15 67/16
**separated [1]** 47/3
**serve [1]** 64/20
**Service [1]** 5/16
**services [3]** 8/6 8/7 50/23
**set [3]** 3/24 23/19 44/19
**sets [1]** 45/5
**setting [2]** 56/17 58/23
**settle [2]** 45/4 73/21
**settled [2]** 49/17 61/20
**Settlements [1]** 32/16

**several [2]** 25/8 42/4
**share [1]** 66/15
**sharing [1]** 4/9
**she [10]** 5/5 5/7 7/11 20/16 20/22 22/10 22/13 23/4 62/11 65/3
**shortly [1]** 4/11
**shot [1]** 71/10
**should [17]** 15/12 21/21 21/23 39/7 44/15 46/16 47/12 47/20 48/3 57/2 59/2 59/18 65/13 70/1 70/1 70/2 70/6
**shouldn't [1]** 20/25
**show [9]** 26/13 27/24 37/10 58/22 59/13 59/22 73/10 73/13 73/16
**showed [1]** 61/21
**side [4]** 47/13 47/14 47/15 57/6
**sides [3]** 9/18 9/21 24/10
**Silver [1]** 40/5
**similar [4]** 6/17 39/3 55/17 62/16
**similarly [1]** 68/1
**simply [4]** 21/18 45/14 48/18 64/18
**since [2]** 45/16 65/10
**single [2]** 48/14 50/1
**singled [1]** 48/14
**sir [1]** 65/1
**sister [1]** 22/23
**sisters [1]** 23/2
**sit [1]** 62/23
**sitting [4]** 28/18 40/13 42/19 72/5
**situ [3]** 6/15 6/16 20/19
**situation [9]** 14/16 15/17 44/10 53/4 55/24 57/5 57/14 62/16 67/23
**six [1]** 72/17
**Skloot [1]** 60/11
**slide [3]** 52/15 61/9 61/14
**slow [2]** 18/17 18/20
**so [92]**
**society [1]** 66/8
**sold [1]** 43/18
**soldiers [2]** 6/1 62/10
**sole [1]** 19/19
**solely [1]** 43/12
**solo [2]** 14/25 56/18
**solvable [1]** 13/18
**some [22]** 3/18 9/20 15/11 15/12 16/25 18/5 25/12 26/9 32/6 33/6 44/11 45/9 57/14 61/24 68/1 68/24 70/1 70/5 71/21 71/22 71/23 71/24
**somebody [2]** 38/10 62/25
**someone [2]** 11/8 15/20
**someone's [1]** 17/18
**something [7]** 3/12 23/12 26/2 51/3 65/14 67/22 67/23
**Sonny [1]** 23/5
**soon [1]** 16/12 16/14 74/2
**sorry [11]** 10/23 17/22 18/19 21/10 28/8 34/12 40/4 41/24 57/21 58/17 65/2
**sort [2]** 57/14 70/4
**sought [2]** 8/15 65/24

**sound [1]** 70/15
**source [1]** 27/3
**Southern [1]** 64/24
**speak [4]** 16/25 18/19 37/5 65/18
**speaking [1]** 3/11
**Special [3]** 14/24 19/18 65/6
**specific [6]** 14/10 38/16 50/1 53/1 54/21 55/8
**specifically [2]** 20/9 52/25
**spend [2]** 19/2 62/1
**spent [1]** 64/6
**St [1]** 31/6
**stage [5]** 3/24 4/2 20/19 49/5 54/3
**staking [2]** 22/14 42/12
**stand [6]** 10/9 10/16 11/2 11/3 17/13 25/15
**standalone [3]** 9/12 10/25 15/16
**standard [6]** 10/19 10/24 12/23 15/15 15/15 24/21
**standards [1]** 20/20
**standing [2]** 35/16 36/14
**stands [4]** 19/10 29/4 47/6 74/8
**Stanley [1]** 62/10
**start [6]** 10/7 18/8 24/8 32/9 33/8 58/1
**started [3]** 37/19 40/7 54/16
**starting [1]** 71/3
**starts [2]** 40/12 62/14
**state [9]** 12/20 14/25 16/12 20/13 24/20 32/10 33/24 57/10 59/11
**stated [2]** 24/5 24/9
**statement [2]** 3/9 3/16
**states [7]** 1/1 5/16 5/25 8/1 19/17 75/5 75/11
**statued [1]** 45/21
**statute [17]** 10/1 13/4 13/16 16/15 29/14 39/1 39/4 44/12 53/14 53/22 53/24 54/4 56/4 57/6 57/25 63/4 72/15
**statutes [3]** 13/15 16/4 48/19
**stenographically [1]** 75/8
**stenographically-reported [1]** 75/8
**stenotype [1]** 1/21
**sterilization [1]** 5/20
**still [8]** 10/25 44/12 45/25 45/25 46/1 56/5 67/12 69/17
**stole [2]** 19/22 20/23
**stolen [1]** 27/8
**stop [3]** 62/18 62/19 63/2
**stranger [1]** 6/3
**strategically [2]** 29/18 68/6
**street [2]** 1/24 40/19
**stretch [1]** 63/16
**stretching [1]** 26/19
**strong [1]** 21/12
**struck [1]** 46/12
**struggling [3]** 62/15 62/16 68/20
**study [1]** 5/18
**stuff [1]** 70/8
**subject [1]** 5/20

**S**

**subject's** [1]  47/3
**subjects** [1]  47/5
**submission** [1]  21/5
**submit** [1]  47/22
**submitted** [1]  64/24
**subsequent** [1]  67/15
**subsidiary** [3]  30/11 54/25 73/17
**substantial** [1]  6/14
**substantive** [1]  47/4
**substantively** [1]  46/9
**succumbed** [1]  23/1
**such** [3]  6/24 15/3 35/7
**sue** [7]  29/13 39/13 39/14 39/17 55/20 58/11 62/25
**sueable** [1]  58/8
**sued** [4]  48/14 50/1 70/15 72/4
**sufficiency** [1]  54/3
**sufficient** [1]  29/24
**suing** [3]  49/15 57/11 72/5
**suit** [1]  8/17
**summarize** [2]  4/5 25/23
**summarized** [1]  7/4
**summary** [1]  3/25
**Sunday** [1]  72/18
**sunscreens** [1]  64/12
**supervision** [1]  7/1
**supply** [1]  6/22
**support** [6]  8/8 10/10 14/24 25/24 35/10 57/2
**supported** [1]  40/2
**supporting** [1]  36/18
**Supreme** [2]  37/7 37/16
**sure** [15]  5/7 9/9 10/17 11/15 25/25 27/21 31/20 34/13 40/25 54/5 59/4 60/23 61/25 70/11 74/4
**surgery** [1]  20/15
**surrounded** [1]  22/23
**survive** [3]  6/19 7/3 7/9
**survived** [3]  4/12 15/1 15/1
**survivers** [1]  46/25
**suspect** [1]  10/1
**swallow** [1]  11/12
**syphilis** [2]  5/18 62/9
**system** [2]  45/21 65/19
**systemic** [1]  5/20
**Systems** [1]  19/16

**T**

**take** [17]  3/9 10/2 23/22 29/20 36/4 39/21 52/19 52/21 52/22 54/2 58/22 59/17 59/18 60/16 70/18 71/9 74/1
**taken** [6]  9/4 10/24 25/12 28/12 68/23 72/12
**takes** [5]  15/16 51/13 62/14 62/14 62/15
**taking** [1]  34/10

**talk** [9]  3/5 10/15 12/11 41/12 62/9 64/22 65/10 71/1 71/8
**talked** [3]  31/18 32/7 40/5
**talking** [9]  13/16 29/16 44/20 45/16 64/6 64/10 68/18 69/15 71/25
**talks** [4]  38/11 43/4 43/6 50/17
**team** [1]  29/19
**technicality** [1]  53/12
**tee** [1]  9/8
**television** [2]  7/12 61/11
**TeLinde** [3]  6/9 6/12 6/25
**tell** [9]  17/2 28/17 37/11 38/6 41/25 43/24 50/18 68/5 68/7
**telling** [3]  18/16 43/22 56/12
**tells** [2]  60/4 60/19
**Temescal** [3]  11/22 12/5 19/12
**terms** [2]  41/21 68/18
**territory** [1]  72/16
**test** [4]  6/23 42/20 64/12 64/13
**tested** [2]  5/25 43/3
**testing** [1]  62/5
**TFS** [2]  20/2 37/21
**THACKRAY** [2]  1/19 2/19
**than** [11]  10/10 10/14 13/2 14/20 42/1 48/13 54/6 55/12 68/9 69/17 71/14
**thank** [16]  2/22 2/23 3/23 16/22 16/23 18/21 21/3 21/15 23/16 61/2 65/1 65/2 66/19 73/24 74/5 74/6
**that** [474]
**that's** [57]  3/12 3/20 9/13 9/14 10/24 11/9 12/9 12/9 13/19 14/3 14/8 14/10 14/17 15/6 17/23 19/10 20/4 20/10 20/10 21/12 24/1 24/5 25/9 25/13 27/18 30/10 34/18 35/4 35/5 36/10 36/13 38/2 38/8 40/2 42/14 46/25 47/4 48/12 49/3 53/2 53/9 53/9 53/10 56/6 56/17 58/6 59/10 61/24 62/13 62/15 62/22 67/10 69/21 69/21 69/25 70/19 73/5
**their** [34]  16/16 20/4 23/4 23/6 23/7 27/10 29/19 32/2 35/21 36/3 39/10 39/10 39/22 40/18 45/7 47/18 49/17 49/18 50/7 51/1 55/5 56/17 57/12 59/19 59/19 61/8 62/23 63/21 67/4 68/10 69/13 69/14 71/7 73/5
**them** [39]  4/5 7/9 8/4 9/10 9/16 14/13 16/13 21/1 23/12 23/23 24/1 25/17 25/18 26/10 29/7 29/20 39/3 40/4 40/23 43/10 43/11 44/23 46/7 46/23 48/20 50/12 56/1 62/17 62/21 62/24 62/25 67/4 68/9 68/14 70/11 71/8 71/13 72/4 73/11
**themselves** [1]  59/15
**then** [27]  3/22 9/24 11/11 15/18 15/20 16/15 20/22 27/20 27/24 29/12 31/3 33/20 33/24 35/2 38/12 43/6 46/10 49/1 49/7 50/5 53/23 58/7 58/10 61/20 65/24 71/4 71/4
**theories** [1]  62/6

**theory** [3]  16/10 44/24 50/2
**there** [59]  3/2 3/18 9/12 11/25 13/21 13/24 14/3 15/3 15/17 16/6 16/18 19/4 19/14 20/10 20/14 21/7 21/11 21/23 24/13 24/24 29/2 29/7 29/23 30/15 31/10 33/13 34/21 36/18 37/9 37/10 38/18 39/1 39/4 40/11 40/20 44/11 44/13 44/24 45/20 47/20 48/25 49/11 51/22 52/2 52/5 52/19 54/23 57/14 60/1 61/5 61/5 64/13 64/21 65/2 68/2 70/21 71/5 72/5 73/20
**there's** [24]  11/10 13/19 15/9 28/19 28/21 29/3 32/1 36/6 36/8 36/19 37/23 38/9 44/8 51/17 51/23 51/25 52/1 55/15 55/15 58/24 59/24 69/10 70/7 71/21
**THERMO** [66]  1/5 1/19 1/19 2/3 3/1 8/5 8/9 8/15 8/19 8/21 9/17 9/21 21/19 22/11 22/12 25/5 25/11 26/13 27/1 27/5 27/6 29/25 30/1 30/2 30/9 30/11 33/15 35/4 36/6 38/5 39/2 41/3 42/6 42/9 42/22 43/4 43/9 45/1 45/6 47/10 49/5 49/7 51/22 52/11 52/16 52/25 53/7 54/21 54/25 55/9 55/23 59/14 59/23 61/6 61/9 63/20 65/11 66/1 66/25 67/12 68/7 70/19 72/22 73/4 73/16 73/16
**these** [17]  11/3 23/11 23/14 23/22 23/22 30/23 32/3 41/8 42/12 43/11 49/8 61/6 61/22 61/24 64/9 64/11 71/21
**they** [163]
**they'd** [1]  56/16
**they're** [25]  28/4 30/17 38/19 39/14 40/17 40/17 40/18 40/21 40/23 45/3 45/9 47/8 51/9 51/16 54/13 55/5 55/10 62/3 62/4 62/5 62/22 62/23 70/10 71/6 73/6
**they've** [7]  42/23 42/25 43/1 61/23 70/11 71/17 71/18
**thing** [7]  36/7 46/7 46/15 53/22 61/16 63/3 72/2
**things** [7]  23/8 32/7 61/24 64/6 64/10
**think** [105]
**thinks** [1]  20/6
**third** [5]  11/4 35/2 40/10 68/9 68/14
**this** [168]
**Thomas** [3]  1/23 75/4 75/16
**thoroughly** [1]  43/9
**those** [28]  4/5 7/2 9/3 10/14 10/15 10/18 11/6 11/23 12/2 12/4 12/10 14/20 20/9 20/25 24/2 25/14 26/16 32/25 35/10 36/17 38/13 38/18 38/18 41/8 43/19 59/19 71/7 71/24
**though** [5]  10/18 12/6 18/13 23/25 48/14
**thought** [6]  23/9 29/19 43/20 48/24 49/13 49/14
**thousand** [1]  63/23
**thousands** [1]  7/24
**thread** [1]  11/5

**T**

**threatened [1]** 6/1
**three [19]** 9/2 9/9 10/1 11/5 12/13 14/7
32/17 35/11 39/5 39/8 39/8 39/18 39/19
50/21 55/12 56/2 56/23 57/7 58/8 69/17
**three-year [1]** 10/1
**through [15]** 5/20 7/23 11/6 16/25 17/9
18/5 30/4 33/23 34/2 46/20 62/8 62/14
62/15 63/9 68/14
**throughout [1]** 22/19
**throw [1]** 61/14
**tie [2]** 30/25 31/20
**ties [1]** 61/6
**time [51]** 5/13 6/2 6/15 7/11 12/9 13/11
13/12 14/14 15/22 16/3 16/5 17/7 18/10
19/2 26/1 27/3 28/9 28/11 28/16 29/11
29/25 30/9 30/23 37/3 37/13 37/18
37/21 38/20 38/23 39/9 42/17 45/12
48/20 49/15 51/17 52/1 56/2 56/17
57/24 58/6 58/12 58/23 60/5 61/7 63/20
66/23 69/13 69/14 71/6 71/18 73/25
**time-barred [11]** 12/9 13/11 13/12
14/14 15/22 16/5 17/7 37/3 56/17 58/23
60/5
**times [3]** 12/14 14/7 25/8
**timing [4]** 28/15 30/8 66/23 66/25
**tissue [12]** 5/4 5/6 6/4 6/7 6/11 7/1
8/11 34/11 41/7 41/7 42/7 43/12
**today [5]** 2/24 3/6 4/22 10/2 22/10
**today's [1]** 20/20
**told [7]** 5/6 27/22 38/2 43/3 49/1 52/15
62/17
**tolling [1]** 40/7
**tomorrow [2]** 28/24 41/18
**TONYA [1]** 1/17
**too [7]** 9/25 14/22 15/7 15/11 32/6
70/17 70/24
**took [4]** 37/13 38/11 38/17 45/12
**tooth [1]** 20/15
**top [1]** 57/5
**tort [25]** 9/13 9/13 11/9 11/12 12/19
13/2 13/3 13/5 13/9 13/13 13/17
13/19 13/22 13/24 13/25 14/2 14/3 15/9
16/5 17/19 17/25 19/8 19/14 20/6
**tortious [10]** 11/1 12/15 12/19 14/9
15/5 17/6 21/6 23/10 23/13 46/19
**torts [2]** 11/24 12/4
**tough [3]** 16/22 51/14 62/18
**tough-to-pin-down [1]** 51/14
**tours [1]** 54/8
**toxic [1]** 40/8
**trade [2]** 67/23 67/24
**tragic [1]** 21/19
**training [1]** 5/15
**transaction [1]** 19/25
**transcript [2]** 75/8 75/9
**transcription [1]** 1/21

**transferee [1]** 19/25
**transferred [1]** 15/20
**treated [1]** 65/22
**treatment [6]** 4/25 5/8 5/9 5/11 5/18
22/18
**tremendously [1]** 44/23
**trial [2]** 48/25 49/7
**tricky [1]** 57/1
**tried [4]** 12/19 14/12 18/10 62/21
**tripped [1]** 24/17
**trouble [4]** 29/6 29/21 53/18 59/9
**troubling [1]** 12/15
**true [11]** 4/4 7/22 14/15 21/9 27/11
31/15 49/2 49/3 49/4 59/25 75/7
**truly [2]** 73/1 73/15
**trust [5]** 5/14 33/23 39/21 39/23 46/7
**trusted [1]** 72/10
**truth [7]** 52/12 52/18 52/23 53/10 55/5
56/14 65/18
**try [8]** 11/17 18/5 18/20 22/3 23/11
32/1 45/4 65/16
**trying [10]** 19/11 24/17 25/8 26/19
31/22 38/15 39/15 53/20 71/12 71/12
**tube [1]** 42/20
**tumor [1]** 5/2
**turn [7]** 16/19 24/6 24/7 46/10 57/22
60/9 71/13
**turned [1]** 22/25
**turns [1]** 32/13
**Tuskegee [2]** 5/17 62/9
**two [14]** 5/4 6/5 9/15 10/14 10/18
11/20 12/10 14/20 17/3 18/3 24/24
34/20 43/19 64/6
**Ty [1]** 2/17
**type [1]** 67/22
**typically [1]** 50/15

**U**

**U.S [2]** 19/18 62/10
**U.S.C [1]** 75/7
**ultimately [6]** 29/20 34/11 45/3 60/1
69/22 71/9
**unaware [1]** 8/11
**uncharted [2]** 67/18 72/16
**unclear [1]** 53/6
**uncommon [1]** 5/13
**unconscious [1]** 6/5
**under [20]** 5/3 5/23 6/25 9/11 9/19
12/16 12/20 14/10 16/10 16/15 24/3
24/11 24/24 32/22 35/7 50/2 58/9 59/18
70/2 74/1
**undergoing [1]** 20/23
**underlies [1]** 13/5
**underlying [14]** 9/13 13/13 13/17
13/19 13/22 13/24 13/25 14/2 19/4
19/14 23/17 26/5 28/20 32/3
**understand [24]** 7/8 9/20 16/2 21/11
21/13 24/23 27/21 28/15 29/17 29/18

39/16 40/20 43/9 44/3 44/19 49/23
49/24 53/18 55/14 57/20 61/1 61/22
69/6 69/18
**understands [1]** 27/7
**understood [4]** 32/4 33/17 46/4 46/8
**undisputed [1]** 50/8
**undoubtedly [1]** 3/5
**unexpectedly [1]** 41/9
**unique [3]** 7/9 23/23 44/20
**UNITED [6]** 1/1 5/16 5/25 8/1 75/5
75/11
**University [1]** 64/24
**unjust [62]** 3/4 3/5 8/20 9/11 9/25 10/8
10/16 10/24 11/7 11/11 12/2 13/5 13/6
13/11 14/25 15/16 15/19 15/20 15/23
16/3 17/5 17/13 17/24 18/24 19/5 19/6
19/6 19/9 19/14 19/20 22/7 31/12 32/6
32/10 32/17 33/1 33/12 36/20 36/23
37/2 37/5 37/11 43/15 44/25 48/1 48/11
49/9 50/3 50/5 50/16 51/1 56/19 56/24
58/9 62/25 63/20 64/21 64/22 65/4
65/15 66/13 67/16
**unjustly [1]** 33/15
**unlawful [2]** 34/3 37/14
**unless [1]** 72/2
**unlike [1]** 23/19
**unmarked [1]** 5/12
**unnoticed [1]** 65/7
**unprecedented [2]** 47/23 47/24
**unquote [1]** 10/23
**unsanctioned [2]** 8/13 22/12
**until [6]** 7/8 15/21 15/21 15/24 50/25
58/14
**untreated [1]** 5/19
**up [18]** 9/8 14/16 24/17 28/2 28/3
38/22 39/25 45/5 61/9 61/11 61/13
61/21 62/25 66/16 66/17 66/22 68/25
73/5
**upon [13]** 20/2 30/13 32/18 32/19 33/9
34/5 37/25 38/4 38/24 42/2 43/13 50/6
56/11
**us [5]** 27/9 39/7 44/5 47/13 60/19
**use [13]** 5/8 7/2 7/19 7/21 8/7 8/13
8/16 8/19 25/2 25/4 30/13 55/12 66/12
**used [6]** 4/8 4/17 8/11 64/12 64/13
64/14
**using [2]** 60/20 69/11
**uterus [1]** 6/13
**utilizes [1]** 22/12

**V**

**vaccine [2]** 4/19 43/2
**vaccines [3]** 43/2 43/3 64/10
**vagina [1]** 6/14
**validate [1]** 6/18
**value [14]** 9/18 9/22 24/7 24/12 27/25
28/1 28/2 28/6 32/24 35/9 42/19 42/23
59/11 73/6

**V**

**various [1]** 54/10
**versus [1]** 15/5
**very [27]** 2/24 12/9 16/22 18/16 20/16 22/15 30/13 30/25 37/12 43/9 43/19 43/19 45/11 47/17 48/3 58/19 58/20 61/2 62/16 65/2 65/17 66/15 69/12 70/5 71/25 74/3 74/5
**vial [1]** 7/12
**victim [1]** 65/13
**victimized [2]** 36/2 36/3
**victims [2]** 35/20 44/17
**video [2]** 61/10 61/13
**view [2]** 37/1 43/23
**violated [1]** 14/9
**violation [4]** 40/7 45/22 58/25 63/6
**vitro [1]** 4/19
**Volume [1]** 65/5
**voluntary [1]** 62/12
**vs [1]** 1/5

**W**

**wage [1]** 40/6
**wait [2]** 49/10 69/1
**waited [1]** 69/17
**waiting [1]** 41/23
**walking [1]** 40/19
**want [25]** 11/18 21/11 24/17 25/25 26/1 26/2 27/21 32/18 34/12 36/4 42/15 43/25 48/2 53/20 53/24 57/22 61/14 61/25 68/7 70/9 71/6 71/6 71/7 71/8 74/4
**wanted [3]** 6/19 41/25 46/11
**wants [3]** 15/8 55/17 55/17
**War [1]** 5/25
**ward [1]** 7/2
**wards [1]** 6/9
**warned [1]** 5/7
**was [119]**
**Washington [9]** 10/11 11/20 11/21 11/24 12/13 14/4 14/5 14/6 14/6
**wasn't [8]** 12/19 18/9 19/1 20/2 22/13 35/13 41/3 51/2
**waste [1]** 26/1
**watcher [1]** 52/15
**way [24]** 3/20 3/20 8/12 14/15 15/11 16/4 19/12 25/13 26/15 28/12 29/9 40/2 41/16 47/23 49/25 49/3 50/3 50/15 50/19 65/8 69/23 70/15 70/19 73/2
**ways [5]** 65/8 66/16 66/17 70/21 72/17
**we [126]**
**we'll [3]** 9/9 9/16 72/8
**we're [32]** 4/3 13/15 21/8 24/13 26/13 35/5 39/5 42/18 44/17 44/20 45/2 45/4 45/5 45/16 47/16 48/18 49/4 49/13 52/21 54/18 57/11 57/20 57/24 64/2 64/3 64/9 65/10 71/13 71/25 72/4 72/16

**72/17**

**we've [14]** 20/6 23/19 27/10 31/18 32/7 35/6 39/6 50/21 59/22 62/17 64/6 70/17 71/14 72/4
**weaving [1]** 3/19
**website [5]** 8/9 8/12 20/4 27/8 32/2
**week [2]** 55/16 68/15
**weird [1]** 53/4
**well [24]** 12/15 14/8 14/9 15/24 16/1 26/8 27/14 29/6 33/4 34/15 36/8 37/21 45/1 45/1 45/16 46/12 46/15 48/23 50/19 51/5 52/7 53/18 54/19 73/10
**Wellness [1]** 19/13
**went [6]** 35/19 37/13 45/12 54/7 61/10 65/7
**were [49]** 5/19 6/3 6/21 7/15 8/11 9/4 12/12 15/24 16/16 20/4 23/2 23/6 24/21 25/12 26/16 27/24 28/10 28/13 29/10 29/12 34/13 37/16 39/17 41/6 41/7 44/17 45/20 45/25 48/15 49/8 50/10 57/7 58/3 59/15 59/15 59/23 60/20 65/6 68/18 68/18 69/5 69/7 69/10 69/11 69/13 69/15 72/5 72/21 73/10
**Wesley [1]** 6/9
**what [74]** 3/25 9/8 10/14 10/15 11/2 11/3 14/5 14/17 14/22 14/22 15/14 15/17 19/10 20/17 21/5 23/18 25/2 25/9 25/24 26/8 28/18 29/14 31/21 32/10 32/13 36/8 36/11 36/13 36/16 37/10 40/23 42/16 43/9 44/17 46/21 46/25 48/15 48/18 48/24 49/1 49/14 49/20 50/6 51/16 53/19 54/13 54/16 54/25 56/6 57/2 58/3 58/19 59/20 60/4 60/20 61/10 63/12 64/3 65/21 65/23 68/3 68/16 68/17 68/24 69/2 69/22 70/4 70/14 70/21 70/22 71/25 72/21 72/22 72/23
**what's [4]** 23/18 27/14 38/16 59/21
**whatever [2]** 45/5 66/12
**when [48]** 5/19 10/24 11/2 11/20 16/8 16/8 22/25 26/7 26/12 27/1 33/10 38/1 38/4 38/6 38/17 41/3 41/3 42/1 46/12 46/21 46/24 47/7 49/13 50/11 51/2 51/3 52/4 52/8 52/13 53/6 53/8 53/17 53/22 54/12 55/22 56/1 58/15 58/21 58/25 60/18 60/20 65/18 67/3 67/23 67/24 69/3 70/23 71/22
**where [48]** 4/3 4/21 5/21 11/6 13/1 13/2 14/18 14/25 15/4 15/7 15/17 15/19 17/17 18/9 19/9 19/21 20/3 20/7 24/6 25/19 26/24 26/25 29/19 35/5 35/19 37/8 37/9 37/12 38/10 39/16 39/21 39/23 40/6 40/10 41/25 44/16 49/23 50/23 51/20 57/14 58/5 61/9 62/5 62/11 62/13 65/6 67/23 72/19
**whereas [1]** 56/4
**Whereupon [1]** 72/12
**whether [23]** 9/10 9/12 9/16 9/24 9/25

**17/7 24/3 24/24 28/9 28/11 29/23 32/5 48/16 52/23 54/5 56/18 58/24 59/25 60/1 66/13 68/7 70/6 73/3**
**which [37]** 4/3 10/8 11/4 11/10 12/24 14/1 17/16 18/9 19/13 20/22 21/23 24/4 25/4 29/12 32/5 33/11 33/13 33/18 33/21 34/11 36/24 37/25 38/10 44/22 45/20 45/21 49/7 53/4 53/13 53/15 57/6 58/6 58/20 62/11 70/12 72/20 72/25
**while [7]** 4/11 5/2 10/25 20/22 27/6 45/25 73/11
**white [2]** 5/3 66/2
**who [21]** 2/20 3/11 4/24 6/1 10/3 17/15 18/13 22/24 31/9 36/11 38/11 39/13 48/10 58/8 58/9 64/24 69/13 69/14 70/20 72/6 72/6
**who's [2]** 57/11 64/23
**Whoever [1]** 58/10
**whom [1]** 19/25
**why [17]** 3/22 3/24 24/1 27/18 29/4 35/13 36/7 37/7 44/14 45/13 48/11 50/9 50/12 59/10 67/15 69/25 73/5
**widely [3]** 4/8 4/22 26/10
**widely-used [1]** 4/8
**widespread [10]** 6/12 8/13 30/4 30/6 30/10 30/18 59/14 68/4 73/12 73/14
**wife [1]** 19/22
**wife's [1]** 19/22
**will [20]** 2/6 2/15 3/5 3/11 3/15 4/5 10/2 10/3 13/6 38/4 38/10 48/8 48/9 50/9 61/19 63/11 63/13 66/14 72/9 73/19
**Winfrey's [1]** 52/15
**winning [1]** 16/24
**within [6]** 16/9 16/16 29/13 56/2 56/23 57/7
**without [17]** 6/7 11/10 19/5 19/6 21/1 27/13 32/23 33/19 33/22 34/1 35/9 39/10 40/23 42/8 47/25 52/1 64/9
**witness [1]** 48/21
**Witnesses [1]** 48/20
**woman [1]** 4/23
**women [2]** 5/19 5/24
**won't [2]** 13/7 38/3
**wonder [1]** 65/21
**words [5]** 24/19 25/3 25/4 29/23 46/23
**work [2]** 29/9 71/7
**working [2]** 5/17 44/4
**works [3]** 50/3 67/2 73/2
**world [9]** 4/8 5/25 7/15 8/4 8/5 23/15 42/6 49/16 51/24
**worldwide [2]** 48/16 65/12
**worth [1]** 62/2
**worthy [1]** 65/23
**would [60]** 3/7 3/8 5/21 5/22 6/18 7/7 11/11 11/11 11/13 12/8 13/11 14/13 14/14 15/24 16/6 16/7 16/11 16/25 18/24 25/24 29/20 30/15 34/9 34/10 36/24 39/1 39/4 39/16 40/9 48/25 50/14

**W**

**would... [29]**  52/18 55/21 56/7 57/3
57/9 57/12 57/13 58/11 60/7 61/12 62/1
65/22 65/23 65/24 66/2 66/5 66/25
67/22 68/19 68/21 70/4 71/2 71/5 71/8
71/8 71/21 73/11 73/11 73/13
**wouldn't [2]**  12/25 67/15
**Wow [1]**  64/11
**written [4]**  26/11 26/12 62/11 74/2
**wrong [3]**  35/24 41/15 48/16
**wrongdoer [2]**  26/3 31/10
**wrongdoers [1]**  64/21
**wrongdoing [2]**  19/23 23/10
**wronged [2]**  11/8 15/10
**wrongful [4]**  19/6 26/6 28/20 32/2
**wrote [2]**  61/19 65/3

**Y**

**yeah [5]**  15/21 17/2 40/15 42/25 71/8
**year [3]**  10/1 46/22 54/17
**years [23]**  15/22 22/25 23/3 35/14 38/6
39/5 39/8 39/12 39/18 39/19 44/15
48/22 54/15 55/12 55/22 56/2 56/23
57/8 58/8 65/3 69/17 70/15 71/14
**yes [20]**  2/17 10/4 16/6 16/17 17/21
31/5 33/5 34/7 34/16 34/16 34/19 35/12
38/17 40/23 42/22 64/2 64/17 67/8
68/17 70/25
**yet [4]**  23/10 45/7 52/11 55/16
**York [2]**  35/19 63/15
**you [187]**
**you'd [3]**  46/2 55/25 70/9
**you're [19]**  3/12 11/6 12/6 12/8 14/18
15/10 15/11 17/14 33/21 43/17 49/1
53/4 58/19 59/2 62/16 67/9 69/22 69/25
72/21
**you've [9]**  15/22 15/23 17/24 26/25
49/1 52/14 58/18 59/4 62/17
**youngest [1]**  23/2
**your [132]**
**yourselves [2]**  2/7 2/16

**Z**

**zero [2]**  10/9 20/19