Ron L. Lacks, Personal Representative of
the Estate of Henrietta Lacks,

                Plaintiff,

    v.

Thermo Fisher Scientific Inc.,

                Defendant.

Case No. 1:21-cv-02524

# MEMORANDUM IN SUPPORT OF THERMO FISHER'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................. 3

STANDARD OF LAW ........................................................................................................ 8

ARGUMENT ....................................................................................................................... 8

I.   Plaintiff fails to state a claim of unjust enrichment ...................................................... 8

    a.   Plaintiff fails to plead a benefit conferred by the Plaintiff upon Thermo Fisher ............... 9

        1.   Plaintiff has not pleaded conferral of a benefit ........................................................... 9

        2.   Proceeds are not unjust enrichment benefits ............................................................... 11

        3.   Plaintiff's alleged benefits are too remote to state a claim .......................................... 12

    b.   Plaintiff pleads no facts showing Thermo Fisher was not a bona fide purchaser. ............. 13

    c.   Plaintiff fails to plead an actionable underlying tort. ....................................................... 15

II.   Plaintiff's claim is still time-barred ............................................................................. 17

        1.   Plaintiff had notice of the commercial use of HeLa cells—including by Thermo Fisher—long before the limitations period .............................................. 17

        2.   Thermo Fisher was conferred any HeLa-related benefit before the limitations period ................................................................................................. 20

        3.   The separate accrual doctrine does not apply ............................................................. 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Anderson v. Kimberly-Clark Corp.,
570 F. App'x 927 .................................................................................................22

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ...............................................................................................8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...............................................................................................8

Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.,
435 F.3d 396 (3d Cir. 2006) .................................................................................19

Blake v. JP Morgan Chase Bank NA,
927 F.3d 701 (3d Cir. 2019) .................................................................................24

Brown v. Neuberger, Quinn, Gielen, Rubin, & Gibber, P.A.,
731 F. Supp. 2d 443 (D. Md. 2010) .....................................................................18

City of Almaty, Kazakhstan v. Ablyazov, 2018 WL 1583293 (S.D.N.Y. Mar. 27, 2018) ........11, 25

Colonial Penn Ins. Co. v. Coil,
887 F.2d 1236 (4th Cir. 1989) ...............................................................................5

Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.,
358 Md. 83 (2000) ..................................................................................................9

Dolan v. McQuaide,
215 Md. App. 24 (2013) .......................................................................................16

Douglass v. NTI–TSS, Inc.,
632 F. Supp. 2d 486 (D. Md. 2009) .....................................................................18

DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.,
2021 WL 3141672 (S.D.N.Y. July 26, 2021) ......................................................11

Forcier v. Microsoft Corp.,
123 F. Supp. 2d 520 (N.D. Cal. 2000) .................................................................19

Goldfarb v. Mayor & City Council of Baltimore,
791 F.3d 500 (4th Cir. 2015) .................................................................................8

Haley v. Corcoran,
659 F. Supp. 2d 714 (D. Md. 2009) ...............................................................10, 13

*Hamilton & Spiegel, Inc. v. Bd. of Ed. of Montgomery Cty.*,
233 Md. 196 (1963) ...........................................................................................................10

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
484 F. Supp. 2d 973 (D. Minn. 2007) ...............................................................................12

*In re Human Genome Sciences Inc. Sec. Litig.*,
933 F. Supp 2d 751 (D. Md. 2013) ...................................................................................18

*Jason v. Nat'l Loan Recoveries, LLC*,
227 Md. App. 516 (2016) ..................................................................................................17

*Johnson v. Silver Diner, Inc.*,
2019 WL 3717784 (D. Md. Aug. 7, 2019) .........................................................................24

*Julian v. Buonassissi*,
414 Md. 641 (2010) ...........................................................................................................14

*K.C. Co. v. Pella Corp.*,
2022 WL 3716537 (D. Md. Aug. 29, 2022) .......................................................................23

*Litz v. Maryland Department of the Environment*,
76 A.3d 1076 (Md. 2013) ..................................................................................................25

*Mehul's Inv. Corp. v. ABC Advisors, Inc.*,
130 F. Supp. 2d 700 (D. Md. 2001) ..................................................................................10

*Mirjafari v. Cohn*,
412 Md. 475 (2010) ...........................................................................................................14

*Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*,
2021 WL 1909592 (D. Md. May 12, 2021) ........................................................................16

*Negrete v. Citibank, N.A.*,
187 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ....................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ............................................................................................14

*Newcomb v. Babu*,
2020 WL 5106714 (D. Md. Aug. 30, 2020) .......................................................................17

*Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*,
909 F.3d 655 (4th Cir. 2018) ............................................................................................18

*Pa. Employees Benefit Trust Fund v. Astrazeneca Pharm. LP*,
2009 WL 2231686 (M.D. Fla. July 20, 2009) ....................................................................12

*Papasan v. Allain*,
478 U.S. 265 (1986)................................................................................14

*Perry v. Am. Tobacco Co.*,
324 F.3d 845 (6th Cir. 2003) ...................................................................12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)................................................................................24

*Phreesia, Inc. v. Certify Glob., Inc.*,
2022 WL 911207 (D. Md. Mar. 29, 2022)................................................24

*Plitt v. Greenberg*,
242 Md. 359 (1966) ...........................................................................10, 13

*Poole v. Poole*,
129 Md. 387 (1916) ................................................................................14

*Porter v. GreenPoint Mortg. Funding, Inc.*,
2011 WL 6837703 (D. Md. Dec. 28, 2011)..............................................18

*Russo v. Ascher*,
76 Md. App. 465 (1988) ..........................................................................17

*Schandler v. New York Life Ins. Co.*,
2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011)...........................................11

*Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*,
249 F. Supp. 2d 703 (2003) ....................................................................10

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....................................................................12

*Stone v. Trump*,
400 F. Supp. 3d 317 (D. Md. 2019)..........................................................15

*Tani v. Washington Post*,
2009 WL 8652384 (D. Md. June 18, 2009)...............................................19

*Temescal Wellness of Md. LLC v. Faces Human Capital, LLC*,
2021 WL 4521343 (D. Md. Oct. 4, 2021) .................................................16

*Texas Star Nut & Food Co. v. Truist Bank*,
2022 WL 4548638 (D. Md. Sept. 29, 2022) .............................................15

*United Black Firefighters of Norfolk v. Hirst*,
604 F.2d 844 (4th Cir. 1979) ...................................................................14

*United States v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) ...............................................................................21

*Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
    431 F. Supp. 3d 698 (D. Md. 2020)......................................................................16

*Whetstone v. Mayor & City Council of Baltimore City*,
    2019 WL 1200555 (D. Md. Mar. 13, 2019)............................................................8

*Wyne v. Medo Inds. Inc.*,
    2004 WL 3217860 (D. Md. Mar. 25, 2004)...........................................................19

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ................................................................................8

STATUTES

35 U.S.C. § 115...........................................................................................................22

35 U.S.C. § 282...........................................................................................................22

OTHER AUTHORITIES

Andrea K. McDaniels, *Henrietta Lacks' family wants compensation for her cells,* Baltimore Sun
    (Feb. 15, 2017), https://www.baltimoresun.com/health/bs-hs-henrietta-lacks-johns-hopkins-
    20170213-story.html .............................................................................................5

21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 (1977) ................5

Chu, J et al., *Gamma Secretase-Activating Protein Is a Substrate for Caspase-3: Implications for
    Alzheimer's Disease* Biological Psychiatry 720 (2014) .........................................22

De, S., *Discovery of 2-(5-nitrothiazol-2-ylthio)benzo[d]thiazoles as novel c-Jun N-terminal
    kinase inhibitors* Bioorganic & Medicinal Chem. 2712 (2009) .............................22

DeNeen L. Brown, Can the 'immortal cells' of Henrietta Lacks sue for their own rights?, Wash.
    Post (Jun. 25, 2018) ...............................................................................................5

Fed. R. Evid. 201 .........................................................................................................8

Federal Procurement Data System, Department of Veterans Affairs Purchase Order No.
    V596R80463 (June 26, 2008), https://www.fpds.gov (attached as Ex. 25)..............7

GSA Product Detail Sample Prep Tools for Mass Spectrometry, General Services
    Administration,
    https://www.gsaadvantage.gov/advantage/ws/catalog/product_detail?gsin=11000024312280
    (attached as Ex. 17)...........................................................................................7, 21

Howard W. Jones, et al., *After Office Hours* Obstetrics & Gynecology 945 (Dec. 1971 ...............4

https://www.atcc.org/products/ccl-2 (last visited January 2, 2023)................................................3

https://www.nih.gov/sites/default/files/institutes/foia/p-card-purchases-june-2018.xlsx (showing
    NIH purchasing "HeLa Protein Digest Standard" on June 15, 2018)........................................7

https://www.nih.gov/sites/default/files/institutes/foia/p-card-purchases-may-2018.xlsx...............7

Judith Randal, *The legacy of Henrietta Lacks: 30 years after her death from cancer, her calls
    live on*, The Daily News, Aug. 24, 1980......................................................................................3

JustAdamCurtis, *The Way of All Flesh,* YouTube (June. 20, 2016),
    https://www.youtube.com/watch?v=FgMUlVl-poE..................................................................4

Life Technologies Corp., Current Report, at (Form 8-K), (Nov. 21, 2008)
    https://www.sec.gov/Archives/edgar/data/1073431/000119312508244797/d8k.htm...............4

Marchegiani, S. et al., *Recurrent Mutations in the Basic Domain of* TWIST2 *Ablepharon
    Macrostomia and Barber-Say Syndromes*, 97 Am. J. Hum. Genet. 99 (2015) ......................22

Michael Rogers, *The Double-Edged Helix*, Rolling Stone, Mar. 25, 1976 (attached as Ex. 5).......4

Rebecca Skloot, *The Immortal Life of Henrietta Lacks* (Crown ed. 2010) (attached as Ex. 1)
    .......................................................................................................................................................3, 5

Restatement (First) of Restitution (1937) ................................................................................10, 13

Restatement (Third) of Restitution and Unjust Enrichment (2011).........................................11, 12

Rossato, L. et al., *Proteins Potentially Involved in Immune Evasion Strategies in* Sporothrix
    brasiliensis *Elucidated by Ultra-High-Resolution Mass Spectrometry*, 3 mSphere (2018) ....22

Standard Operating Procedure for Nano-Liquid Chromatography, Clinical Proteomic Tumor
    Analysis Consortium (January 4, 2017),
    https://assays.cancer.gov/assays/download_file?sop_files_id=595 (attached as Ex. 24)........23

Thermo Fisher Scientific in January, 2014,
    https://www.sec.gov/Archives/edgar/data/1073431/000119312514033495/d655804dex991.ht
    m (last accessed January 2, 2023) (attached as Ex. 7) .............................................................4

Thermo Fisher Scientific "Pierce Hela Protein Digest Standard" ............................................7, 21

Thermo Fisher Web Catalog,
    https://web.archive.org/web/20000118043250/http://www.invitrogen.com:80/catalog_project
    /catalog.html (attached as Ex. 19)............................................................................................7

Thermo Fisher Web Catalog,
    https://web.archive.org/web/20000118043250/http://www.invitrogen.com:80/catalog_project
    /catalog.html (Ex. 19) ............................................................................................................23

USASpending.gov Award Profile for Contract No. GS-07F-161BA,
   https://www.usaspending.gov/award/CONT_IDV_GS07F161BA_4732 (attached as Ex. 18)
   ........................................................................................................................................7, 21

**MEMORANDUM IN SUPPORT OF THERMO FISHER'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff's second amended complaint ("Complaint") asserts an invalid theory of unjust enrichment while fixing none of the deficiencies from the complaint Plaintiff filed more than a year ago. It should be dismissed without further leave to amend because it demonstrates that further attempts to plead a cognizable claim while avoiding the statute of limitations will be futile.

The Second Amended Complaint has two material changes. The first is a switch in the alleged unjust enrichment benefit. Plaintiff's previous complaints claimed Thermo Fisher was unjustly enriched by "the HeLa cell line" itself. But, after Thermo Fisher moved to dismiss on limitations grounds, Plaintiff shifted in responsive briefing and oral argument to a theory in which a new instance of unjust enrichment occurs every time Thermo Fisher sells a HeLa-related product or every time a HeLa cell in Thermo Fisher's possession divides. Plaintiff's theory was each such instance after the limitations deadline of October 4, 2018, would not be time-barred.

Plaintiff now goes all in on this theory. But it is not the law. Unjust enrichment proceeds are not in themselves actionable instances of unjust enrichment. Rather, unjust enrichment occurs at the time the *original benefit* is conferred by the plaintiff upon the defendant. So, if unjust enrichment ever occurred here, sales receipts and cultivated cells would be a *result* of that unjust enrichment, relevant only to potential damages. Thus, Plaintiff has not stated a claim for unjust enrichment.

Plaintiff's second material change is the insertion of statements that "[u]pon information and belief, Thermo Fisher Scientific is not a bona fide purchaser for value." Complaint ¶¶ 12, 57. But Plaintiff includes no facts showing Thermo Fisher knew of wrongdoing *before* it acquired a cognizable benefit, or that Thermo Fisher did not pay value for what it acquired. The remaining amendments (in paragraphs 7, 10, 21, 22, 43) in the Second Amended Complaint are immaterial.

And Plaintiff still fails to allege a predicate underlying tort by Thermo Fisher, as another judge of this District recently affirmed is necessary under Maryland law.

Finally, Plaintiff's modifications do not solve the limitations problem. Rather, they prove Plaintiff's claim will be time-barred no matter what, because at its heart lies an unavoidable contradiction: the same widespread publicity that Plaintiff alleges put Thermo Fisher on notice about HeLa cells also would have put Plaintiff on notice about potential claims. Plaintiff knew or should have known of the issues underlying this case no later than 2010. That is when a best-selling "nonfiction book" (Complaint ¶ 44)—which itself was based on extensive interviews of Ms. Lacks's family including the then-administrator of the Estate—publicized the origins of HeLa cells and their widespread commercial use, including by Invitrogen, which became a Thermo Fisher subsidiary in 2014. And Plaintiff certainly knew about potential claims by the time Plaintiff and a variety of counsel went on repeated media tours about their litigation plans but took no action to commence a lawsuit within the limitations period.

The Court is now equipped to rule that Plaintiff's claim accrued before October 4, 2018 (i.e., that Thermo Fisher was in fact conferred access to the HeLa cell line before that date). The Court previously questioned the sufficiency of the record on this issue. But Thermo Fisher now supplies evidence including government records, patents, and other public materials, none of which are subject to reasonable dispute, and all of which confirm the company was selling accused products (and had therefore been conferred any possible HeLa-related benefit) long before the limitations period. And the separate accrual doctrine, which has never been applied to unjust enrichment claims, does not permit Plaintiff to sweep in post-October 4, 2018 cell cultivation and HeLa-related sales because neither violates any law. Plaintiff's claim is inevitably time-barred and should not be further prolonged.

2

# BACKGROUND

The background to this matter is covered in Thermo Fisher's prior motion to dismiss (ECF 20), and we do not restate it in full here.[1]  In sum, the commercial use of HeLa cells is a widespread practice that began almost immediately after their discovery in 1951 by Henrietta Lacks's doctors at Johns Hopkins Hospital.[2]  Today, HeLa cells are an essential resource in medical research world-wide (Complaint ¶ 41) and can be readily purchased online.[3]  Thermo Fisher does not dispute that, among the 100,000+ products it sells, a handful are HeLa-related (though none are HeLa cells[4]). Plaintiff, conversely, has not disputed an overwhelming record showing knowledge of—and con-templation of litigation over—the commercial use of HeLa cells since long before the October 4, 2018 beginning of the limitations period:

---

[1] Thermo Fisher incorporates the arguments and citations contained in its prior papers as permitted by the parties' stipulation at ECF 85.

[2] Mass production began with a pair of preeminent Black researchers at the Tuskegee Institute, Dr. Russel Brown and Dr. James Henderson.  Brown RW, Henderson JH, "The mass production and distribution of HeLa cells at Tuskegee Institute, 1953-55." J Hist Med Allied Sci. (Oct. 1983) (attached as Ex. 2).  Funded by a federal grant and supplied with HeLa cells by Dr. William F. Scherer (who reportedly had gotten them directly from Johns Hopkins), Doctors Brown and Hen-derson mass produced and shipped 600,000 HeLa cell cultures to researchers across the country for polio vaccine testing.  *Id.*  They sold each shipment of HeLa cells for $10 plus an Air Express fee.  Rebecca Skloot, *The Immortal Life of Henrietta Lacks*, at 78 (Crown ed. 2010) ("*Immortal Life*") (attached as Ex. 1).

[3] For instance, the American Type Culture Collection (ATCC), a 100-year-old nonprofit supported in part by National Institutes of Health (NIH) grants, has sold HeLa cells since at least the 1980s. *See* Judith Randal, *The legacy of Henrietta Lacks: 30 years after her death from cancer, her calls live on*, The Daily News, Aug. 24, 1980 (ATCC sold HeLa cells "for a typical cost of $31) (at-tached as Ex. 3).  Today, ATCC sells HeLa cells for $541 per vial.  https://www.atcc.org/prod-ucts/ccl-2 (last visited January 2, 2023).

[4] Thermo Fisher does not in fact sell HeLa cells.  All accused products are genetically distinct from HeLa cells, and some are not cells at all.  *See* Complaint ¶ 48(a), (b), (d), (e), (k), (l).

1971-76:  Henrietta Lacks's identity as the source of HeLa cells is first made public and then widely publicized.[5]

1997:  The BBC airs a documentary about HeLa cells featuring interviews with Ron Lacks (the personal representative of the Estate who filed this lawsuit) and Lawrence Lacks (the previous personal representative of the Estate), in which they describe having worked with lawyers "to find out who is making money off my mother's cells."[6]

2010:  Rebecca Skloot publishes the best-selling "The Immortal Life of Henrietta Lacks," detailing Ms. Lacks's treatment at Hopkins and naming several companies whose business involved HeLa cells, including Invitrogen, acquired by Thermo Fisher Scientific in 2014.[7]

The book quotes Deborah Lacks—then the Estate administrator[8]—as opposing litigation relating to HeLa cells.[9]  The book also quotes Lawrence Lacks, who served as Estate administrator from August 2010 until three days before the first

[5] Howard W. Jones, et al., *After Office Hours*, 38 Obstetrics & Gynecology 945 (Dec. 1971) (attached as Ex. 4) ("Even now Henrietta Lacks, first as Henrietta and then as HeLa, has a combined age of 51 years."); Michael Rogers, *The Double-Edged Helix*, Rolling Stone, Mar. 25, 1976 (attached as Ex. 5); *The Miracle of 'HeLa'*, Ebony, June 1976, at 93-94, 96, 98 (attached as Ex. 6).

[6] JustAdamCurtis, *The Way of All Flesh,* YouTube (June. 20, 2016), https://www.youtube.com/watch?v=FgMUlVl-poE, at 49:30-49:57. The documentary also reported, "The lawyers approached most of the major biotechnology and pharmaceutical companies. Everywhere they were turned away.  It seemed they had no legal case.  Henrietta Lacks had died too long ago." *Id.* at 49:22-50:11.

[7] *Immortal Life* (Ex. 1) at 193-94; Life Technologies was acquired by Thermo Fisher Scientific in January, 2014, https://www.sec.gov/Archives/edgar/data/1073431/000119312514033495/d655804dex991.htm (last accessed January 2, 2023) (attached as Ex. 7); Life Technologies Corp., Current Report, at (Form 8-K), (Nov. 21, 2008) https://www.sec.gov/Archives/edgar/data/1073431/000119312508244797/d8k.htm ("Life Technologies Corporation (formerly known as Invitrogen Corporation).") (last accessed January 2, 2023) (attached as Ex. 8).

[8] *In re Estate of Henrietta Lacks,* No. 113489 (Aug. 9, 2010) (attached as Ex. 9)

[9] *Immortal Life* (Ex. 1) at 225 ("Nothing about my mother is truth if it's about wantin to fry the researchers. It's not about punish the doctors or slander the hospital. I don't want that."); *Id.* at 230 ("When people hear about my mother cells they always say, 'Oh y'all could be rich! *Y'all gotta sue John Hopkin, y'all gotta do this and that.' But I don't want that.*") (emphasis added).

complaint was filed in this case,[10] as having said *in 2001* that he wanted "to sue every scientist who'd ever worked on Henrietta's cells."[11]

2017        HBO releases a film adaptation of The Immortal Life of Henrietta Lacks, staring Oprah Winfrey, and it again discusses the commercial use of HeLa cells and references Thermo Fisher.[12]

An attorney for Lawrence Lacks publicly announces a plan to sue Johns Hopkins University and "possibly other institutions" under a "continuing tort" theory.[13] No lawsuit is filed.

June 2018: Another attorney for Lawrence Lacks publicly states plans to file a petition seeking "guardianship" of HeLa Cells.[14] Again, no lawsuit is filed.

On October 4, 2021—more than three years after all the above—Plaintiff filed the instant suit alleging a single count of unjust enrichment against Thermo Fisher on behalf of the Estate of Henrietta Lacks. ECF 1. The original complaint alleged that Thermo Fisher benefitted from the commercial use of "the HeLa cell line" despite "widespread" publicity around the origins of "the HeLa cell line." *Id.* On December 16, 2021, Thermo Fisher moved to dismiss on grounds including that Plaintiff's claim was barred by Maryland's three-year statute of limitations. ECF 20. Plaintiff filed a response to the motion to dismiss on February 14, 2022. ECF 41. That response

---

[10] Lawrence Lacks was administrator until October 1, 2021, when his son, Ron Lacks, was appointed. *See* Consent to Appointment of Personal Representative, *In re Estate of Henrietta Lacks,* No. 113489 (Oct. 1, 2021) (attached as Ex. 10). *See Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106, at 505 (1977)).

[11] *See Immortal Life,* at 267 (Ex. 1); Pet. Successor Personal Rep., *In re Estate of Henrietta Lacks*, No. 113489 (Aug. 9, 2010) (attached as Ex. 11).

[12] The Immortal Life of Henrietta Lacks, HBO, at 4:12.

[13] Andrea K. McDaniels, *Henrietta Lacks' family wants compensation for her cells,* Baltimore Sun (Feb. 15, 2017), https://www.baltimoresun.com/health/bs-hs-henrietta-lacks-johns-hopkins-20170213-story.html (attached as Ex. 12).

[14] DeNeen L. Brown, Can the 'immortal cells' of Henrietta Lacks sue for their own rights?, Wash. Post (Jun. 25, 2018), https://www.washingtonpost.com/news/retropolis/wp/2018/06/25/can-the-immortal-cells-of-henrietta-lacks-sue-for-their-own-rights/ (attached as Ex. 13).

suggested for the first time that claims of unjust enrichment occur every time a HeLa cell in Thermo Fisher's possession divides or every time Thermo Fisher makes a sale—seemingly abandoning the position in Plaintiff's complaint that the unjust enrichment benefit in this case was "the HeLa cell line" itself. ECF 41 at 25-26. Thermo Fisher filed its reply on March 22, 2022, which noted this is not a valid theory of unjust enrichment, citing all known authorities. ECF 63 at 3-7.

This Court held argument on May 17, 2022. ECF 77 (MTD Tr.). There, the Court attempted to pin down the alleged benefit under Plaintiff's claim. Plaintiff's counsel on the one hand conceded that the alleged benefit was "the HeLa cell line," *id.* at 34:7-19, but also again argued that the benefit is conferred each time HeLa cells divide or are sold, "forever." *Id.* at 38:15-25. The Court appeared to note this was different than Plaintiff had originally alleged, *id.* at 42:14-16 ("The benefit is the cell line. It's not what they do with it later, like, sell it."). The Court appeared to question, though, whether it had a sufficient record of the accrual date of Plaintiff's claim to make a limitations ruling. *See, e.g., id.* at 58:18-59:1.

On November 18, 2022, following stipulations by the parties (ECF 86), Plaintiff filed this Second Amended Complaint. It changed the alleged unjust enrichment benefit from "the HeLa cell line" to cultivation and sales of HeLa cells and added an assertion that Thermo Fisher is not a bona fide purchaser.

Thermo Fisher now seeks dismissal of the Second Amended Complaint and responds to both of Plaintiff's modifications. Thermo Fisher also addresses the Court's previous concern about an accrual date by providing judicially noticeable materials showing Thermo Fisher was specifically conferred access to the HeLa cell line well before October 4, 2018. Indeed, the Court need look no further than National Institutes of Health procurement records dating back to 2018, which show NIH—far from objecting on ethical grounds (Complaint ¶ 21)—*purchased* one of those

products from Thermo Fisher in June 2018.[15]   The Department of Veterans Affairs also buys

accused products—public records show it purchasing an accused product—the "T-Rex HeLa Cell

Line" (Complaint ¶ 48(c)) from Invitrogen on June 26, 2008.[16]  And public records also show the

General Services Administration (GSA), the purchasing arm of the United States Government,

*sells* Thermo Fisher Scientific "Pierce Hela Protein Digest Standard" (listed at Complaint ¶ 48(a))

under a contract that began in March 2014.[17]  Patent filings going back to at least the early 2000s

also reference accused products sold by Thermo Fisher or its subsidiaries.[18]  Published scientific

papers do the same,[19] as do screen captures of Invitrogen's website.[20]  These public materials show

Thermo Fisher sold accused products (and had therefore been conferred access to any HeLa-related

benefit) long before the limitations period.

---

[15]  *See* Spreadsheet list of June 2018 NIH "P-card" purchases at row 11222, https://www.nih.gov/sites/default/files/institutes/foia/p-card-purchases-june-2018.xlsx (showing NIH purchasing "HeLa Protein Digest Standard" on June 15, 2018) (excerpt with row 11222 highlighted attached as Ex. 14).  NIH also purchases actual HeLa cells from ATCC.  *See, e.g.*, Li et al. *Endocrine-Disrupting Chemicals (EDCs): In Vitro Mechanism of Estrogenic Activation and Differential Effects on ER Target Genes*, Environmental Health Perspectives, 121:459-466 (2013) (authors affiliated with NIH reporting that "[T]he HeLa cervical epithelial cancer cell line (both ER negative) were purchased from ATCC (Manassas, VA)" (attached as Ex. 15); Spreadsheet list of May 2018 NIH "P-card" purchases at row 2422, https://www.nih.gov/sites/default/files/institutes/foia/p-card-purchases-may-2018.xlsx (showing NIH purchasing HeLa cells on May 2, 2018) (excerpt with row 2422 highlighted attached as Ex. 16).

[16]  Federal Procurement Data System, Department of Veterans Affairs Purchase Order No. V596R80463 (June 26, 2008), https://www.fpds.gov (attached as Ex. 25).

[17]  GSA Product Detail Sample Prep Tools for Mass Spectrometry, General Services Administration, https://www.gsaadvantage.gov/advantage/ws/catalog/product_detail?gsin=11000024312280 (attached as Ex. 17); USASpending.gov Award Profile for Contract No. GS-07F-161BA, https://www.usaspending.gov/award/CONT_IDV_GS07F161BA_4732 (attached as Ex. 18) (highlighting added to identify Contract Number, Recipient, and Start Date).

[18]  *See infra* n.30.

[19]  *See infra* n.31.

[20]  Thermo Fisher Web Catalog, https://web.archive.org/web/20000118043250/http://www.invitrogen.com:80/catalog_project/catalog.html (attached as Ex. 19).

**STANDARD OF LAW**

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citation omitted). But a court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (citations omitted). Adjudicative facts are "not subject to reasonable dispute," in that they are "'(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Whetstone v. Mayor & City Council of Baltimore City*, No. ELH-18-738, 2019 WL 1200555, at *3–5 (D. Md. Mar. 13, 2019) (quoting Fed. R. Evid. 201).

**ARGUMENT**

Plaintiff's theory—that Thermo Fisher was unjustly enriched by its alleged HeLa-related sales and cell cultivation—is not cognizable under Maryland law. And even if it were, Plaintiff cannot avoid the time-bar.

**I.     Plaintiff fails to state a claim of unjust enrichment.**

Plaintiff's attempt to claim unjust enrichment based on Thermo Fisher allegedly growing HeLa cells and selling related products fails for three reasons. First, Plaintiff has not pleaded a valid conferral of a benefit by Plaintiff upon Thermo Fisher. Second, though Plaintiff now adds a pair of conclusory statements that Thermo Fisher was "not a bona fide purchaser for value,"

Plaintiff still has not pleaded any facts supporting these claims. And third, Plaintiff still fails to allege an underlying tort, which another judge of this Court recently affirmed is required for an unjust enrichment claim based on tortious conduct. Plaintiff therefore fails to state a claim.

### a. Plaintiff fails to plead a benefit conferred by the Plaintiff upon Thermo Fisher.

The Complaint fails under the first element of unjust enrichment because it does not assert a legally recognized "benefit conferred upon the defendant by the plaintiff." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7 (2000) (collecting cases). Previously, Plaintiff alleged the benefit conferred by Ms. Lacks upon Thermo Fisher was "the HeLa cell line." *See, e.g.,* ECF 1 at ¶ 49 ("Acceptance or retention of the HeLa cell line"); MTD Tr. 34:4-7 ("So can we agree that as to the first element, you are alleging that the benefit conferred upon the Defendant by the Plaintiff was the HeLa cell line? Mr. Seeger: Yes, Your Honor."). Plaintiff now claims that Thermo Fisher receives "a benefit" when it "cultivates, sells, and receives payment for newly replicated HeLa cells." Complaint at ¶¶ 53-54. Such alleged benefits are not conferred upon Thermo Fisher by Henrietta Lacks. They are also not valid unjust enrichment benefits. And they are too remote to state a claim against Thermo Fisher.

### 1. Plaintiff has not pleaded conferral of a benefit.

Plaintiff alleges that Thermo Fisher "received and continues to receive a benefit from Henrietta Lacks every time it cultivates, sells, and receives payment for newly-replicated HeLa cells." Complaint ¶ 53. This is not conferral of an unjust enrichment benefit under Maryland law.

Under Maryland law, "conferral" of a benefit occurs when the plaintiff "gives to the other possession of or some other interest in money, land, chattels," or "performs services" for the

defendant.[21] *Hamilton & Spiegel, Inc. v. Bd. of Ed. of Montgomery Cty.*, 233 Md. 196, 201 (1963)

(quoting Restatement of Restitution § 1 (1937)); *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F.

Supp. 2d 700, 709 (D. Md. 2001) ("Maryland law appears to require that the plaintiff provide a

service or benefit to a defendant . . . or that the defendant obtains and fails to return funds or

property that belong to the plaintiff.") (citations omitted).  This definition does not include "pro-

ceeds" conferred by sales to third parties.  *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 726-27

(D. Md. 2009) (dismissing an unjust enrichment claim premised on the allegation that "Defendants

. . . benefitted from the collection and receipt of illegal rents, fees and costs, and interests escrowed

and other funds . . . associated with the wrongful obtaining of title to Plaintiff's home" because

"there is no allegation that the Haleys paid it or were responsible for paying it"); *Mehul's*, 130 F.

Supp. 2d at 709 ("National cites no authority, and the court has found none, to support its argument

that ABC's own proceeds constitute a benefit for purposes of an unjust enrichment claim.").  For

instance, in *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, this Court dismissed with

prejudice an unjust enrichment claim because the money plaintiff sought "is not its own money

fraudulently paid" to another, but was "a portion of fees paid . . . by others." 249 F. Supp. 2d 703,

708-09 (2003).  Thermo Fisher's alleged sales proceeds are likewise conferred not by Plaintiff but

by others.

As to cultivated cells, the Complaint lacks any factual allegation showing a conferral of

this alleged benefit by Plaintiff upon Thermo Fisher.  Indeed, the Complaint deletes "the HeLa cell

---

[21] To be clear, Thermo Fisher is not suggesting that a benefit must always be conferred *directly* by Plaintiff. *Plitt v. Greenberg*, 242 Md. 359, 364 (1966) ("It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner."). However, unlike *Plitt*, Thermo Fisher's alleged sales proceeds were not "owned" by, and did not originate from, Plaintiff.

line" (from which cultivated cells would have to originate) as the alleged unjust enrichment benefit.  In any case, cultivated cells are not a valid unjust enrichment benefit—they are proceeds, as further explained below.

### 2. Proceeds are not unjust enrichment benefits.

Cultivated cells and sales proceeds are not valid unjust enrichment benefits because a person's use or monetization of a benefit is not separately actionable under the law of unjust enrichment.  *See, e.g.*, *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*,  No. 15 Civ. 2259(PGG), 2021 WL 3141672, at *17 (S.D.N.Y. July 26, 2021) ("Stonebridge was enriched at Plaintiffs' expense when it sold the allegedly illegal insurance policies to Plaintiffs," not each time Plaintiffs paid monthly premiums); *Schandler v. New York Life Ins. Co.*, No. 09 Civ. 10463(LMM), 2011 WL 1642574, at *9 (S.D.N.Y. Apr. 26, 2011) (same); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15CV5345(AJN), 2018 WL 1583293, at *4 (S.D.N.Y. Mar. 27, 2018) (benefit was conferred "when the alleged embezzlement first occurred," and "not when those embezzled funds were transferred for domestic investment").

Were the law otherwise, then unjust enrichment would effectively have no statute of limitations.  Any original asset conferred can continue to accrue additional, downstream benefits.[22] Thus, the Restatement of Restitution distinguishes between the "initial transaction" conferring the original benefit and the methods of measuring the value of that benefit by considering, among other things, "interest, rent, and other measures of use value, proceeds, and consequential gains." Restatement (Third) of Restitution and Unjust Enrichment § 53, cmt. a (2011). The initial transaction is actionable, the consequential benefits are not.

---

[22] The Complaint does not allege Thermo Fisher's supplier of HeLa cells was Ms. Lacks or Johns Hopkins Hospital.

For example, under the Restatement, a plaintiff may be able to recover the value of "proceeds," which are defined as "assets received as the direct product of an original asset for which the recipient is liable in restitution" such as "accretion in respect of the original asset (dividends on shares, interest on bonds, rent on land, *a calf born to a cow*)" or "value received upon sale or other disposition of *the original asset* by the recipient." *Id.* at cmt. c (emphases added). But, the Restatement explains that such proceeds are a "measurement of unjust enrichment; . . . not a basis of liability in restitution . . . ." *Id.* at cmt. a. Because these proceeds are not "a basis of liability," they are not a basis for an unjust enrichment claim.

### 3. Plaintiff's alleged benefits are too remote to state a claim.

Even if Thermo Fisher's alleged proceeds could theoretically give rise to an unjust enrichment claim, they are too remote to be cognizable here. When a claim is "too remote from the underlying wrong to be subject to restitution," or not "directly attributable to the underlying wrong," the claim should be dismissed. Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. e, f (2011); *see also, e.g., Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) ("We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim . . . because of the remoteness of plaintiffs' injuries from defendants' wrongdoing."); *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003) (applying Tennessee law) (dismissing group health insurance subscribers' unjust enrichment claim against tobacco manufacturers for payments of medical costs for smokers on remoteness grounds); *Pa. Employees Benefit Trust Fund v. Astrazeneca Pharm. LP,* No. 09–5003, 2009 WL 2231686, at *6 (M.D. Fla. July 20, 2009) (dismissing claim for unjust enrichment based on defendant's alleged deceptive marketing practices to substantially inflate the number of prescriptions filled by Plaintiff's members on remoteness grounds); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* 484 F. Supp. 2d 973, 985 (D. Minn. 2007) (dismissing an

unjust enrichment claim because the alleged third-party payments for devices on behalf of insureds were "too remote").

Here, Plaintiff does not even attempt to connect Thermo Fisher with the alleged conduct at Johns Hopkins 70-plus years ago that gave rise to the HeLa cell line. Simply using this widely used resource today cannot make an entity liable to Plaintiff forever.

**b. Plaintiff pleads no facts showing Thermo Fisher was not a bona fide purchaser.**

The Complaint still fails to plead facts showing Thermo Fisher was not a bona fide purchaser for value of a benefit obtained from Plaintiff. In Maryland, "a plaintiff cannot state a claim for unjust enrichment against a *bona fide* purchaser for value." *Haley,* 659 F. Supp. 2d at 724. Thus, a "claim for unjust enrichment requires an allegation that the defendant was not a *bona fide* purchaser." *Id.; see also Plitt*, 242 Md. at 364-65 ("[I]f a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession.") (citations omitted); Restatement (First) of Restitution § 123 cmt. a (1937) (unjust enrichment "does not apply to a person who, without notice of an equitable ownership, has become a bona fide purchaser of the property").

Here, the sum of Plaintiff's attempt to plead this element is the following two conclusory statements:

> Upon information and belief, Thermo Fisher Scientific is not a bona fide purchaser for value. With knowledge of the horrific misconduct by doctors at Johns Hopkins, Thermo Fisher Scientific knew its possession, cultivation, and sale of HeLa cells was, is, and will continue to be unjust. At no time did Thermo Fisher Scientific pay fair or sufficient consideration for Mrs. Lacks' cells.

Complaint ¶ 12.

> Upon information and belief, Thermo Fisher Scientific is not a bona fide purchaser for value. Not only did Thermo Fisher Scientific know that HeLa

cells were wrongfully obtained by physicians at Johns Hopkins through un-consented-to non-therapeutic medical experimentation, it also never paid fair or sufficient consideration for its HeLa cells.

Complaint ¶ 57.

Notwithstanding that Plaintiff is no longer claiming "the HeLa cell line" as an unjust en-richment benefit (seemingly rendering these allegations inconsistent with the Second Amended Complaint), the Complaint is still void of *facts* showing Thermo Fisher knew of wrongdoing *be-fore* it acquired a cognizable benefit. *See, e.g., Mirjafari v. Cohn,* 412 Md. 475, 488 (2010) ("[B]ona fide purchaser status for this purpose is determined based on what is known, or reasonably knowable, by the bidder as of the date of the successful bid at the foreclosure sale"); *Julian v. Buonassissi,* 414 Md. 641, 665 (2010) (a "bona fide purchaser" must have that "status at the time it purchased the property"). This is plainly insufficient—Plaintiff's recitation of "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhance-ment fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Con-sumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Similarly, Plaintiff also offers no facts showing that Thermo Fisher "never paid fair or sufficient consideration for its HeLa cells." Complaint ¶ 12, 57. Nor is it clear how such a claim is possible, as Maryland law presumes *any* consideration is valid and bona fide. *See, e.g., Poole v. Poole*, 129 Md. 387 (1916) ("The presumption of law is that a deed made for a valuable consider-ation, however small, is valid and bona fide."). In any event, Plaintiff offers no facts about the price paid, when it was paid, or why it was not "fair or sufficient consideration" at the time. It is well-established that courts need not accept unsupported legal conclusions couched as factual al-legations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events or relevant dates, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Finally, Plaintiff uses information and belief pleading improperly. "[U]sing 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019); *see also Negrete v. Citibank, N.A.,* 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ("[W]hile a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded.") (internal quotation marks omitted). Here, the scientific community's alleged knowledge of Johns Hopkins's actions would not be peculiarly within Thermo Fisher's possession. Nor does Plaintiff offer a single fact to make plausible the inferences necessary to render *Thermo Fisher* liable due to alleged knowledge in the "scientific community." Finally, as to the allegation Thermo Fisher did not pay a sufficient price for HeLa cells, there is no reason Plaintiff could not at least include what it believes a sufficient price would have been at the time of acquisition. Plaintiff's attempts to plead such matters "on information and belief" are improper.

### c. Plaintiff fails to plead an actionable underlying tort.

Plaintiff continues to violate the principle that unjust enrichment cannot be pleaded based on tortious conduct without pleading an actionable underlying tort committed by Thermo Fisher. At the May 17, 2022, hearing, this Court questioned the "standard approach" of this District to dismiss unjust enrichment claims based on tortious conduct without an actionable underlying tort. (MTD Tr. at 13:4-16:17). We respectfully submit that dismissal on this ground remains appropriate.

First, Judge Hazel recently reaffirmed the "standard approach" of this Court "to dismiss an unjust enrichment claim if the plaintiff 'has not stated a claim for tortious conduct'." *See Texas*

*Star Nut & Food Co. v. Truist Bank*, No. GJH-21-2564, 2022 WL 4548638, at *5 (D. Md. Sept. 29, 2022) (quoting *Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 718 (D. Md. 2020)); *see also Temescal Wellness of Md. LLC v. Faces Human Capital, LLC*, No. GLR-20-3648, 2021 WL 4521343 (D. Md. Oct. 4, 2021).[23]

Second, at oral argument, this Court asked whether this District's rule could lead to illogical results in a hypothetical instance where a conversion occurred in 2010 and the property was transferred to a third party five years later, giving rise to a claim of unjust enrichment against the third party after the conversion claim was already time-barred (assuming the third party was not a bona fide purchaser for value). MTD Tr. at 15:17-16:17. This, respectfully, illustrates the reason for the rule: a plaintiff does not get a second shot at a time-barred conversion claim every time the property later changes hands. Such a rule would go against the public policy of encouraging timely claims and would instead make it profitable for a potential plaintiff to sit on their hands and wait for value to accrue, evidence to become less accessible, memories to fade, witnesses to die, and claims to become ever more remote.

Finally, the Court correctly noted there are cases in which a standalone unjust enrichment claim has proceeded in Maryland state court. But the defendants in those cases never moved to dismiss on that basis, so the issue was never put before the courts. *Dolan v. McQuaide*, 215 Md. App. 24 (2013) (evidence of the fair market value for plaintiff's services established genuine

---

[23] *Compare Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*, No. CCB-20-3061, 2021 WL 1909592 (D. Md. May 12, 2021). In *Monterey Mushrooms*, the plaintiff brought a standalone unjust enrichment claim alleging it overpaid the defendant nearly $115,000 for health plan administrative services. *Id.* at *1. Judge Blake distinguished *Washington County*, observing that dismissal of stand-alone unjust enrichment claims "*typically occurs where an unjust enrichment claim is premised on the tortious conduct* rather than independent conduct." *Id.* at *3 (emphasis added). Because there was no underlying tortious conduct alleged in the case (but rather unreturned overpayments), the Court permitted the plaintiff to plead unjust enrichment without an underlying tort. *Id.* Here, by contrast, the claim is premised on tortious conduct. Complaint ¶ 43.

dispute of fact, such that case should have moved past summary judgment, not motion to dismiss); *Newcomb v. Babu*, No. GJH-19-2046, 2020 WL 5106714, at \*10 (D. Md. Aug. 30, 2020) (unjust enrichment only claim remaining in case for certain defendants, but other claims remained for other defendants).[24]  Therefore, those cases are not dispositive.

## II.    Plaintiff's claim is still time-barred.

Even if the Court were to rewrite Maryland's law of unjust enrichment so that proceeds could be unjust enrichment benefits, this is the rare case in which publicly available facts make clear at the pleadings stage that the claim is unavoidably time-barred.  Not only is there over-whelming evidence of Plaintiff's notice of the facts underlying this claim, but there is also over-whelming evidence showing Thermo Fisher, specifically, sold HeLa-related products (and had thus been conferred any HeLa-related benefit) long before the limitations period.  And the separate accrual doctrine—necessary to allege separate claims for every HeLa-related sale or cell division within the limitations period—does not apply to legal commercial activity or to claims of unjust enrichment.

### 1.    Plaintiff had notice of the commercial use of HeLa cells—including by Thermo Fisher—long before the limitations period.

Maryland's three-year statute of limitations for unjust enrichment begins to run when the plaintiff "knew or reasonably should have known of the wrong."  *Jason v. Nat'l Loan Recoveries, LLC*, 227 Md. App. 516, 531 (2016) (citation omitted).  "[W]hen a plaintiff has knowledge of circumstances indicating that he may have been harmed, the law imposes a duty on that plaintiff to investigate whether in fact he has been harmed."  *Russo v. Ascher*, 76 Md. App. 465, 470 (1988).

---

[24] Should this Court have misgivings about applying the "standard approach" of this District because of the lack of Maryland state court decisions on this issue, the best approach to avoid an intra-district split would be to certify a question to the Maryland Court of Appeals.

A plaintiff is thus on "inquiry notice" and the statute of limitations will begin to run, when the plaintiff knows of facts that "should have raised their suspicions," that triggers the duty to diligently investigate and pursue any claims against all defendants. *Porter v. GreenPoint Mortg. Funding, Inc.*, No. DKC–11–1251, 2011 WL 6837703, at *7 (D. Md. Dec. 28, 2011). And dismissal is appropriate where "the time bar is apparent on the face of the complaint." *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018).[25]

Here, the original complaint was filed October 4, 2021, and Plaintiff knew (or reasonably should have known) of the factual basis for the original complaint years before October 4, 2018. The same "widespread publicity" alleged to have put the world on notice about HeLa cells' origin also would have put Plaintiff on notice of the same facts, and much of that widespread publicity is from well before October 4, 2018. For example, both the book and film versions of *The Immortal Life* centered around the origins of HeLa cells as well as their commercial use. Both also cite Thermo Fisher or Invitrogen as involved in their commercial use. *Immortal Life* (Ex. 1) at 158 ("What we do know is that today, Invitrogen sells HeLa products that cost anywhere from $100 to nearly $10,000 per vial."); *The Immortal Life of Henrietta Lacks*, HBO, at 4:12. And both were published before October 4, 2018. This alone put Plaintiff on notice.

The Court is permitted to take judicial notice of these publications for purposes of determining when information was in the public realm. *See, e.g.*, *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp 2d 751, 758 (D. Md. 2013) ("[D]istrict courts in this circuit 'routinely take

---

[25] *See also Brown v. Neuberger, Quinn, Gielen, Rubin, & Gibber, P.A.*, 731 F. Supp. 2d 443, 451 (D. Md. 2010) (granting dismissal where the plaintiff possessed information that "was more than sufficient to cause people of ordinary prudence to be suspicious and investigate"); *Douglass v. NTI–TSS, Inc.*, 632 F. Supp. 2d 486, 493 (D. Md. 2009) (granting dismissal where the defendant knew of an injury but failed to pursue a personal injury claim because defendant "had a duty to pursue her rights against all potential defendants diligently, and she failed to do so").

judicial notice of newspaper articles, analysts' reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint.'") (citations omitted); *Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (in affirming dismissal of a securities action because the claim was time-barred, the court took judicial notice of newspaper articles for the purpose of establishing "what was in the public realm at the time, not whether the contents of those articles were in fact true"); 1 Weinstein's Evidence Manual § 4.02 (2021) ("Courts may also take judicial notice of facts that various newspapers, magazines, and books were published solely as an indication of information in the public realm at the relevant time, not whether the contents of those articles were, in fact, true.").

This "widespread publicity" would have led a reasonable person in Plaintiff's position to investigate potential claims and assert available rights. *Cf. Tani v. Washington Post*, No. PJM 08-1130, 2009 WL 8652384, at *2 (D. Md. June 18, 2009) (dismissing a defamation action where the articles at issue "were widely available online and could have been discovered immediately"); *Wyne v. Medo Inds. Inc.*, No. RDB-02-CV-1812, 2004 WL 3217860, at *7 (D. Md. Mar. 25, 2004) (citing *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000) (plaintiff's claim was time-barred because his cause of action accrued when he first suspected, through a newspaper article, that the defendant may have been using his alleged trade secrets)). And here, Plaintiff went on two media tours with his then-lawyers before October 4, 2018, discussing plans to sue a variety of actors about the use of HeLa cells.[26] Under these circumstances, Plaintiff was on notice.

---

[26] *See supra* n.11, n.13, n.14.

### 2. Thermo Fisher was conferred any HeLa-related benefit before the limitations period.

At this Court's May 17, 2022 hearing, the Court questioned the date by which a benefit was actually conferred upon Thermo Fisher by Plaintiff, as needed to determine accrual for statute of limitations purposes. Though Plaintiff's reformulated complaint does not assert a benefit conferred on Thermo Fisher or a date of conferral, as explained above, there is abundant evidence subject to judicial notice showing Thermo Fisher sold accused products many years before October 4, 2018. This means that any benefit conferred on Thermo Fisher was conferred before that date.

**First**, again, publicly available NIH procurement data shows NIH purchasing "HeLa Protein Digest Standard" (listed at Complaint ¶ 48(a)) from Thermo Fisher in June 2018; a date before the three-year statute of limitations period that would start October 4, 2018.[27]

| P-Card Merchant Name | Delivery Location | Receiver IC | Award Released Date | Award No. | Order Amt | Award Line Item Description |
|---|---|---|---|---|---|---|
| FISHER SCIENTIFIC COMPANT | Bldg 10, 1st Floor, Wing D, Bethesda Main Campus | NINDS | 06/15/2018 | 5319114 | 409.49 | HELA PROTEIN DISGEST STANDARD |

Publicly available Veterans Administration (VA) procurement data shows the VA purchasing the "T-Rex HeLa Cell Line" (listed at Complaint ¶ 48(c)) from Invitrogen on June 26, 2008.[28]



---

[27] *See supra* n.15.

[28] *See supra* n.16.

And the GSA, the main purchasing arm of the United States Government, has sold Thermo Fisher Scientific "Pierce Hela Protein Digest Standard" (listed at Complaint ¶ 48(a)) under a contract that began in March 2014.[29]



The Court is permitted to take notice of these government records of these transactions to show the Thermo Fisher products in question existed. *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

**Second**, numerous patents from before the limitations period list accused products from Thermo Fisher or its subsidiaries, logically requiring that the products existed no later than the filing date of the patent application referencing their use (viz. no later than January 15, 2004).[30]

---

[29] GSA Product Detail Sample Prep Tools for Mass Spectrometry, General Services Administration, https://www.gsaadvantage.gov/advantage/ws/catalog/product_detail?gsin=11000024312280 (attached as Ex. 17); USASpending.gov Award Profile for Contract No. GS-07F-161BA, https://www.usaspending.gov/award/CONT_IDV_GS07F161BA_4732 (attached as Ex. 18) (highlighting added to identify Contract Number, Recipient, and Start Date).

[30] *See, e.g.*, U.S. Patent No. 8,198,077 B2, at Col. 9, Lns. 45-47 (filed Jan. 15, 2004) (published Sept. 21, 2006) (issued June 12, 2012) ("In this study, we used `T-Rex` HeLa cells (Invitrogen) . . . ."); U.S. Patent App. Pub. No. 2007/0122798 A1, at ¶ [0035] (filed Mar. 3, 2004) (published

The Court may take judicial notice of these filings and the information therein. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931, 932 n.3, 932 n.4 (Fed. Cir. 2014) (it is "well-established that a court may take judicial notice of patents or patent applications").

**Third**, scientific publications predating October 4, 2018, reference many of the accused products, again showing the products must have existed prior to the time of the publications.[31]

---

May 31, 2007) ("The Hela T-Rex cells (Invitrogen ref: R714-07), which express the TetR repressor, were than transduced ..."); U.S. Patent No. 7,683,036 B2, Col. 54, Lns. 32-43 (filed July 30, 2004) (published Nov. 24, 2005) (issued March 23, 2010) [0755] ("The T-REx.™-HeLa cell line (Invitrogen Corp., Carlsbad, Calif.) was used for either stable or transient transfections . . . ."); US Patent No. 7,759,318 B1, at Col. 81, Lns. 54-67 (filed May 27, 2005) (issued July 20, 2010) ("In one embodiment, the T-REx.™-HeLa cell line (Invitrogen Corp., Carlsbad, Calif.) can be used for transient transfections . . . ."); U.S. Patent App. Pub. No. 2008/0312298 A1, at ¶ [0451] (filed Apr. 11, 2008) (published December 18, 2008) ("The expression plasmid containing the gene for Flag-PrX is transfected into a Tet system-compatible cell lines (such as HEK293 T-Rex or HeLa T-Rex from Invitrogen) . . . ."); US Patent App. Pub. No. 2011/0293593 A1, at ¶ [0120] (filed Feb.11, 2009) (published Dec. 1, 2011) ("All adherent cells--HEK-293T, EcR-293 (Invitrogen), HeLa, HeLa T-REx (Invitrogen), and HepG2--were cultured . . . ."); U.S. Patent No. 9,796,967 B2, Col. 54, Ln. 52 – Col. 55, Ln. 13 (filed Aug. 1, 2013) (published July 16, 2015) ("Expression of the protein of interest can be made possible with a mammalian cell-free extract similar to the product currently commercialized by Thermo Scientific based on HeLa cell extracts. The Thermo Scientific 1-Step Human High-Yield In Vitro Translation (IVT) . . . ."); U.S. Patent App. Pub. No. 2017/0029823 A1, at ¶ [0107] (filed Jul. 28, 2016) (published Feb. 2, 2017) ("Exemplary mammalian cell lines include: ... T-REx™-HeLa cell line..."); U.S. Patent No. US 10,266,866 B2, at Col. 10, Ln. 6-15 (filed Nov. 23, 2016) (published June 1, 2017) (issued April 23, 2019) ("[A]pomyoglobin and HeLa digest were purchased from Thermo Fisher (San Jose, Calif."). These filings are made under penalty of perjury and presumed valid upon issuance. 35 U.S.C. § 115(a), (b), and (i) (verification requirement); 35 U.S.C. § 282 (presumption of validity).

[31] *See* Marchegiani, S. et al., *Recurrent Mutations in the Basic Domain of* TWIST2 *Ablepharon Macrostomia and Barber-Say Syndromes*, 97 Am. J. Hum. Genet. 99 (2015) (referencing "T-REx-HeLa cells (Life Technologies)") (attached as Ex. 20); Rossato, L. et al., *Proteins Potentially Involved in Immune Evasion Strategies in* Sporothrix brasiliensis *Elucidated by Ultra-High-Resolution Mass Spectrometry*, 3 mSphere (2018) ("As a control, HeLa Protein Digest Standard (Pierce–Thermo-Fisher) was used") (attached as Ex. 21); De, S., *Discovery of 2-(5-nitrothiazol-2-ylthio)benzo[d]thiazoles as novel c-Jun N-terminal kinase inhibitors*, 17 Bioorganic & Medicinal Chem. 2712 (2009) ("assays for c-Jun and ATF2 phosphorylation were carried out using the LanthaScreen c-Jun (1-79) Hela (Invitrogen, Carlsbad, CA)") (attached as Ex. 22); Chu, J et al., *Gamma Secretase-Activating Protein Is a Substrate for Caspase-3: Implications for Alzheimer's Disease*, 77 Biological Psychiatry 720 (2014) ("Wild-type and D737A/D739E-GSAP were transcribed and translated using 1-Step Human Coupled IVT Kit (Thermo Scientific, Waltham, Massachusetts") (attached as Ex. 23).

Similarly, a 2016 NIH "Standard Operating Procedure" for nano-liquid chromatography lists "Pierce HeLa Protein Digest Standard, Thermo Scientific" as a reagent, showing that the product existed at that time.[32]  Again, the Court can take notice of these publicly available materials and government records to show Thermo Fisher offering the accused products at the time they were published, meaning any HeLa-related benefit had been conferred by that time.

**Fourth**, Thermo Fisher or its subsidiaries listed accused items on their websites long before October 4, 2018.  For example, the below is from Invitrogen's website on January 18, 2000.[33]



This again shows Thermo Fisher sold accused products well before the limitations period, proving that any benefit was conferred before the limitations period as well.[34]

---

[32] Standard Operating Procedure for Nano-Liquid Chromatography, Clinical Proteomic Tumor Analysis Consortium (January 4, 2017), https://assays.cancer.gov/assays/download_file?sop_files_id=595 (attached as Ex. 24).

[33] Thermo Fisher Web Catalog, https://web.archive.org/web/20000118043250/http://www.invitrogen.com:80/catalog_project/catalog.html (Ex. 19).

[34] This Court has recently taken judicial notice of webpages available on the Wayback Machine. *See K.C. Co. v. Pella Corp.*, No. CV DKC 20-0227, 2022 WL 3716537, at *14 (D. Md. Aug. 29, 2022) (taking judicial notice of webpages available on the Wayback Machine).

### 3. The separate accrual doctrine does not apply.

Plaintiff assumes that instances of cellular reproduction or sales after October 4, 2018, are independently actionable claims that separately accrue and can be asserted even if prior claims are time-barred. This is not correct. The separate accrual doctrine is not available here because Thermo Fisher's alleged conduct breaks no law, and because the doctrine is not applied to unjust enrichment cases.

**First**, the commercial use of HeLa cells is legal. As this Court has explained, "This separate-accrual approach to computing the limitations period is appropriate where '*the law forbids* a discrete act.'" *Phreesia, Inc. v. Certify Glob., Inc.*, No. DLB-21-678, 2022 WL 911207, at *9 (D. Md. Mar. 29, 2022) (quoting *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701 (3d Cir. 2019)) (emphasis added). No law forbids the commercial use of HeLa cells.

That is the difference between this case and the cases Plaintiff's counsel cited at the May 17, 2022, hearing. Copyright violations are illegal, so every copyright violation accrues separately "[u]nder the separate-accrual rule that attends the copyright statute of limitations." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 663 (2014). Wage and hour violations are illegal, so every wage and hour violation accrues separately for limitations purposes. *See Johnson v. Silver Diner, Inc.*, No. PWG-18-3021, 2019 WL 3717784, at *6 (D. Md. Aug. 7, 2019). Kickbacks are illegal, so every kickback during an insurance scheme accrues separately. *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 706 (3d Cir. 2019) ("The separate-accrual rule applies here because the Act forbids the discrete act of giving or taking a kickback."). Toxic dumping is illegal, so every incidence of it might accrue separately as well, though the case cited for this proposition involved a continuing environmental violation and the continuing harm doctrine, not the separate accrual doctrine, and Plaintiff abandoned the continuing harm doctrine at the May 17, 2022, hearing. *Litz v. Md. Dep't of the Env't*, 76 A.3d 1076 (Md. 2013); MTD Tr. 63:13-16. Unlike all these

things, no law forbids the cultivation of HeLa cells or the sale of HeLa-related products. Thus, there is no basis to apply the separate accrual doctrine.

**Second**, there is no support for applying the separate accrual doctrine to claims of unjust enrichment. Another federal court expressly rejected that proposition in *Almaty*. 2018 WL 1583293, at *4 ("Crossclaim Plaintiffs provide no authority for extending these doctrines to the unjust enrichment context."). Were the rule otherwise, then there would effectively be no statute of limitations for claims of unjust enrichment, as most benefits continue to accrue value they are conferred. *See supra* at § I.a.2.

## CONCLUSION

The Second Amended Complaint proves there is no path to a viable claim in this case. Its theory of unjust enrichment is invalid, and no matter how Plaintiff might replead this claim, it will be time-barred. Overwhelming public evidence shows Plaintiff's knowledge of the commercial use of HeLa cells, as well as the fact that Thermo Fisher has been a part of that commercial practice, and all of it predates the limitations period by years if not decades. Plaintiff cannot plead around this evidence, and further amendment or discovery will needlessly prolong a painful, futile exercise. Notwithstanding Plaintiff's feelings about the way HeLa cells came into the public domain, the law and facts are simply not there to state a claim against Thermo Fisher. The Complaint should therefore be dismissed with prejudice.

Respectfully submitted,


/s/ Tonya Kelly Cronin

Tonya Kelly Cronin (Bar No. 27166)
BAKER DONELSON
100 Light St.

Baltimore, MD 21202
Tel.:410-862-1049
tykelly@bakerdonelson.com


Nadira Clarke (Fed. Bar No. 20254)
Andrew T. George (Fed. Bar No. 19755)
Adam Dec (Fed. Bar No. 22038)
Eileen F. Hyde*
JoAnna B. Adkisson*
BAKER BOTTS L.L.P.
700 K St. NW
Washington, DC 20001
Tel.: 202-639-7764
nadira.clarke@bakerbotts.com
andrew.george@bakerbotts.com
adam.dec@bakerbotts.com
eileen.hyde@bakerbotts.com
joanna.adkisson@bakerbotts.com

*Admitted pro hac vice

Attorneys for Defendant