**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Baltimore Division

| | | |
|---|---|---|
| **ESTATE OF HENRIETTA LACKS,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-21-02524 |
| **THERMO FISHER SCIENTIFIC, INC.** | * | |
| Defendant. | * | |
| | * | |

**AMICUS CURIAE BRIEF OF LAW PROFESSOR SUZETTE MALVEAUX IN SUPPORT OF PLAINTIFF THE ESTATE OF HENRIETTA LACKS'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW Amicus Curiae ("Amicus") Law Professor Suzette M. Malveaux, J.D., by and through counsel, Michael J. Winkelman and the law firm of McCarthy, Winkelman, Mester & Offutt, L.L.P., in support of Plaintiff's Opposition to Defendant's Motion to Dismiss Second Amended Complaint, who states as follows:

**I. INTRODUCTION**

Professor Malveaux offers unique expertise and analysis in support of the Plaintiff as to why its Second Amended Complaint should not be dismissed on untimeliness grounds. Professor Malveaux is the Moses Lasky Professor of Law and Director of the Byron R. White Center for the Study of American Constitutional Law at the University of Colorado. She is an expert in civil procedure, complex litigation and civil rights and has taught these subjects over the course of almost twenty years. She has published several articles in leading law reviews on access to justice and the impact of procedural mechanisms (including statutes of limitations,

1

pleadings, class actions and arbitration) on civil rights enforcement.[1]  She is co-editor of A Guide to Civil Procedure; Integrating Critical Legal Perspectives (NYU Press, 2022) and co-author of Class Actions and Other Multi-Party Litigation; Cases and Materials (West, 2006, 2012).  She is a member of the American Law Institute and former Chair of the American Association of Law Schools Civil Procedure Section.

For a half dozen years, she served as pro bono counsel for the victims of the Tulsa Race Massacre of 1921 in the constitutional case brought against the city of Tulsa and the state of Oklahoma, which resulted in the court's tolling the three-year statute of limitations for over forty years.[2]  Her seminal article, *Statutes of Limitations: A Policy Analysis in the Context of Reparations Litigation*, 74 Geo. Wash. L. Rev. 68 (2005), was entered into the Congressional record, at the Senate Judiciary Committee Chair's request, in support of subsequent tolling legislation.

Prior to entering academia, Professor Malveaux was a class action specialist and civil rights lawyer.  She graduated *magna cum laude* from Harvard University and earned her J.D. from NYU School of Law, where she was a Root-Tilden Scholar and editor of the Law Review.

The parties and their counsel neither funded the preparation and submission of the brief, nor authored the brief in whole or in part.

---

[1] *See, e.g.*, *Is It Time for a New Civil Rights Act? Addressing Modern Obstructionist Procedure*, 63 B.C. L. Rev. 1 (2022) (lead article); *Class Actions, Civil Rights, and the National Injunction*, 131 Harv. L. Rev. F. 56 (2017); *Front Loading and Heavy Lifting; How Pre-Dismissal Discovery Can Address the Detrimental Effect of* Iqbal *on Civil Rights Cases*, 14 LEWIS & CLARK L. REV. 65 (2010).
[2] *Alexander v. Oklahoma*, No. 03-C-133-E, 2004 U.S. Dist. LEXIS 5131 (N.D. Okla. Mar. 19, 2004), *aff'd*, 382 F.3d 1206 (10th Cir. 2004).

## II. LEGAL ARGUMENT

A. **Plaintiff's Unjust Enrichment Claims Are Not Barred on the Face of the Complaint**

Under either the separate accrual doctrine or the continuing harm doctrine, Plaintiff's unjust enrichment claims accrued within the three-year limitations period and are timely, thereby making dismissal inappropriate here.[3] Central to the question of whether a claim is time barred is identifying a legally cognizable harm and when it took place. *See, e.g.*, *Cain v. Midland*

---

[3] Amicus initially suggests it is premature to determine whether Plaintiff's case is timely as discovery is necessary to make this determination. It is well-established law that the statute of limitations should only be resolved pursuant to a Rule 12(b) motion to dismiss under "rare" circumstances. "Ordinarily, [this] defense . . . is not considered in the context of a motion to dismiss." *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, No. ELH-20-3783, 2021 WL 4148456 at *13 (D. Md. Sept. 10, 2021). This is not the rare case where all of the facts (publicly available or otherwise) foreclose the case from going forward at the pleading stage because of the statute of limitations.

At the pleading stage, the plaintiff need only show on the face of the complaint that its claims are plausible, not probable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining a 12(b)(6) motion to dismiss, the Court may consider only the allegations set forth in the complaint (*Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015)), and must assume the veracity of all factual allegations, drawing all reasonable inferences from such allegations in plaintiff's favor. *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 691 (2017).

Plaintiff's complaint does more than simply recite legal conclusions and bare assertions. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009). Instead, the complaint's well-pleaded facts tell a compelling story about how Thermo Fisher receives billions of dollars in revenue from the acquisition, cultivation, and sale of products wrongly derived from the HeLa cell line, without providing Henrietta Lacks's family any compensation—a longstanding practice that continues to date.

Defendant, on the other hand, has failed to meet its burden of demonstrating that "the time bar is apparent on the face of the complaint." *Litz v. Maryland Department of the Environment*, 76 A.3d 1076, 1086 (Md 2013); *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018); *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Even if the Court takes judicial notice of some of Defendant's proffered facts outside the complaint, they are insufficient to answer the timeliness question. While Defendant cherry picks public records preceding the three-year limitations period, evidence in the public record also indicates that sales were made within Maryland's three-year statute of limitations. *See* Plaintiff's Opp. to Def.'s Mot. to Dismiss SAC, at 29 ("TFS . . . relied on a 2014 U.S. General Service Administrative ('GSA') contract (notably with a March 2024 end date) . . . ."). The Court itself has noted that it could benefit from additional information to discern the appropriate accrual date for determining timeliness. *See* MTD Transcript at 58:18-59:1 ("I don't know when the one claim alleged has accrued.").

The statute of limitations defense should be considered only after discovery to afford the parties the opportunity to test and prove the validity of their initial allegations and defenses.

*Funding, LLC*, 475 Md. 15-16, 61 (2021) (claim untimely when wrong was collection agency filing action against plaintiffs without license, not garnishment of wages in limitations period once agency was licensed). An unjust enrichment claim occurs when there is: "1) a benefit conferred on the defendant by the plaintiff; 2) knowledge by the defendant of the benefit; and 3) retention by the defendant of the benefit under such circumstances as to make it inequitable for defendant to retain the benefit without payment of its value." *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 249 F. Supp. 2d 703, 708 (D. Md. 2003) (denying dismissal of unjust enrichment claim); *see also Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (defining unjust enrichment).

Plaintiff alleges that Thermo Fisher was conferred the benefit of Henrietta Lacks's cell line, that Thermo Fisher knew of this benefit, and that Thermo Fisher unfairly retained the benefit without providing payment to the Lacks family. Moreover, Plaintiff contends that this wrongful conduct has been going on for years, within the three-year limitations period and beforehand. Thus, on the face of the complaint, Plaintiff's unjust enrichment claims would be viable. Alternatively, Plaintiff may proceed on a theory that an unjust enrichment claim does not ripen until an accumulation of wrongful acts has occurred, which pushes accrual within the limitations period.

### 1. Separate Accrual Doctrine

The claim of unjust enrichment forecloses dismissal on untimeliness grounds because Defendant harmed Plaintiff within the three-year limitations period each time it wrongfully profited from the cultivation and sale of HeLa cells. The question of when an action may be brought (*i.e.* accrues) is one of judicial interpretation (*Cain*, 475 Md. at 35), although factual determinations are usually made by the factfinder and not the court as a matter of law. *Litz v.*

4

*Maryland Department of the Environment*, 76 A.3d 1076, 1086 (Md 2013).  The separate accrual doctrine applies where "the law forbids a discrete act, as most do." *Phreesia, Inc. v. Certify Glob., Inc.*, 2022 WL 911207 at *27 (D. Md. Mar. 29, 2022); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 463 (4th Cir. 1983); *see, e.g.*, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) (each unauthorized copying was a discrete act that triggered separate accrual of claim under copyright law); *Johnson v. Silver Diner, Inc.,* 2019 WL 3717784 at *17 (D. Md. Aug. 7, 2019) (each wage and hour violation accrues separately for limitations purposes, so those within limitations period were timely and those before were stale but admissible, relevant evidence).

The law of unjust enrichment forbids the discrete act of knowingly retaining a benefit to which one is not equitably entitled without providing just compensation.  Each ill-gotten gain constitutes its own cognizable harm and catalyzes its own cause of action.  Thus, under unjust enrichment, each time Defendant knowingly profits from the HeLa cell line without compensating Plaintiff constitutes a separate violation and sets in motion—subject to the discovery rule—Plaintiff's capacity to bring suit within three years.  Defendant contends that Plaintiff should have brought suit for unjust enrichment earlier, upon first learning that Henrietta Lacks's cells were wrongly taken from her or, alternatively, upon first learning that pharmaceutical companies were wildly profiting from the HeLa cell line.  *See* Def.'s Mem. Supp. Mot. to Dismiss at 10-16; Def.'s Mot. to Dismiss SAC at 19–20.

However, because a claim for unjust enrichment accrues each time Defendant wrongly retains ill-gotten profits, Plaintiff is permitted to bring suit within three years from each retention, regardless of when Plaintiff first became aware of the wrongdoing.  Plaintiff does not challenge the downstream effects of one illegal act that occurred over seventy years (*i.e.*, the

unlawful taking of Henrietta Lacks's genetic material in 1951), but current illegal acts today (*i.e.*, the continuing cultivation, mass production and sale for profit of such material without just compensation to Lacks's family). Thus, under the separate accrual doctrine, each of Plaintiff's unjust enrichment claims within the three-year limitations period is timely.

### 2. Continuing *Harm* Doctrine

The Court may apply the continuing harm doctrine to permit Plaintiff's unjust enrichment claims within the three-year limitations period to proceed. Where a defendant sequentially breaches a continuing duty, a plaintiff may timely bring a claim for each breach of that duty. *Cain*, 475 Md. at 49; *see, e.g.*, *Shell Oil Co. v. Parker*, 265 Md. 631, 636 (1972) (where there was ongoing fraud committed from initial false statement on billboard that went into three-year limitations period, such claims of fraud were viable under continuing harm doctrine); *Litz*, 76 A.3d at 1079 (where ongoing illegal toxic dumping caused continuous injury over extended period of time, claims of negligence, trespass and inverse condemnation were within limitations period); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 134-35 (E.D.N.Y. 2000) (where Nazis' and their accomplices' refusal to return property misappropriated during World War II continued up to filing of plaintiffs' lawsuit over a half century earlier, limitations period did not expire); *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968) (although plaintiff "could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955" in anti-trust case).

The linchpin to the theory's application is whether the "violation or the wrongful act is ongoing or continuing in nature (as opposed to the continued ill effects from the original alleged violation)." *Cain*, 475 Md. at 51; *see, e.g.*, *MacBride v. Pishvaian*, 402 Md. 572, 576, 584 (2007) (rejecting continuing harm doctrine where apartment's deterioration over time was the

"continuing ill effects" from original violation and not a "series of acts or course of conduct"); *Duke Street v. Bd. of Commissioners of Calvert Co.*, 112 Md. App. 37, 52 (1996) (rejecting doctrine where constitutional takings claim did not allege series of acts or course of conduct into the limitations period); *Litz*, 76 A.3d at 1079, 1087-1089 (permanent nuisance claims were barred by statute of limitations, while temporary nuisance claims were distinct "successive actions" that each created a new cause of action triggering a new statute of limitations).

Here, Plaintiffs allege that Thermo Fisher continues to acquire, cultivate, produce and sell products derived from the HeLa cell line, unjustly enriching itself at the expense of the Lacks family. Defendant made a choice each time it retained its ill-gotten gains without compensating the Lacks family. Under the continuing harm doctrine, the wrongful conduct within the limitations period is timely irrespective of prior wrongful conduct. *Cain*, 475 Md. at 51. This Court has concluded that the theory is available for unjust enrichment claims. *AAA Antiques Mall, Inc. v. Visa U.S.A. Inc.*, 558 F. Supp. 2d 607, 610 n.4 (D. Md. 2008) (Motz, J.) (concluding that unjust enrichment claims, not otherwise defective, were viable in the three-year limitations period).[4] Later unjust enrichment claims were "not barred by the statute of limitations merely because one of them occurred earlier in time." *Id*.

---

[4] The Court, however, referenced the "continuing *violation*" doctrine as the basis for permitting the unjust enrichment claims within the three-year statute of limitations. *Id*. (emphasis added). The Court's description of the "continuing *violation*" doctrine is identical to the "continuing *harm*" doctrine. *Id*. Similarly, the Court has recently equated "continuing or continuous violations" with "multiple, discrete acts that accrue separately" and distinguished them from "a *cumulative* violation, where multiple acts are necessary to create one violation." *Phreesia*, 2022 U.S. Dist. LEXIS 56856 at *28 (emphasis added).
    The nomenclature has created confusion, as some courts use the terms "continuing *violation*" doctrine and "continuing *harm*" doctrine interchangeably, while other courts use the term "*continuing* violation" doctrine to refer to what Judge Posner more precisely calls the "*cumulative* violation" doctrine. *See Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (Posner, J.); *see, e.g.*, *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 706 (3d Cir. 2019) (contrasting separate accrual doctrine with continuing violations doctrine); Malveaux at 88 (citing the Supreme Court and using "continuing violations" doctrine to describe court treatment of series of acts of misconduct as one continuous one that ends prior to the limitations deadline). This amicus brief distinguishes between the continuing *harm* doctrine and the continuing *violations* doctrine.

### 3. Continuing *Violation* Doctrine

The Plaintiff here has alleged, in the alternative, that its unjust enrichment claims are timely under the continuing violation doctrine. To the extent that Plaintiff has used the nomenclature "continuing *violation*" doctrine to describe the "continuing *harm*" doctrine, as this Court and others do, the analysis above applies.

The continuing violation doctrine (sometimes called the *cumulative* violation doctrine), also refers to when the statute of limitations is tolled to cover an entire course of conduct because it is the cumulative effect of wrongful acts that forms the basis of the cause of action and creates an actionable injury. *See* fn. 4. This amicus brief uses the term "continuing violation" doctrine when describing this option. "Not all wrongs are discrete wrongs" but instead are "diffuse and comprise many acts over a period of time." *Blake v. JP Morgan Chase Bank, N.A.*, 927 F.3d 701, 706 (3d Cir. 2019). Some courts call these "continuing violations" because a continuous series or accumulation of wrongful acts over time is necessary to create a single legally cognizable claim. *Id.* A plaintiff may timely file its lawsuit for wrongful acts that occurred not only inside the limitations period, but also those that predated the limitations period that comprise its claim. *Id.* (citation omitted). A classic example of this is a hostile work environment claim, which may not accrue until several acts of misconduct have occurred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 117-18 (2002). Thus, an alternative way for Plaintiff to survive a time bar is alleging that Thermo Fisher's continuous wrongful acts (acquisition, cultivation, production and sale of HeLa cells) over time constitute unjust enrichment, which ultimately accrued within the three-year limitations period.

In sum, Plaintiff alleges that Maryland courts—under varied doctrine—forbid an ongoing course of misconduct from being time-barred. Plaintiff's Opp. To Def.'s Mot. To Dismiss SAC

at 32. Of course, it is Plaintiff's prerogative to allege alternative theories at the pleading stage. It seems clear from the face of the complaint that the timeliness issue is not predetermined and that discovery would be fruitful at this juncture.

>    **B.      Tolling is Appropriate Because the Rationales for the Statute of Limitations Are Not Served Here, While Its Exceptions Are**

Maryland courts recognize three exceptions to the application of the three-year statute of limitations for civil actions: 1) when another statute of limitations applies; 2) when there is a continuing harm; and 3) when tolling is appropriate. *Cain*, 475 Md. at 38-39. The first exception is inapplicable. The Maryland legislature has chosen not to limit the viability of an unjust enrichment claim as it has done for other claims. *See, e.g.*, *Wyne v. Medo Indus. Inc.,* No. RDB-02-CV-1812, 2004 WL 3217860 at *4-7 (D. Md. Mar. 25, 2004) (MD Uniform Trade Secrets Act defines first discovered or discoverable misappropriation of trade secret as trigger for accrual and continuing misappropriation as a single claim, so claim was time-barred). The second exception is discussed above. The third exception is discussed below.

To be sure, statutes of limitations serve several important functions in our legal system. *See M. Abraham Ahmad v. Eastpines Terrace Apts., Inc*. 200 Md. App. 362, 372 (2011). They enhance fairness to the defendant, promote efficiency, and bolster institutional legitimacy. Suzette Malveaux, *Statutes of Limitations: A Policy Analysis in the Context of Reparations Litigation*, 74 Geo. Wash. L. Rev. 68, 75, 79, 81 (2005). Filing deadlines often balance competing interests such as merits determinations with institutional pragmatism (Malveaux at 91 n. 146), and justice with expediency. Malveaux at 79 n. 60.

However, statutes of limitations are neither immutable (*Ceccone*, 454 Md. at 692), nor sacrosanct (*Cain*, 475 Md. at 38). While an even-handed, consistent judicial application of

administrative standards is important, equally critical is judicial discretion exercised equitably and justly. Statutes of limitation are creatures of choice. The legislature has the power whether or not to create them, and the courts have the discretion whether or not to enforce them. In a nutshell, "[t]he shelter of statutes of limitations is not guaranteed and has come into law by legislative grace, not as a natural right." Malveaux at 92; *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 893 (1988). Courts have tolled statutes of limitations when the underlying rationales for the limitations period are not being served (*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974); *Cain*, 475 Md. at 61-62) or when "extraordinary circumstances" countenance otherwise (*Hardin v. Straub*, 490 U.S. 536, 543-44 (1989)). Both of these justifications exist in this case. *See also Cain*, 475 Md. at 38 (exceptions to statutes of limitations must have compelling reasons).

  First, one of the major rationales for statutes of limitations is protecting fairness to the defendant, exhibited by: (a) providing defendant repose; (b) giving defendant sufficient notice to collect accurate evidence; and (c) discouraging plaintiff misconduct. Malveaux at 75. However, none of these goals are served by dismissing Plaintiff's unjust enrichment claim here.

  A filing deadline creates a well-settled expectation in defendant's mind that it will be safe from suit, regardless of merit, and will be able to structure its affairs going forward with peace of mind. Such repose is meant to "prevent[] surprises through the revival of claims that have been allowed to slumber." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). However, prioritizing a defendant's expectation of repose is not appropriate where it is arguably on notice that a lawsuit might be forthcoming. Here, Thermo Fisher has long been aware of the unethical origins of the HeLa cells, and has chosen to continually acquire, cultivate and profit from the cell line without the family's consent or compensation. The

company cannot credibly argue that it was caught by surprise or that its settled expectations were altered when Plaintiff filed suit for Defendant's ongoing unjust enrichment. Moreover, given the major media expose of the theft of Henrietta Lacks's cells, the impact of the "immortal" cell line on much of modern medicine, and the billions of dollars being made by pharmaceuticals to this day, Thermo Fisher would be hard pressed to contend that it did not anticipate and prepare for a Lacks lawsuit.

Another fairness-to-defendant justification that does not apply in this case is concern about evidence preservation and spoliation. Defendant contends that it is disadvantaged by witnesses dying and evidence fading in light of Plaintiff's recent filing. More specifically, Thermo Fisher alleges that it needs access to doctors who are now deceased to determine if the circumstances under which they acquired Henrietta Lacks's cells were "actually unjust"—a fact that seems universally accepted at this point. *See* Mot. To Dismiss Hearing Transcript at 48-49. While it is true that the passage of time can compromise dependable evidence, this is mitigated by the fact that much of what Thermo Fisher needs to defend itself from an unjust enrichment claim—*i.e.*, data regarding acquisition, cultivation, sales and profit—is likely in its possession. This is especially true where Plaintiff challenges Defendant's *current* and ongoing practice of profiting from the HeLa cell line. Moreover, advances in technology and communications have enhanced data preservation, retention and retrieval. At a minimum, the parties would benefit from discovery. There is minimal risk of spoliation of evidence or stale evidence compromising Thermo Fisher's defense. *See, e.g.*, *Stone v. Williams*, 891 F.2d 401, 405 (2d Cir. 1989) ("They should not now be allowed to claim that they are prejudiced by plaintiff's present assertion of her rights when they were aware of them all along.").

A final example of the fairness-to-defendant rationalization's falling short is its use to curtail plaintiff misconduct. Here, there is little, if any, threat of plaintiff mischief. As mentioned, the highly public expose—from acclaimed book[5] to Oprah-starring HBO movie to media tour—would make it highly unlikely that Plaintiff could bring a fraudulent claim. Plaintiff's identity and injuries, as well as Defendant's identity and alleged causation, are clear. Such clarity largely erases the possibility of fraudulent claims or litigation by ambush. Moreover, Defendant may argue that Plaintiff failed to exercise due diligence by not filing earlier or cherry-picked the time to bring the case, in contravention of the limitations period. However, this argument is unavailing where Plaintiff challenges a *current* practice—unjust enrichment from the acquisition, cultivation, and sale of HeLa cells without Lacks family consent or remuneration *today*.

Second, another primary reason for statutes of limitation is their efficiency. Limitations periods can (a) reduce costs related to evidentiary concerns and uncertainty; (b) clear burgeoning federal court dockets; and (c) simplify decisions through the application of a bright-line, although arbitrary cutoff. Malveaux at 79. However, as discussed above, it is not clear here that the evidentiary concerns are substantial enough to result in significant cost reduction. Additionally, using filing deadlines to shrink mushrooming federal dockets is ineffective for a case like this one, whose facts are so unique and extraordinary as to have a nominal impact on caseload. Finally, a bright-line test is admittedly easy to administer, but fails as a means of quality control. Filing deadlines are inefficient gatekeepers, doing a poor job of culling frivolous cases. Malveaux at 112. Given the system's preference for merits determinations,

---

[5] Rebecca Skloot, The Immortal Life of Henrietta Lacks (Random House, 2010).

administrative ease should yield here.  Just because the Lacks case is being brought now does not diminish its strength or importance.

Third, statutes of limitations bolster the legal system's legitimacy through the trans-substantive application of a procedural norm.  Malveaux at 81-21.  To be sure, equal treatment across claims and claimants assures litigants that they are being treated the same under the law.  However, this formal equality masks important differences.  Malveaux at 117.  A rigid application of filing deadlines risks glossing over those cases and circumstances in which equity and justice would demand court access, irrespective of the deadline.  While Plaintiff's case involves initial misconduct by others (doctors' theft of Henrietta Lacks's cells) over seventy years ago, Thermo Fisher's own continuous and current wrongful acts and the gross unethical treatment of the cell line throughout constitute strong grounds for equitable principles to apply.  Thus, a wooden application of limitations periods here may spark disillusionment and dissatisfaction with the judicial system, calling its legitimacy into question.  Malveaux at 84.

Under the equitable tolling doctrine, federal courts have also stopped the limitations clock from running when equity demands.  *Young v. U.S.*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling . . .").  There are several reasons for equitable tolling, including the presence of "extraordinary circumstances."  For example, where victims of the Tulsa Race Massacre of 1921 brought a constitutional claim against the city of Tulsa and state of Oklahoma roughly eighty years after the massacre, the federal court tolled the two-year statute of limitations for over forty years, up to the end of the Jim Crow era.  *Alexander v. Oklahoma*, No. 03-C-133-E, 2004 U.S. Dist. LEXIS 5131 at *30-32 (N.D. Okla. Mar. 19, 2004), *aff'd*, 382 F.3d 1206 (10th Cir. 2004).  Evidence of "intimidation, fear of a repeat of the riot, inequities in the justice system, Klan domination in the courts, and the

13

era of Jim Crow" amounted to "extraordinary" and "exceptional" circumstances that justified equitable tolling. *Id*. at *30-31. Other courts have tolled the limitations periods for claims brought for Holocaust-related violations decades later, in part, because of the exceptional nature of the circumstances. *See, e.g.*, *Rosner v. U.S.*, 231 F. Supp. 2d 1202, 1203-04, 1208-1209 (S.D. Fla. 2002); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 121, 135 (E.D.N.Y. 2000). The "brutal reality of the Holocaust, and the resulting extraordinary circumstances that Plaintiffs were forced to endure" played an important part in the court's equitable tolling analysis. *Rosner*, 231 F. Supp. ed at 1208; *see also Hoang Van Tu v. Koster*, 364 F.3d 1196, 1199-1200 (10th Cir. 2004) (court concluded some equitable tolling appropriate for survivors and descendants of Vietnam War massacre based on their "poverty, their status as subjects of a Communist government, the Vietnam War, and their inability to travel").

Similarly, here the circumstances under which Plaintiff brings this case are extraordinary. Henrietta Lacks had her cells extracted from her without her knowledge or consent, those cells went on to live indefinitely to form the basis of much of modern medicine, and Thermo Fisher has made (and will continue to make) billions of dollars to this day off of the cell line without providing any remuneration to the Lacks family. These circumstances are so exceptional as to justify equitable tolling.

While it is true that some of the egregious facts may have come to light to the Lacks family some time ago (and admittedly before the three-year statute of limitations period), appreciation of a legally cognizable claim is not as apparent, as evidenced by the procedural complexities of the instant lawsuit. Similarly, it can take time for society itself to recognize the capacity of law to redress a harm. *See* Mari Matsuda, *Looking to the Bottom: Critical Legal Studies and Reparations*, 22 Harv. C.R.-C.L. L. Rev. 323, 381 (1987) ("[T]he need for

14

reparations arises precisely because it takes a nation so long to recognize historical wrongs against those on the bottom. Something other than a rigid conception of timeliness is required."). This court itself has recognized the exceptional nature of this case. *See* Mot. To Dismiss Hearing Transcript at 23.

Statutes of limitation are arbitrary, political creations that reveal not only practical considerations but societal values. Malveaux at 121-22. As advantageous as filing deadlines can be, they also have several exceptions that reflect the civil litigation system's interest in merits determinations and fairness to the plaintiff. Malveaux at 83. For example, one of the most compelling reasons for foregoing the deadline is to preserve a plaintiff's proverbial right to their "day in court." Malveaux at 82. Court access is particularly important for vulnerable groups. Malveaux at 84. Between the Constitution's due process requirement (U.S. CONST. amend. XIV, § 1) and *Marbury v. Madison*'s promise to provide a remedy where there is an injury, (5 U.S. (1 Cranch) 137, 163 (1803)) there is little room for a rigid time bar. Limitations exemptions prevent defendants from escaping liability based on a "mere technicality," and instead preference law enforcement and deterrence goals. Procedure serves substance, and not vice versa. Thus, exemptions ensure fairness for the plaintiffs and disincentivize defendant misconduct and windfalls.

Given these countervailing values, it becomes much less of a stretch to toll a three-year statute of limitations so that the Lacks family may be provided an opportunity to be heard on the merits, not only for the injustices of the past three years but of the decades prior. The courts have the power and discretion to be nimble when justice requires, as it does here.

### III. CONCLUSION

Accordingly, this Court should deny Defendant's Motion to Dismiss.

15

_____
Suzette Malveaux
Moses Lasky Professor of Law
Director, Byron R. White Center for the
Study of American Constitutional Law
University of Colorado Law School
2450 Kittredge Loop Dr
Boulder, CO 80309
suzette.malveaux@colorado.edu


MCCARTHY, WINKELMAN, MESTER
& OFFUTT, L.L.P.

By: _____
Michael J. Winkelman, Bar No. 13815
4300 Forbes Boulevard, Suite 205
Lanham, MD 20706-4314
301-262-7422
301-262-0562 (fax)
mwinkelman@mwmlawyers.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of February, 2023, a copy of the foregoing was filed via the CM/ECF system which shall cause the same to be e-served on all counsel of record.

_____
Michael J. Winkelman